## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

TRANSITO TRUJILLO,

Plaintiff,

vs.                                                                     No. CIV 02-1146 JB/LFG

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,
JOSEPH VIGIL and SUSIE PECK, Albuquerque
Public Schools Superintendents individually and
in their official capacities; ANTHONY GRIEGO,
Principal, Valley High School, individually and in
his official capacity; BRUCE SMITH, Valley High
School Assistant Principal, individually and in his
official capacity; RONALD WILLIAMS, Director
of Certified Staffing, Albuquerque Public Schools,
individually and in his official capacity; and MARK
MAYERSTEIN, Valley High School employee,
individually and in his official capacity,

Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants Joseph Vigil, Susie Peck, Anthony

Griego, Bruce Smith, and Ronald Williams' Motion for Summary Judgment, filed August 11, 2003

(Doc. 41).[1]  The primary issues are: (i) whether Plaintiff Transito Trujillo has presented evidence

showing an actionable adverse action; (ii) whether Trujillo has presented evidence showing that a link

exists between any speech protected by the First Amendment and the individual Defendants' actions;

and (iii) whether anything the Defendants did amounts to a constitutional violation.  Because the

Court finds that the Plaintiff has not presented evidence showing a constitutional violation, the

---

[1] Defendant Mayerstein filed a separate motion for summary judgment, which the Court will
address in a separate Memorandum Opinion and Order.

Defendants are entitled to qualified immunity, and the Court will grant the Defendants' motion for summary judgment.

## BACKGROUND

### I.   HOW THE PARTIES PRESENTED THE FACTS TO THE COURT.

Neither the Memorandum Brief in Support of Defendants Joseph Vigil, Susie Peck, Anthony Griego, Bruce Smith, and Ronald Williams' Motion for Summary Judgment, filed August 11, 2003 (Doc. 42), nor Plaintiff Transito Trujillo's Response to Motion for Summary Judgment Based on Qualified Immunity, filed August 27, 2003 (Doc. 51), contains a statement of undisputed material facts. Both briefs contain either a statement of the case or an introduction characterizing the events on which this case is based. The Response argues that the Court should deny the motion for failure to comply with local rule 56.1(b) because the brief in support does not set forth a concise, numbered list of material facts, "'refer[ring] with particularity to those portions of the record upon which the movant relies.'" Response at 3 (quoting D.N.M. LR-CV 56.1(b)).

In the Reply in Support of Defendants Joseph Vigil, Suzie Peck, Anthony Griego, Bruce Smith, and Ron Williams' Motion for Summary Judgment, filed September 10, 2003 (Doc. 58), the Defendants set forth a brief statement of undisputed facts limited to the specific factual allegations against each individual Defendant. Based on this list of facts in the Reply, the parties stipulated to allow Trujillo to file a surreply. See Stipulated Motion for Leave to File a Surreply, filed September 8, 2003 (Doc. 57). The Court granted that motion, see Order Granting Leave to File Surreply, filed September 15, 2003 (Doc. 62), but Trujillo did not file a surreply.

The Court gave Trujillo an additional opportunity to present facts and to create a genuine issue of material fact at the hearing held on this motion on January 9, 2004. That hearing lasted in

excess of five hours.  See Clerk's Minutes, filed January 10, 2004 (Doc. 104).  The Court's statement
of facts is based on the information that the parties provided in their briefing as well as at the hearing.

There does not, however, appear to be a genuine dispute of any material fact.  Rather, the
dispute or disputes are about how the law characterizes the facts in question.  Thus, Trujillo's First
Amendment claim is appropriate to resolve by summary judgment.

## II.    THE ALLEGED FIRST AMENDMENT CONDUCT.

Trujillo honorably retired from the United States Air Force after 26 years of service.  See
Affidavit of Transito Trujillo in Aid of His Response to Certain Defendants' Motion for Summary
Judgment on the Basis of Qualified Immunity ¶¶ 1-2, at 1 (executed August 27, 2003)(hereinafter
"Trujillo Aff.").  Thereafter, the Albuquerque Public Schools ("APS") hired Trujillo at Valley High
School ("VHS") as Aerospace Science Instructor ("ASI") in the Air Force Junior ROTC
("AFJROTC") program.  See id.  Trujillo held the position of ASI for eleven years.  See id. ¶ 2, at
1.

In October 2002, APS removed Trujillo from his position as ASI after the Air Force
decertified him and he was, thus, no longer qualified for employment with APS.  See id. ¶ 3, at 2;
Complaint ¶¶ 64-65, at 23.  Trujillo brought claims against Defendants in their individual capacities
under § 1983 and § 1985.  See Complaint ¶¶ 86-99, at 28-30.  Trujillo has abandoned any claims
under § 1985 and now proceeds solely under § 1983 against the individual defendants.  See
Transcript of Hearing at 25:9-16.[2]

Trujillo's wife, Major Lourdes Trujillo, was also a qualified AFJROTC instructor.  When a

_____

[2]  The Court's citations to the transcript of the hearing refer to the Court Reporter's original,
unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.

position for Senior ASI became available in the VHS AFJROTC program, Lourdes Trujillo applied for the position.  APS hired Defendant Mark Mayerstein, rather than Lourdes Trujillo, to fill the position.

After Mayerstein's hiring, Lourdes Trujillo filed a complaint with the EEOC.  The EEOC issued a finding of "Probable Cause" that Lourdes Trujillo had been the victim of discrimination. Trujillo openly supported his wife in the EEOC process and as she prepared to litigate the issue.

Trujillo alleges that, within weeks of Mayerstein's arrival, Mayerstein and the other individual Defendants began to act in concert to create a hostile work environment for Trujillo.  In addition, Trujillo alleges that Mayerstein was abusive to students and that Trujillo spoke out against such abuse.  See Response at 2.  Trujillo asserts that the other individual Defendants participated in and tacitly supported Mayerstein's efforts to discredit and harass Trujillo, including, among other similar accusations and acts, making false accusations that Trujillo had sexual intercourse with a cadet's mother in the VHS' Armory, exerting efforts to hyper-scrutinize Trujillo's work, and asserting falsely that Trujillo was lazy and did not work sufficient hours.  See id.

## A.   THE ALLEGED ACTIONS AND OMISSIONS OF THE INDIVIDUAL DEFENDANTS.

Trujillo alleges that the individual Defendants acted with the intent both to exact revenge for his support of and assistance to his wife, as well as to chill his continued exercise of his First Amendment rights.  See id. at 2-3.

### 1.   Joseph Vigil.

Trujillo alleges that Defendant Joseph Vigil, an APS Superintendent, did not respond to letters from Trujillo and Max Hernandez, Trujillo's advocate.  See Deposition of Transito Trujillo at 252:2-

21 (taken June 30, 2003).  The letter from Hernandez accuses Defendant Mark Mayerstein of, among

other things, (i) losing a debate with Trujillo's wife; (ii) attempting to discredit Trujillo; and (iii)

making false allegations.  See Letter from Hernandez to Vigil, dated July 8, 2002 (attaching copy of

letter from Hernandez to Mayerstein of same date).   Trujillo also alleges that, as an APS

Superintendent, Vigil had knowledge of the circumstances leading up to Trujillo's decertification and

termination.  See Trujillo Depo. at 254:16 - 256:19.

### 2. Susie Peck.

Trujillo alleges that Defendant Susie Peck, another APS Superintendent, sent him a letter

indicating: (i) that APS would review the military decertification process; (ii) that Trujillo was to

return to work at Valley High School; and (iii) that APS would revisit the evaluation that Defendant

Anthony Griego had voided.  See Complaint ¶ 55, at 21; Trujillo Depo. at 256:20 - 258:7.  Trujillo

asserts that APS did not revisit his evaluation.  See Trujillo Depo. at 257:10-11.

### 3. Bruce Smith.

Trujillo alleges that Defendant Bruce Smith, Valley High School's assistant principal, attended

a meeting at which a group of parents and students complained to APS administrators about "Colonel

Mayerstein and the VHS program."  Complaint ¶ 47, at 17.  Trujillo also alleges that Smith (i) did

nothing after Trujillo reported an incident where Mayerstein reportedly threw a student's books in

the trash; (ii) was present at a counseling session in April 2002 with Mayerstein; and (iii) gave Trujillo

a Letter of Understanding related to Trujillo's actions in walking out of counseling sessions and

actively involving parents and/or students in Trujillo's personal disputes with Mayerstein. See Trujillo

Depo. at 258:8 - 264:4.  The Letter of Understanding addressed three issues: (i) compliance with

U.S. Air Force and APS rules; (ii) Trujillo's violation of a school policy prohibiting being off-campus

during school hours without having signed out; and (iii) soliciting others to become involved in the problems with the VHS AFJROTC program.  <u>See</u> Letter of Understanding from Smith to Trujillo, dated April 11, 2002.

        4.    <u>**Ronald Williams**</u>.

Trujillo contends that Defendant Ronald Williams, APS's Director of Certified Staffing, discriminated against him by: (i) placing Trujillo on paid administrative leave pending an investigation into Trujillo's role in creating a hostile educational environment; (ii) telling Trujillo to return to work following the investigation; (iii) meeting with the Air Force; and (iv) terminating Trujillo's employment with APS following the Air Force's decertification of Trujillo.  <u>See</u> Trujillo Depo. at 264:5 - 269:5.  Trujillo agrees that a hostile educational environment existed in the AFJROTC program, but denies his actions contributed to such an environment.  <u>See</u> Trujillo Depo. at 265:12-14.

        5.    <u>**Anthony Griego**</u>.

Trujillo alleges that Defendant Anthony Griego, Principal of VHS: (i) failed to  take action when told of an incident where Mayerstein told a student he would get "butt fucked" if he joined a gang and went to jail; (ii) gave Trujillo a satisfactory annual evaluation and recommended that he be retained; (iii) did not respond properly to complaints from parents/students about which Griego, in his position as Principal should have known; and (iv) gave Trujillo a letter of counseling.  <u>See</u> Trujillo Depo. at 269:6 - 280:7; Complaint ¶¶ 48, 56, at 17, 21.

        6.    <u>**Mark Mayerstein**</u>.

Mayerstein received a Letter of Reprimand based on complaints from Trujillo and parents/students.  <u>See</u> Letter of Reprimand from Smith to Mayerstein, dated April 19, 2002.  The letter reprimanded Mayerstein for speaking to students in a demeaning manner, throwing a student's

books in the trash, and for telling a student that if he joined a gang and went to jail that he would be sexually abused.  See id.

### STANDARDS FOR DECIDING MOTIONS FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure allows a court to grant summary judgment if a party is entitled to judgment as a matter of law and there are no genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  To avoid summary judgment, the non-moving party must contradict facts that the movant specifically avers.  See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990).  The court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.  See Kennedy v. Silas Mason Co., 334 U.S. 249, 252 (1948).

The moving party bears the initial burden of establishing the absence of any genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. at 323.  This burden can be met by the moving party by highlighting to the court an insufficiency of evidence as to an essential element of the nonmovant's claim.  See id.  Once met, the burden shifts to the nonmoving party to present specific, admissible facts from which a rational trier of fact could find for the nonmovant.  See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998)(citing Celotex Corp. v. Catrett, 477 U.S. at 324).  The non-moving party may not rest on his pleadings but must set forth specific facts.  See Applied Genetics Int'l v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).   Under rule 56(e), only statements made with actual knowledge will support a motion for summary judgment; the court must disregard statements of mere belief.  See Tavery v. United States, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994)(citations omitted).

For the purposes of summary judgment, the court assumes the evidence of the non-moving

party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  If "the evidence, interpreted favorably to the plaintiff, could persuade a reasonable jury that the employer had discriminated against the plaintiff," the court should deny summary judgment.  MacDonald v. Eastern Wyoming Mental Health Ctr., 941 F.2d 1115, 1121 (10th Cir. 1991)(quoting Palucki v. Sears, Robueck & Co., 879 F.2d 1568, 1570 (7th Cir. 1989)).

The court should, however, grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  A "genuine" factual dispute requires the non-moving party to show more than a mere scintilla of evidence to overcome a motion for summary judgment.  Id. at 252.

The court may grant summary judgment if the non-moving party's evidence is merely colorable or is not significantly probative.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 250-51.  "In a response to a motion for summary judgment, a party cannot rest on ignorance of the facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52.

-8-

## LAW ON QUALIFIED IMMUNITY

Qualified immunity protects government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 516 (10th Cir. 1998)(quoting Ramirez v. Oklahoma Dep't of Mental Health, 41 F.3d 584, 592 (10th Cir. 1994), and Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). See Siegert v. Gilley, 500 U.S. 226, 231-33 (1991); Hunter v. Bryant, 502 U.S. 224, 227 (1991)(per curiam). By protecting officials from suits based on reasonable error, the qualified immunity doctrine prevents government officials from always having to err on the side of caution if they wish to avoid being sued. See Hunter v. Bryant, 502 U.S. at 229; Davis v. Scherer, 468 U.S. 183, 196 (1984). Once the defendant raises the qualified immunity defense, the plaintiff bears the burden of showing that the federal rights allegedly violated were clearly established at the time of the alleged violation. See Mitchell v. Forsyth, 472 U.S. 511, 528 (1985); Furnance v. Oklahoma Corp. Comm'n, 51 F.3d 932, 936 (10th Cir. 1995).

Deciding the qualified immunity issue requires a two-part analysis. See Tonkovich v. Kansas Bd. of Regents, 159 F.3d at 516. First, the court must determine whether the plaintiff has sufficiently alleged that the defendant violated a constitutional right. See id. ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all.")(citing Siegert v. Gilley, 500 U.S. at 232). Second, if the court decides that the plaintiff has asserted a violation of a constitutional right, the court must determine whether the right was clearly established such that a reasonable person in the defendant's position would have

known that his or her conduct violated that right.  See Tonkovich v. Kansas Bd. of Regents, 159 F.3d at 516.

## I.    CONSTITUTIONAL VIOLATION SATISFYING THE FIRST PRONG OF THE QUALIFIED IMMUNITY ANALYSIS: FIRST AMENDMENT RETALIATION.

At the Supreme Court of the United States' direction, the United States Court of Appeals for the Tenth Circuit employs a multi-tier analysis, known as the Pickering test, to evaluate whether a public employer's actions impermissibly infringe on an employee's free speech rights.  See Connick v. Meyers, 461 U.S. 138, 146 (1983); Martin v. City of Del City, 179 F.3d 882, 886 (10th Cir. 1999)(citing Schalk v. Gallemore, 906 F.2d 491, 494 (10th Cir. 1990)).  First, the court must decide whether the speech at issue touches on a matter of public concern.  See Connick v. Meyers, 461 U.S. 138, 146 (1983).  If so, the court must balance the interest of the employee in making the statement against the public employer's interest "in promoting the efficiency of the public services it performs through its employees."  Pickering v. Board of Educ., 391 U.S. 563, 568 (1968).  If the preceding prerequisites are met, the speech is protected, and the plaintiff must show his or her expression was a motivating factor in the detrimental employment decision.  See Mount Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 287 (1977).  Finally, if the plaintiff sustains this burden, the employer can still prevail if it shows by a preponderance of the evidence that it would have made the same decision regardless of the protected speech.  See id.  The first two questions of the  Pickering test are questions of law, while the latter two are questions of fact.  See Aiken v. Rio Arriba Bd. of County Comm'rs, 134 F. Supp. 2d 1216, 1219 (D.N.M. 2000)(Black, J.)(citing Barker v. City of Del City, 215 F.3d 1134, 1138-39 (10th Cir. 2000)).

To determine whether speech touches on a matter of public concern, the Court must

determine whether it can "be fairly considered as relating to any matter of political, social, or other concern to the community." Connick v. Meyers, 461 U.S. at 146.  This examination requires analysis of the "content, form, and context of a given statement, as revealed by the whole record."   Id. at 147-48.  Courts have stated that, when the content of the speech focuses on disclosing public officials' malfeasance or wrongdoing, it is likely to be considered a matter of public concern.  See Lighton v. University of Utah, 209 F.3d 1213, 1224-25 (10th Cir. 2000); Wulf v. City of Wichita, 883 F.2d 842, 857 (10th Cir. 1989); Koch v. City of Hutchinson, 847 F.2d 1436, 1445-46 & n.17 (10th Cir. 1988)(en banc)("[M]any courts have particularly focused on the extent to which the content of the employee speech was calculated to disclose wrongdoing or inefficiency or other malfeasance on the part of governmental officials in the conduct of their official duties."), cert. denied, 488 U.S. 909 (1988).

Conversely, speech is generally not protected if the aim is simply to air grievances of a purely personal nature.  See Koch, 847 F.2d at 1446-47.  It is not sufficient that the speech topic is of general interest to the public;  rather, the actual statements on that particular topic must be of public concern.  See Wilson v. City of Littleton, 732 F.2d 765, 769 (10th Cir. 1984).

The second step of the Pickering test for First Amendment retaliation is to balance the competing interests of the employee and the employer:

> Pickering directs us to consider a number of factors in balancing the competing interests at stake.  "[T]he manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." . . . Pertinent considerations include "whether the statement impairs discipline by superiors or harmony among coworkers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise."

Wulf v. City of Wichita, 883 F.2d 842, 861 (10th Cir. 1989)(quoting Rankin v. McPherson, 483 U.S.

378, 388 (1987)(internal citations omitted)).

Assuming the plaintiff prevails on the first two factors of the Pickering test as a matter of law, the plaintiff must establish that his speech was a substantially motivating factor in the employer's decision.  See Mount Healthy City Sch. Dis. v. Doyle, 429 U.S. at 287.  And to be actionable as First Amendment retaliation, the decisions about and actions against the employee must constitute "adverse actions."   As the Tenth Circuit stated in Belcher v. City of McAlester, Oklahoma:

> Implicit in the *Pickering* test is a requirement that the public employer have taken some adverse employment action against the employee.  *See Koch v. City of Hutchinson*, 847 F.2d 1436, 1440 (10th Cir. 1988) (noting that *Pickering* and its progeny 'establish the basic framework for analyzing a claim by a public employee that his or her governmental employer made an *adverse employment decision* in violation of the employee's First Amendment rights." (emphasis added)).  If the action taken by the employer in response to the employee's speech is inconsequential or has only speculative consequences, there can be no basis for a First Amendment claim.

324 F.3d 1203, 1207 n.4 (10th Cir. 2003).  Conduct is an adverse employment action if it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)(Title VII).

In First Amendment retaliation cases, temporal proximity alone is not sufficient to establish that protected speech was a substantially motivating factor in an employer's adverse employment decision.  See Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 746 (10th Cir. 1999)("Plaintiff has not established that the speech was a motivating factor in his termination. The mere temporal proximity of Plaintiff's protected speech to his termination is insufficient, without more, to establish retaliatory motive.")(citing Marx v.  Schnuck Mkts., Inc., 76 F.3d 324, 329 (10th Cir.), cert. denied, 518 U.S. 1019 (1996); Love v. Re/Max of Am., Inc., 738 F.2d 383, 386 (10th Cir.1984)).

Finally, even if the plaintiff can show that his speech was a substantially motivating factor in the employment decision made, the employer may still prevail if it can establish that it would have made the same decision in the absence of the plaintiff's speech.  See Mount Healthy Sch. Dist. v. Doyle, 429 U.S. at 287.

## II.    SECOND PRONG OF THE QUALIFIED IMMUNITY ANALYSIS: THE LAW MUST BE CLEARLY ESTABLISHED.

Whether the law was clearly established at the time the claim arose is a legal issue for the court.  See Elder v. Holloway, 510 U.S. 510, 516 (1994).  For the law to be clearly established, thereby rendering qualified immunity inapplicable, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what the defendant is doing violates federal law.  See Anderson v. Creighton, 483 U.S. 635, 640 (1987); Tonkovich v. Kansas Bd. of Regents, 159 F.3d at 516 ("[I]n order for a plaintiff to demonstrate that a law is clearly established, 'there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'")(quoting Medina v. City & County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992)).

Because qualified immunity is a doctrine of practical application to real-life situations, the court judges the acts of government officials against the law and facts at the time defendants acted, not with hindsight based on later events.  See Hunter v. Bryant, 502 U.S. at 228 ("[T]he court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed five years after the fact.").  The defendant's subjective intent plays no part in the qualified immunity analysis.  See

-13-

Anderson v. Creighton, 483 U.S. at 641; Mitchell v. Forsythe, 472 U.S. at 517.  The official has immunity from suit unless a public official's act is so obviously wrong in light of preexisting law that only a plainly incompetent official or one who is knowingly violating the law would have done such a thing.  See Malley v. Briggs, 475 U.S. 335, 341-42 (1986).  Objective legal reasonableness is the touchstone.  See Tonkovich v. Kansas Bd. of Regents, 159 F.3d at 516.

The plaintiff has the significant burden of rebutting the presumption that qualified immunity applies to preclude his claims against the defendant.  See Mick v. Brewer, 76 F.3d 1127, 1134 (10th Cir. 1996).  In meeting this heavy burden "the plaintiff must do more than simply allege the violation of a general legal precept.  The plaintiff must instead demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited."  Jantz v. Muci, 976 F.2d 623, 627 (10th Cir. 1992)(internal quotation marks and citations omitted).  If the plaintiff fails to demonstrate that the unlawfulness of the alleged actions was apparent, the defendant is entitled to judgment based on qualified immunity.  See id. at 630.

## DISCUSSION

Both in the briefing and at the hearing on this motion, the Defendants focused on the second prong of qualified immunity analysis, arguing that, even if Trujillo's allegations amount to a constitutional violation, he cannot establish that the law was clearly established.  The Supreme Court of the United States, however, has directed that a court must consider first the constitutional violation prong of the qualified immunity analysis and, unless and until such a violation is shown, the court should not move on to the clearly established prong.  See County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998)("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a

-14-

constitutional right at all.  Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question.").

To survive the Defendants' assertion of qualified immunity, Trujillo must show that the facts as he has alleged them, if taken as true, amount to a constitutional violation.  Although Trujillo asserts that the Defendants violated his constitutional rights, see Complaint ¶ 88, at 28, he has not established a genuine issue of material fact as to whether Defendants' actions constituted retaliation in contravention of the First Amendment.  Because Trujillo failed to establish a genuine issue of a material fact as to the alleged constitutional violation, Trujillo failed to satisfy the first prong of the doctrine of qualified immunity analysis.[3]  The Court, therefore, will grant Defendants' motion for summary judgment on the basis of the doctrine of qualified immunity.

## I.    TRUJILLO'S ALLEGATIONS

### A.    ALLEGED CATEGORIES OF PROTECTED FIRST AMENDMENT ACTIVITY.

It is important to first clarify what specific instances of speech Trujillo alleges were entitled to First Amendment protection.  The Court must also be clear on what allegedly adverse decisions Trujillo bases his complaint.  With regard to categories of speech, Trujillo asserts four general areas of First Amendment protection: (i) his right to intimate association with his wife, Lourdes Trujillo; (ii) Trujillo's active support of his wife's protected activity in pursuing her EEOC complaint; (iii) Trujillo's speech in raising the question of Mayerstein's qualifications to teach the ground school course in the AFJROTC program; and (iv) Trujillo's speech in raising and complaining of

---

[3] Because Trujillo failed to establish a genuine issue of a material fact as to the first prong of the qualified immunity analysis, the Court does not find if necessary to decide the clearly established prong of the analysis.

Mayerstein's mistreatment of students at VHS.  See Transcript of Hearing at 33:15 - 34:5.

Trujillo's only argument regarding intimate association appears to be that, at some point, Mayerstein allegedly accused Trujillo of having sexual intercourse with the parent of a student on the grounds of VHS and that this accusation was intended to jeopardize Trujillo's marriage.  Mayerstein is not a party to this motion and this argument does not implicate the individual Defendants who are. The Court will not, therefore, consider Trujillo's alleged violation of the right to intimate association with regard to this motion.

With regard to Trujillo's support of his wife's EEOC actions, Trujillo's allegation is that "APS administrators held it against Plaintiff that he was supporting his wife's EEOC complaint."  Response at 16.  Trujillo does not, however, clarify which administrators he alleges held his support of his wife against him or in what manner they held it against him.  To establish that any of the individual Defendants retaliated against him for supporting his wife, Trujillo must first show that the individual Defendants actually knew about Trujillo's actions supporting his wife's EEOC complaint.  See Williams v. Rice, 983 F.2d 177, 181 (10th Cir. 1993)(holding, in the Title VII context, that the "plaintiff must show that the individual who took adverse action against him know of the employee's [plaintiff's] protected activity"); Sheker v. Grimes, 56 F.3d 78 (Table), 1995 WL 330749, at **3 (10th Cir. 1995)(unpublished decision)("Allegedly protected speech cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected speech.")(quoting O'Connor v. Chicago Transit Authority, 985 F.2d 1362, 1370 (7th Cir. 1993), overruled in part on other grounds by Spiegla v. Hull, 371 F.3d 928, 941 (7th Cir. 2004)).

Although Trujillo states in his affidavit that the Defendants were aware of his support for his wife's EEOC complaint, see Trujillo Aff. ¶ 30, at 12, the only evidence Trujillo offers of the

Defendants' knowledge is a Memorandum that Dr. Michael Doyle, an AFJROTC official, who visited VHS to investigate the situation between Trujillo and Mayerstein generated.  See Memorandum for Director, Air Force JROTC (August 21, 2002).  Doyle addressed this memorandum to the Director of the AFJROTC program and it contains references to Lourdes Trujillo's EEOC complaint. Trujillo's affidavit asserts that the "tenor and content" of Doyle's Memorandum indicate that there was a "significant exchange of information between the Air Force and Albuquerque Public Schools." Trujillo Aff. ¶ 32, at 13.  Presumably, Trujillo is alleging that the content of this Memorandum originated from APS and, thus, indicates that the individual Defendants had knowledge of that content.  Trujillo, however, offers no evidence, admissible or otherwise, to support that assertion.

With regard to Vigil, Trujillo alleges Max Hernandez sent a letter to Vigil enclosing Hernandez' letter to Mayerstein, which appraised Vigil of Trujillo's wife's EEOC activities.  See Letter from Hernandez to Vigil (dated July 8, 2002).  Even if the Court were to consider either of these documents evidence establishing some or all of the Defendants' knowledge of Trujillo's support of his wife, they are both dated after the alleged adverse employment decisions the Defendants made. Based solely on the evidence in the record, the Court does not believe a rational trier of fact could find that the Defendants made its employment decisions in retaliation for Trujillo's support of his wife's EEOC complaint.

With regard to the remaining two categories of speech Trujillo alleges – speech regarding his complaints of Mayerstein's lack of qualifications and speech regarding Mayerstein's abuse of students – Trujillo alleges that he made these statements directly to some of the individual Defendants. Beginning in December 2001, Trujillo alleges that he spoke directly to Griego and to Smith, the Principal and Vice-Principal respectively of VHS, to complain about Mayerstein.  Thus, there are two

categories of speech that the Court will consider under the First Amendment retaliation analysis.

###### B.    ALLEGED ADVERSE ACTIONS.

While the Court believes only two categories should be considered under the First Amendment analysis, Trujillo alleges that, in retaliation for all four areas of protected activity, the Defendants took the adverse actions specifically described above.[4]  See p. 4-5 *supra*.  For the most part, Trujillo's allegations amount to complaints that the individual Defendants failed to take actions regarding his complaints about Mayerstein.  In fact, however, Smith gave Mayerstein a formal Letter of Reprimand on April 19, 2002 regarding his treatment of students.  The VHS administration did act against Mayerstein for his inappropriate behavior.  Further, the Court cannot fairly characterize any inaction on the Defendants' part in relation to Mayerstein's treatment of students as an adverse action against Trujillo.

Trujillo's remaining allegations of adverse actions are that the Defendants placed him on administrative leave with pay and that Smith sent him a Letter of Understanding.  With regard to the administrative leave, while the Tenth Circuit has not spoken directly on point, the United States Court of Appeals for the Fifth Circuit has stated that it does not consider administrative leave with pay to be an adverse action.  See Breaux v. City of Garland, 205 F.3d 150, 158 (5th Cir. 2000)("Although Breaux was placed on administrative leave from late April to July 1994, Breaux was paid while on leave and returned to his pre-leave position.  Thus, Breaux suffered no adverse action with respect

---

[4] To the extent that Trujillo's briefing alleges his decertification or termination as an adverse action, Trujillo has agreed that any claim for wrongful termination is inappropriate for this case because the Air Force – the party which decertified Trujillo resulting in his termination – is not a party to this litigation.  See Transcript of Hearing at 22:10-24.  Based upon Trujillo's representation  that any claim based on decertification or wrongful termination are not part of this case, the Court denied the Defendants' motion to dismiss for failure to join an indispensable party, i.e. the Air Force.  See Transcript of Hearing at 26:7-22.

to the leave."). Because, as an APS employee, Trujillo did not normally work during the summer, his placement on leave with pay from April 29, 2002 to August 5, 2002 largely occurred when he would not normally have been at work anyway. See Trujillo Aff. ¶ 19, at 9; Transcript of Hearing 68:20-24 (The amount of teaching time missed by Trujillo is based on Defendants' assertion at the hearing, which was uncontested by Trujillo.). Because he continued to receive pay and only actually missed approximately one month of actual work time, the Court does not believe that this amounts to the adverse action that the Supreme Court contemplated in Burlington Indus., Inc. v. Ellerth. In particular, the Court does not find that any "significant" change in status, responsibilities or benefits occurred given that Trujillo's pay remained the same and it was already close to the end of the school year. The Court finds, therefore, that the administrative leave with pay did not constitute an actionable adverse employment action.

Trujillo also asserts that the Letter of Understanding from Smith constituted an adverse action. A letter of reprimand may constitute, under First Amendment retaliation law, an adverse action. See Belcher v. City of McAlester, Oklahoma, 324 F.3d at 1207 n.4 (concluding that the letter of reprimand at issue, which included a threat of dismissal, constituted adverse employment action because of its chilling effect). Trujillo's Letter of Understanding is, however, distinguishable from the letter of reprimand in Belcher v. City of McAlester, Oklahoma. First, given that Smith sent Mayerstein a Formal Letter of Reprimand, it is apparent that APS was willing to use letters of reprimand as a tool for discipline and did not do so with regard to Trujillo. Second, Trujillo's Letter did not include a threat of dismissal, although it did include a threat of further disciplinary action.[5]

---

[5] This threat of further disciplinary action does not constitute an adverse employment action because the letter does not, on its face, base its statements on Trujillo's speech (as the letter in Belcher did), but rather on his conduct that the school considered to be in violation of its rules.

Finally, Trujillo's Letter, based on its content, is a precursor to any disciplinary action rather than itself constituting a disciplinary action.  The Court does not believe that this Letter of Understanding rises to the level of adverse action that the Supreme Court contemplated in <u>Burlington Indus., Inc. v. Ellerth</u>.  The Court finds that Smith's Letter of Understanding to Trujillo does not constitute an actionable adverse employment action.

Because Trujillo suffered no actionable adverse employment action, he has not established a genuine issue of material fact that a constitutional violation occurred, and the Court will grant summary judgment in favor of the Defendants.

**II.** **ANALYSIS OF CONSTITUTIONAL VIOLATION BASED ON FIRST AMENDMENT RETALIATION.**

    **A.** **PLAINTIFF FAILED TO ESTABLISH A GENUINE ISSUE OF A MATERIAL FACT AS TO WHETHER ANY ALLEGED ADVERSE ACTION OCCURRED AS A RESULT OF HIS SPEECH.**

Even if the Court were to assume that either the administrative leave with pay or the Letter of Understanding amounted to an actionable adverse action, Trujillo has not established a genuine issue of material fact that either occurred as a result of his speech in contravention of the First Amendment.

The record in this case establishes that, beginning in December 2001, Trujillo and Mayerstein began having internal problems and disputes.  One parent characterized the behavior between the two teachers as a "pissing match."  Transcript of Hearing at 83:22-84:1.  Both accused each other of behavior in violation of the VHS and AFJROTC rules and policies.

While Trujillo asserts that he did not organize the demonstrations, apparently parents demonstrated in front of the school – and on the evening news – against what they perceived was

happening in the AFJROTC program and specifically against Mayerstein's abusive behavior to the students.  Students and parents began to take sides between Mayerstein and Trujillo.  All parties agree that a hostile educational environment existed at VHS in the spring of 2002.  On April 29, 2002, the school placed both Mayerstein and Trujillo on paid administrative leave to conduct investigations into the allegations made against both men and to decide how to solve  the hostile educational environment created by the two men.

As noted above, there are four steps to the analysis of a First Amendment retaliation claim.  With regard to the first step, matter of public concern, the two remaining categories of speech Trujillo alleges appear to encompass matters of public concern.  It is true that a personal, internal dispute existed between Trujillo and Mayerstein.  Trujillo's speech, however, included allegations of Mayerstein's abuse of students and his lack of qualifications for the position he held.  See Finn v. New Mexico, 249 F.3d 1241, 1248-49 (10th Cir. 2001)(holding that, even though speech included only limited portions on matters of public concern, that was sufficient to satisfy this first step).  Thus, the Court assumes, without deciding, that Trujillo's two remaining categories of speech encompass matters of public concern.

The second step is to balance the employee's interest in a right to freedom of speech with the employer's interest in maintaining an effective work place.  Considering only the two remaining categories of speech presumed to include public concern matters, 1) reporting alleged student abuses and 2) raising the issue of Mayerstein's teaching qualifications, the Court will assume, without deciding, that Trujillo's interest in making such presumed protected speech outweighs the employer-APS' interest in discharging Trujillo.  See Rakin, 483 U.S. at 388.  However, the interest-balancing test is not the end of the inquiry; in addition, the plaintiff must

demonstrate factually that the protected speech was a motivating factor in the employer's decision.  See Mount Healthy City Sch. Dis. v. Doyle.

Even if the Court found that Trujillo's interests outweighed the Defendants, he cannot factually establish that his speech substantially motivated the Defendants' actions in giving Trujillo a Letter of Understanding and in placing him on paid administrative leave.  Trujillo has not, in his briefing nor when given an opportunity at the hearing on this motion, presented the Court or introduced in the record any factual evidence linking any or all of the individual Defendants' actions to his protected speech, that is, other than Trujillo's own conclusory affidavit.  On the other hand, the Defendants have established that their decisions were based, not on Trujillo's protected speech, but instead the combined activities of and accusations between Trujillo and Mayerstein.  These actions, none of which constituted protected speech, resulted in a hostile educational environment for the students and parental demonstrations on the school's doorstep. The Court, therefore, finds that Trujillo has not established a genuine issue of material fact that his protected speech was a substantial motivating factor in the Defendants' decisions.

In addition, even if Trujillo had established the third step, the Defendants have presented the Court with uncontroverted evidence that they would have made the same decisions regardless of Trujillo's speech.  See Letter of Understanding (explaining specific actions by Trujillo that led to the Letter) and Letter from Williams to Trujillo (dated April 29, 2002)(placing Trujillo on paid administrative leave and explaining that APS intended to investigate allegations that Trujillo had created a hostile educational environment).

The Court finds, therefore, that even if it considers the actions taken against Trujillo to be actionable adverse actions, Trujillo has not created a genuine issue of material fact whether the

Defendants retaliated against him in violation of the First Amendment.  The Court will, therefore, grant summary judgment in favor of the Defendants.

> **B.**     **TRUJILLO OFFERED NO EVIDENCE ESTABLISHING THAT ANY OF THE INDIVIDUAL DEFENDANTS RETALIATED AGAINST HIM IN VIOLATION OF HIS FIRST AMENDMENT RIGHTS.**

The only potential violations in this case, as explained above, result from the Defendants' actions in placing Trujillo on paid administrative leave and giving him the Letter of Understanding. With regard to Defendants Vigil and Peck, Trujillo has not offered any evidence – beyond the conclusory allegations in his affidavit – that either had any involvement in either the decision to place Trujillo on paid administrative leave or to give him a Letter of Understanding.  Trujillo has not offered any evidence that Williams had any involvement in the decision to send Trujillo the Letter of Understanding.  Principal Griego and Vice-Principal Smith sent Trujillo the Letter of Understanding. Williams sent Trujillo the letter placing Trujillo on administrative leave with pay.  The Court cannot fairly attribute each of these employment decisions to each individual Defendant.

The record does not present evidence that links Vigil and Peck to either employment decision. Williams cannot fairly be linked to the Letter of Understanding.  This review of  the record provides additional grounds for dismissing the case against the individual Defendants.

Because Trujillo failed to establish a genuine issue of material fact that any of the Defendants violated his constitutional rights,  the Defendants are entitled to qualified immunity.

Based on the foregoing discussion and conclusions, the Court will, therefore, grant summary judgment in favor of the Defendants.

**IT IS ORDERED** that the Defendants Joseph Vigil, Susie Peck, Anthony Griego, Bruce Smith, and Ronald Williams' Motion for Summary Judgment is granted and the Plaintiff's claims

against them are dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Transito Trujillo
Albuquerque, New Mexico

     *Pro se Plaintiff*

Max J. Madrid
Alex C. Walker
Modrall, Sperling, Roehl, Harris & Sisk
Albuquerque, New Mexico

     *Attorneys for Defendants Board of Education,*
     *Albuquerque Public Schools; Joseph Vigil;*
     *Susie Peck; Anthony Griego; Bruce Smith;*
     *and Ronald Williams*

Richard L. Alvidrez
Sean Olivas
Keleher & McLeod
Albuquerque, New Mexico

     *Attorneys for Defendant Mark Mayerstein*