## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

TRANSITO TRUJILLO,

        Plaintiff,

vs.                                                                 No. CIV 02-1146 JB/LFG

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,
JOSEPH VIGIL and SUSIE PECK, Albuquerque
Public Schools Superintendents individually and
in their official capacities; ANTHONY GRIEGO,
Principal, Valley High School, individually and in
his official capacity; BRUCE SMITH, Valley High
School Assistant Principal, individually and in his
official capacity; RONALD WILLIAMS, Director
of Certified Staffing, Albuquerque Public Schools,
individually and in his official capacity; and MARK
MAYERSTEIN, Valley High School employee,
individually and in his official capacity,

        Defendants.

        and

TRANSITO TRUJILLO,

        Plaintiff,

vs.                                                                 No. CIV 03-1185 JB/LFG

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS;
MARK MAYERSTEIN, Senior ROTC
Instructor, and ANTHONY GRIEGO,
Valley High School Principal, in their
official and Individual capacities,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Defendants Albuquerque Public Schools ("APS"), Joseph Vigil, Susie Peck, Anthony Griego, Bruce Smith, and Ronald Williams' Motion for Summary Judgment, filed on October 9, 2003 (Docs. 67 & 68); and (ii) Plaintiff's Motion for Partial Summary Judgment of Title VII Retaliation Claim Against Defendant Albuquerque Public Schools (Count II), filed October 10, 2003 (Docs. 69 & 70).[1]  The Court held a hearing on these two motions on January 9, 2004.[2]  Consistent with the Court's ruling at the hearing on these motions, and for the reasons given at the time of the hearing, the Court will grant the Defendants Albuquerque Public Schools ("APS"), Joseph Vigil, Susie Peck, Anthony Griego, Bruce Smith, and Ronald Williams' ("the individual Defendants")(collectively referred to as "APS")[3] motion for summary judgment and

---

[1] The Court entered an Order denying Trujillo's motion for summary judgment on January 14, 2004 (Doc. 108).  The purpose of this memorandum is to explain its reasoning for its decision reflected in that Order and in the Court's oral ruling on Trujillo's motion.  It is also to explain the Court's ruling on APS' motion.

[2] Trujillo filed, briefed, and argued this motion when an attorney, Dennis W. Montoya, represented him.  On January 27, 2004, however, Trujillo entered an appearance to proceed *pro se*.  See Doc. 109.  Montoya filed an unopposed motion to withdraw on February 3, 2004 (Doc. 110), which the Court granted,  see Order, filed February 4, 2004 (Doc. 111).

[3] In the Tenth Circuit, Title VII is usually not actionable against individuals.  See Haynes v. Williams, 88 F.3d 898,  901 (10th Cir. 1996)("[T]he language and structure of amended Title VII continue to reflect the legislative judgment that statutory liability is appropriately borne by employers, not individual supervisors. . . .  [P]ersonal capacity suits against individual supervisors are inappropriate under Title VII..")(citing Sauers v. Salt Lake County, 1 F.3d 1122, 1125 (10th Cir.1993)); Sauers v. Salt Lake County, 1 F.3d 1122, 1125 (10th Cir.1993)("Under Title VII, suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate.").  Although the circuits are split on whether employees can be held individually liable under Title VII, the trend is to disallow individual liability.  See 3 Emp. Discrim. Coord. Analysis of Federal Law § 121:3 (2004).  The Second, Fifth, Ninth, and Eleventh Circuits have also held that an employee may not be liable in their individual capacity under Title VII.  See Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995)(holding "that individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII."), abrogated on other grounds by

deny Trujillo's motion for partial summary judgment.[4]

Both parties moved for summary judgment on this claim. The United States Court of Appeals

for the Tenth Circuit has explained:

It is . . . settled doctrine that the fact that both parties have moved for summary

---

Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 753 (1998); Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587 (9th Cir.1993)("The liability scheme[] under Title VII . . . limit[s] civil liability to the employer."), cert. denied, 510 U.S. 1109 (1994); Grant v. Lone Star Company, 21 F.3d 649, 653 (5th Cir.), cert. denied, 513 U.S. 1015 (1994); Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir.1991)(concluding that Title VII "claims must be made against the municipal officer in his official capacity, not in his individual capacity.").

[4] In Count II of Trujillo's complaint, he alleges violation of Title VII and the New Mexico Human Rights Act ("NMHRA"). The Defendants moved for summary judgment on all remaining claims, including Count II. Although the Defendants do not address the NMHRA claim in their analysis, the "[p]laintiff's burden of establishing a prima facie case under the New Mexico Human Rights Act, NMSA § 28-1-7, is actually identical to his burden under Title VII." Gioia v. Pinkerton's Inc.,194 F. Supp. 2d 1207, 1220 (D.N.M. 2002)(Black, J.)(citing Cates v. Regents of the N.M. Inst. of Mining & Tech., 124 N.M. 633, 954 P.2d 65, 70 (1998)). See Smith v. FDC Corp., 109 N.M. 514, 517, 787 P.2d 433, 436 (1990)(adopting "evidentiary methodology" of the McDonnell Douglas analysis, but noting that "New Mexico law [is not bound] to interpretations made by the federal courts of the federal statute."). Moreover, as with Title VII, unlawful retaliation is a cause of action under NMHRA. See Ocana v. Am. Furniture Co., 135 N.M. 539, 91 P.3d 58, 72 (2004)(only Pacific Reporter pagination available)("NMHRA makes it unlawful for any person or employer to retaliate against 'any person who has opposed any unlawful discriminatory practice.'")(quoting N.M.S.A. 1978 § 28-1-7(I)(2) and citing Gonzales v. N.M. Dep't of Health, 129 N.M. 586, 593-94, 11 P.3d 550, 557-58 (2000)).

Unlike Title VII, however, under which employees are not individually liable, the Supreme Court of New Mexico "has acknowledged the possibility of individual liability for discrimination claims." Sonntag v. Shaw, 130 N.M. 238, 243, 22 P.3d 1188, 1193 (2001). Accordingly, several judges in this district have recognized that an individual defendant can be liable under NMHRA: the Honorable John Edwards Conway, United States District Judge, see Ross v. Lee Enter., Inc., No. CIV 99-0139, at 3-4, filed May 28, 1999 (Doc. 39); the Honorable James A. Parker, United States District Judge, see Denham v. Mesa Mental Health, CIV No. 98-540, at 2, filed Aug. 7, 1998 (Doc. 17); the Honorable Bruce Black, United States District Judge, see Sieben v. City of Albuquerque, No. CIV 96-1822, at 3, filed Nov. 21, 1997)(Doc. 88); and the Honorable Judge Richard Puglisi, United States Magistrate Judge, see Sanchez v. Mora-San Miguel Elec. Coop., No. CIV 96-1430, filed Mar. 24, 1997 (Doc. 24). Thus, in granting the Defendants' motion for summary judgment, the Court also grants APS and the individual Defendants summary judgment on the NMHRA claim.

judgment does not permit the entry of a summary judgment if disputes remain as to material facts. However, cross motions for summary judgments do authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties.

Harrison W. Corp. v. Gulf Oil Co., 662 F.2d 690, 692 (10th Cir. 1981)(citations omitted). See Sec. & Exch. Comm'n v. Am. Commodity Exch., Inc., 546 F.2d 1361, 1366 (10th Cir. 1976)("[F]iling of cross-motions under Rule 56, F. R. Civ. P. raises the inference that there is no evidence other than the pleadings and supporting instruments to be considered, and so the trial court need only examine those materials in ascertaining whether an issue of material fact exists.").

### FACTS[5]

Trujillo honorably retired from the United States Air Force after 26 years of service. See Affidavit of Transito Trujillo in Aid of His Response to Certain Defendants' Motion for Summary Judgment on the Basis of Qualified Immunity ¶¶ 1-2, at 1 (executed August 27, 2003)(hereinafter "Trujillo Aff., August 27, 2003"). Thereafter, the Albuquerque Public Schools ("APS") hired Trujillo at Valley High School ("VHS") as Aerospace Science Instructor ("ASI") in the Air Force Junior ROTC ("AFJROTC") program. See id. Trujillo held the position of ASI for almost eleven years. See id. ¶ 2, at 1. Trujillo maintains that, during his employment with VHS, he was a well-liked and

---

[5] To the extent that the briefing addresses Trujillo's decertification or termination as an adverse action, Trujillo has agreed that any claim for wrongful termination is inappropriate for this case because the Air Force -- the party which decertified Trujillo resulting in his termination -- is not a party to this litigation. See April 8, 2005 at 22:10-24. Based upon Trujillo's representation that any claim based on decertification or wrongful termination are not part of this case, the Court denied the Defendants' motion to dismiss for failure to join an indispensable party, i.e., the Air Force. See id. at 26:7-22. Accordingly, because Trujillo does not address wrongful termination in this motion, the Court will not recite facts relating to his discharge.

The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any finalized transcript may contain slightly different page and/or line numbers.

respected faculty member.   See Teacher Evaluation Reports at 1 (dated May 15, 2000, May 27, 1999, May 21, 1998, June 3, 1997, May 18, 1995, April 14, 1994, and May 4, 1993); Certificates of Appreciation (dated May 24, 2001, May 22, 2001, May 9, 2000, May 13, 1999, and May 10, 1999).

When a position for Senior ASI became available in the VHS AFJROTC program to replace Colonel Richardson Crook, APS hired Mayerstein to replace Crook.   See Complaint for Discrimination, Retaliation, Defamation, for Violation of Civil Rights Under Color of State Law, and for Violation of Civil Rights Under the Color of Federal Law Pursuant to the Doctrine of Bivens vs. Six Unknown Agents ¶ 24, at 10, filed September 11, 2002 (Doc. 1)(hereinafter "Complaint"). Trujillo's wife, Lourdes Trujillo ("Lourdes"),[6] alleges that she applied, but was not hired, for the position which APS hired Mayerstein and, in response, filed an Equal Employment Opportunity Commission ("EEOC") complaint on June 1, 2001, alleging discrimination based on national origin and sex.   See EEOC Charge of Discrimination at 1, dated June 1, 2001.      Trujillo contends that Lourdes' EEOC charge was "generally known" -- and known to the individual defendants to this lawsuit -- in December 2001.   Complaint ¶ 28, at 11.

Trujillo alleges that he openly supported Lourdes in the EEOC process and as she prepared to litigate the issue.   See Trujillo Aff., August 27, 2003, ¶ 30, at 12.   When asked at the hearing what evidence Trujillo placed in the record demonstrating that APS employees retaliated against him for his support of Lourdes' complaint, Trujillo's counsel referred to a conversation which occurred between Trujillo and Mayerstein in September 2001.[7]   See Transcript of Hearing at 147:2-20.

_____

[6] For clarity and consistency, the Court will refer to Lourdes Trujillo as "Lourdes" and Transito Trujillo as "Trujillo" throughout its opinion.

[7] In Trujillo's discussion of the prima facie case in his response to APS' motion, Trujillo states: "As early as September 2001 Defendant APS knew of Plaintiff's support of his wife's EEOC

According to Trujillo, in this conversation, Mayerstein mentioned to Trujillo that he was aware of

Lourdes' EEOC complaint and of her being upset at not being hired, and asked Trujillo if they could

work together.  See Affidavit of Transito Trujillo ¶ 11, at 5 (dated October 26, 2003)(hereinafter

"Trujillo Aff., October 26, 2003").  Trujillo responded that his problem was with APS and not with

Mayerstein.  See id. ¶ 12, at 5.  He also stated that he was supportive of Lourdes' complaint.  See

id.  Trujillo testified in his deposition that, despite that Lourdes was suing APS over the job for which

APS hired Mayerstein,  Trujillo felt that he and Mayerstein could work together.  See Trujillo Depo.

at 419:6-10.  At their first meeting Trujillo and Mayerstein cleared the air, see id. at 419:21-25; id.

420:1, and, thereafter, began to have a good working relationship, see id. at 420:12-21.  Trujillo

believed he and Mayerstein got along well and appreciated Mayerstein's new ideas.  See id. at 421:1-

14.  In addition, Mayerstein and Trujillo attended hockey games with each other's children.  See id.

at 420:22-24.  In his Undisputed Material Facts, Trujillo describes their initial relationship as

---

filing."  Response to Plaintiff's Response to [sic] Defendants APS, Joseph Vigil, Anthony Griego,
Bruce Smith, Susie Peck, and Ronald Williams['] Motion for Summary Judgment at 5, filed October
27, 2003 (Doc. 81)(hereinafter "Response to Defendants' Motion for Summary Judgment").  In his
motion, however, Trujillo does not specify the portion of record supporting this allegation, and he
does not include this statement in his undisputed material facts ("UMF").  The Court will assume that
the portion of Trujillo's affidavit to which his attorney cited at the hearing is what Trujillo offers to
support this allegation.

The part of the record to which Trujillo's counsel referred which documents this
conversations is not attached to either Trujillo's motion for summary judgment on the Title VII claim
against APS, or the Defendants' motion for summary judgment on the Title VII claim.  Instead, the
affidavit to which Trujillo's counsel referred in the hearing is attached to Trujillo's Response to
Defendants' Motion for Summary Judgment on the Basis of Qualified Immunity.  See Trujillo Aff.,
October 26, 2003, ¶ 11, at 4.

The Court notes that Trujillo's Response to Defendants' Motion for Summary Judgment
refers to summary judgment on the basis of qualified immunity.  The substance of the motion,
including the UMF, however, addresses APS' motion for summary judgment on the Title VII claim.
Thus, the Court considered this Response in addressing APS' motion.

"courteous and professional."  Plaintiff's Memorandum Brief in Support for Summary Judgment as to Plaintiff's Title VII Retaliation Claim Against Defendant Albuquerque Public Schools (Count II) ¶ 5, at 3, filed October 10, 2003 (Doc. 70)(hereinafter, "Plaintiff's Title VII Motion for Summary Judgment").

The other incident which Trujillo's counsel discussed in response to the Court's question of what evidence Trujillo placed in the record demonstrating that APS retaliated against him because of his support for Lourdes' complaint involved Trujillo's efforts to determine whether Mayerstein was Federal Aviation Administration ("FAA") certified.  See Transcript of Hearing 146:2 - 148:14. According to Trujillo, he asked Mayerstein if he was FAA certified, Mayerstein replied that he was not.  See Trujillo Aff., October 26, 2003, at ¶ 14, at 5.[8]  He then "reported Mayerstein to [Anthony] Griego," VHS' principal, because "Mayerstein did not comply with Air Force mandated requirements."  Id. ¶ 15, at 6.[9]  On December 10, 2001, Lourdes wrote a letter to the Board of Education asserting that Mayerstein was teaching the ROTC Private Pilot Ground School course without the proper certification.  See Letter from Lourdes E. Trujillo to Albuquerque Public Schools Board of Education at 1 (dated December 10, 2001).[10]  Trujillo allegedly conducted this inquiry into

---

[8] Trujillo does not mention this conversation in any of his briefing on these motions.  He referred to this allegation only at the hearing, at which time he provided the Court with a cite to the record.  See Transcript of Hearing at 147:5-12.

[9] Trujillo does not mention this conversation in any of his briefing on these motions.  He referred to this allegation only at the hearing.  See Transcript of Hearing at 147:5-12.

[10] Trujillo also alleges that Lourdes spoke to Mayerstein about the FAA certificate issue, and Mayerstein told Lourdes that Trujillo should "watch his six o'clock."  Trujillo Depo. at 434:5-9.  The only evidence of this alleged statement is in Trujillo's deposition, in which he testifies about the alleged conversation between Lourdes and Mayerstein.  See id. at 433:15 - 435:20.  According to Trujillo, Lourdes told him that she had a conversation with Mayerstein about her letter to APS, and Mayerstein told her that he could have Trujillo fired and that Trujillo should watch his 6:00.  See id.

Mayerstein's certification to gather information to support Lourdes' lawsuit against APS.  See Transcript of Hearing 148:1-5.

Beginning in November 2001, Mayerstein reported to the VHS administration that Trujillo was not working his scheduled hours and rarely came to class prepared to teach.  See Memorandum for Record at 1 (dated November 8, 2001).  APS contends that, in response to Mayerstein's allegations, Trujillo made a number of allegations concerning Mayerstein's performance.  In support of this contention, APS provides two memoranda from Trujillo to Griego.  See Memorandum to Griego from Trujillo at 1 (dated April 4, 2002); Memorandum to Griego from Trujillo at 1 (dated April 5, 2002).  In the April 4th memorandum, Trujillo writes that "Mayerstein is a vindictive, immature nature, is withholding information that [Trujillo] needs to do [his] job."  Memorandum to

---

at 434:5-9.  The Court need not consider, assuming the conversation took place, the impact of Mayerstein's alleged threats because the statements are inadmissible hearsay.  The only evidence supporting these statements is Trujillo's testimony about what Lourdes told him about her conversation with Mayerstein.  If Lourdes were to testify, Mayerstein's comments to Lourdes might be a party opponent's admission and therefore admissible as nonhearsay.  See Fed. R. Evid. 801(d)(2).  The state of mind exception under rule 803(3) of the Federal Rules of Evidence might also get in the statement if Lourdes were to testify; however, Trujillo does not offer these statements to show that Mayerstein was aware of the letter.  The only reason for offering the statements about being able to fire Trujillo and that Trujillo should watch his back seems to be for the truth of the matter asserted -- that Mayerstein threatened Trujillo after hearing about Lourdes' letter.  In any case, because Trujillo rather than Lourdes is testifying to this statement, Trujillo's conversation with Lourdes about these statements is inadmissible hearsay.  See Starr v. Pearl Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995)("Rule 56 precludes the use of inadmissible hearsay testimony in depositions in support of, or in opposition to, summary judgment.").

Trujillo, in his reply, contends that the statement is not offered for the truth of the matter asserted, but instead as impeachment evidence.  See Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment of Title VII Retaliation Claim Against Defendant Albuquerque Public Schools (Count II) at 3, filed November 12, 2003 (Doc. 87).  Even if admissible in a trial on the merits as impeachment evidence, the Court should not consider this statement at this stage of the proceedings because, when offered as an undisputed material fact, the analysis is that of hearsay.  Because it is an inadmissible hearsay statement, the Court will not consider this fact in its analysis.

Griego from Trujillo at 1 (dated April 4, 2002). Trujillo maintains that Mayerstein's allegations about

his work performance are untrue. <u>See</u> Response to Defendants' Motion for Summary Judgment ¶

D, at 2. Trujillo further contends that, in its motion, APS "mischaracteriz[ed]" the facts, and that,

in these memoranda, Trujillo was not making specific allegations about Mayerstein, but instead was

attempted to defend himself against Mayerstein's accusations. Response to Defendants' Motion for

Summary Judgment ¶ E, at 2.

Trujillo alleges that Mayerstein made numerous sexist, racist, and inappropriate comments

in front of multiple students. <u>See</u> Plaintiff's Title VII Motion for Summary Judgment ¶ 8(B), at 4.[11]

In support of this allegation, Trujillo cites to the affidavit of Estrella Serna -- an student who attended

to AFJROTC program for four years -- in which she states that Mayerstein made "negative comments

about students." Affidavit of Estrella Serna ¶ 12, at 4 (executed October 9, 2003). Trujillo also cites

letters from parents and teachers concerning Mayerstein's actions. <u>See</u> Letters from Students

Regarding Mayerstein's Behavior.[12] Trujillo also contends that Mayerstein often humiliated,

threatened and intimidated students. <u>See</u> Plaintiff's Title VII Motion for Summary Judgment ¶ 9, at

4-5. Trujillo contends that he reported "these activities" to Griego and Bruce Smith, VHS' assistant

principal. <u>See</u> <u>id.</u> ¶ 10, at 5. The portion to which Trujillo cites, however, refers to several incidents,

including: (i) throwing a student's books in a trash can; (ii) calling a "special needs kid" and another

student "losers" and "dumb asses;" and (iii) telling one of his students that, if he joined a gang, he

---

[11] Trujillo has two facts in his Undisputed Material Facts section number "eight." <u>See</u>
Plaintiff's Title VII Motion for Summary Judgment ¶¶ 8, at 4. Accordingly, the Court will refer to
the first eight as "8(A)" and the second eight as "8(B)."

[12] Although many of these letters refer to Mayerstein's inappropriate and offensive conduct,
none of the letters specifically describes any racist or sexist remarks.

would go to prison and be "butt fucked."  Trujillo Aff., August 27, 2003, ¶ 10, at 5.

On April 3, 2002, Trujillo filed an EEOC complaint alleging retaliation in violation of Title VII based on his support of Lourdes' EEOC complaint.  See EEOC Charge of Discrimination at 1 (dated April 3, 2002).  In April 2002, Griego evaluated Trujillo and Mayerstein.  See Trujillo's Evaluation Letter at 1 (dated April 18, 2002); Mayerstein's Evaluation Letter at 1 (dated April 19, 2002).  Griego noted that Mayerstein met six of nine competencies, see Mayerstein's Evaluation Letter at 1, whereas Trujillo met seven of nine competencies,  see Trujillo's Evaluation Letter at 1 (dated April 18, 2002).  Griego also identified a personality conflict between Trujillo and Mayerstein. See id.  In its motion, APS cites to Trujillo's deposition in which he agreed there existed a hostile work environment at VHS.  See Trujillo Depo. 265:12-14.  APS contends that "[a]ll of this negatively impacted on the JROTC program and created a hostile educational environment . . . within the [VHS] JROTC program."  Defendants' Motion for Summary Judgment ¶ 15, at 5.  Trujillo alleges that this "mischaracteriz[es]" his deposition, and states that, although Trujillo agreed that a hostile work environment existed, Trujillo testified that Mayerstein -- and not Trujillo -- created the hostile work environment.  Response to Defendants' Motion for Summary Judgment ¶ G, at 2-3.  See Trujillo Depo. 265:9-17.

On April 11, 2002, Trujillo received a Letter of Understanding from Bruce Smith, indicating that Trujillo's actions, including not following the proper military and APS rules and regulations and not signing out before leaving campus, were "detrimental to the education environment at [VHS]" and that, "[i]f such actions continue[, Trujillo] could face disciplinary actions."   Letter of Understanding from Smith to Trujillo at 1 (dated April 11, 2002).  Mayerstein received a Formal Letter of Reprimand on April 19, 2002, stating that his "conduct, as an employee of [APS] is not at

an appropriate level." Letter of Reprimand from Smith to Mayerstein at 1 (dated April 19, 2002).

On April 21, 2002, APS received a telephone call from Cynthia Ruiz, in which she stated that Trujillo and Mayerstein were in a "pissing contest" with each other. Record of Cynthia Ruiz' Telephone Conversation at 1 (dated April 21, 2002). APS received another phone call from Lanie Logan in which she complained of a confrontation that she had with Trujillo. See Griego's Memorandum of Conversation with Logan at 1.[13]

On April 29, 2002, Ron Williams, APS' Director, placed Trujillo and Mayerstein on administrative leave "pending an investigation of allegations that you have created a hostile educational environment at [VHS]." Letter from Williams to Trujillo at 1 (dated April 29, 2002); Letter from Williams to Mayerstein at 1 (dated April 29, 2002). Trujillo was taken off administrative leave on August 5, 2002. See Complaint ¶ 56, at 21.

In his Complaint and EEOC complaint, Trujillo alleges that APS retaliated against him because he supported his wife in her EEOC charge. See Complaint ¶ 77, at 26; Trujillo's EEOC Charge of Discrimination at 1.[14] Both parties moved for summary judgment on this claim.

---

[13] The Court had difficulty deciphering the handwriting in Griego's memorandum documenting this conversation, which APS attached to support this Undisputed Material Fact and, therefore, was not able to verify the exact contents of the memorandum. Because Trujillo, however, did not dispute this material fact, the Court will assume that the memorandum's contents support the proposition for which it is offered.

[14] In his response to APS' motion for summary judgment, Trujillo also alleged that he was retaliated against for filing his EEOC complaint on April 3, 2002. See Response to Defendant's Motion for Summary Judgment at 5, 7. In its Reply, APS addressed Trujillo's EEOC complaint as the basis for his Title VII retaliation claim. See Reply in Support of Defendants APS, Joseph Vigil, Anthony Griego, Bruce Smith, Susie Peck, and Ronald Williams' Motion for Summary Judgment at 5-9, filed November 7, 2003 (Doc. 86). At the oral hearing on this motion, the arguments included discussion of Trujillo's EEOC complaint, and the Court's oral ruling encompassed this allegation. After giving the ruling, however, Trujillo's counsel asked the Court to withdraw as an issue whether APS retaliated against Trujillo for filing his EEOC complaint. See Transcript of Hearing at 178:4-9;

## STANDARDS FOR DECIDING MOTIONS FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure allows a court to grant summary judgment if a party is entitled to judgment as a matter of law and there are no genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  To avoid summary judgment, the non-moving party must contradict facts that the movant specifically avers.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

The moving party bears the initial burden of establishing the absence of any genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. at 323.  The moving party can meet this burden by highlighting to the court an insufficiency of evidence as to an essential element of the nonmovant's claim.  See id.  Once met, the burden shifts to the nonmoving party to present specific, admissible facts from which a rational trier of fact could find for the nonmovant.  See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998)(citations omitted; citing Celotex Corp. v. Catrett, 477 U.S. at 324).  The non-moving party "must go beyond the pleadings and identify specific facts which demonstrate the existence of an issue to be tried by the jury."  Martinez v. Am. Oil and Supply Co., No. 99-2228, 200 WL 807247, at *3 (10th Cir. June 23, 2000)(unpublished decision).

For the purposes of summary judgment, a court assumes the non-moving party's evidence to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See

---

id. at 180:14-25. APS objected to the withdrawal of claims after the Court gave its oral ruling.  See id. at 179:2 -180:11.  Because the parties briefed the issue, the oral arguments encompassed Trujillo's EEOC complaint, and the Court ruled in the alternative on whether APS retaliated against him for filing his EEOC complaint, the Court declined to amend its oral ruling.  See id. at 181:12-22.  This Memorandum Opinion and Order, therefore, addresses whether APS retaliated against Trujillo based on his support of Lourdes' EEOC complaint or filing his own EEOC complaint.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  If "the evidence, interpreted favorably to the plaintiff, could persuade a reasonable jury that the employer had discriminated against the plaintiff," the court should deny summary judgment.  MacDonald v. E. Wyo. Mental Health Ctr., 941 F.2d 1115, 1121 (10th Cir. 1991)(quoting Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1570 (7th Cir. 1989)(quotation omitted)).

The court should, however, grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  A "genuine" factual dispute requires the non-moving party to show more than a mere scintilla of evidence to overcome a motion for summary judgment.  Id. at 252.

The court may grant summary judgment "if the non-moving party's evidence is merely colorable[] or is not significantly probative." Id. at 250-51 (citations omitted).  "In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52.

## LAW ON TITLE VII

### I.   MCDONNELL DOUGLAS ANALYSIS.

In the absence of direct evidence, claims of age, race, national origin, gender discrimination, hostile work environment, and retaliation are all subject to the burden shifting framework that the Supreme Court established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973). See Pastran v. K-Mart Corp., 210 F.3d 1201, 1205 (10th Cir. 2000)(noting that retaliation claims are subject to the burden shifting analysis under McDonnell Douglas).  Under McDonnell Douglas, the establishment of a prima facie case of discrimination creates a presumption that the employer unlawfully discriminated or retaliated against the employee.  See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).  This presumption places upon the defendant the burden of producing an explanation to rebut the prima facie case.  See id. at 506-507.  This burden is one of production, not persuasion.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000).

To meet its burden, the defendant need only articulate a facially nondiscriminatory reason for its actions.  The defendant is not obligated to litigate the merits of its reasoning nor does it need to prove that the reasons it relied upon were bona fide.  See Panis v. Mission Hills Bank, N.A., 60 F.3d 1486, 1491 (10th Cir. 1995), cert. denied, 516 U.S. 1160 (1996); EEOC v. Flasher Co., 986 F.2d 1312, 1316 (10th Cir. 1992).  Once the defendant has met its burden, the presumption of unlawful discrimination drops from the case.  See St. Mary's Honor Center v. Hicks, 509 U.S. at 507.

After the defendant has met its burden of producing an explanation, the plaintiff bears the ultimate burden of persuading the trier of fact that the defendant unlawfully discriminated or retaliated against her.  The plaintiff discharges that burden directly by proving that the defendant acted with discriminatory motive or indirectly by showing that the stated reason for its action was a pretext, i.e.,

-14-

the facially nondiscriminatory reason was a cover-up for a decision motivated by unlawful discrimination.  See EEOC v. Flasher Co., 986 F.2d at 1317.  "Pretext can be shown by 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'"  Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)(quoting Olson v. General Electric Astrospace, 101 F.3d 947, 951-52 (3d Cir. 1996)).

## II.   RETALIATION.

Title VII prohibits retaliation against employees for opposing any practice that Title VII makes unlawful or for asserting a charge, testifying, assisting or participating in any manner in an investigation, proceeding, or hearing under Title VII.  See Gunnell v. Utah Valley State Coll., 152 F.3d 1253, 1262 (10th Cir. 1998).  To establish a prima facie case of retaliation, the plaintiff must show that:  (i) he engaged in an activity that Title VII protects; (ii) that the employer took an adverse employment action against him subsequent to her protected activity; and (iii) there was a causal connection between his participation in the protected activity and the adverse employment action that the employer took.  See id. at 1262-63.

### A.   PROTECTED ACTIVITY.

42 U.S.C. § 2000e-3(a) states:

> It shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Id.  An employee engages in protected activity when he or she files an EEOC charge.  See Anderson

-15-

v. Coors Brewing Co.,181 F.3d 1171, 1178 (10th Cir. 1999); McGarry v. Bd. of Cty. Comm'rs, 175

F.3d 1193, 1201 (10th Cir. 1999).  It is unlawful, therefore, for an employer to terminate an employee

based on his participation in the protected activity of filing an EEO charge.  See Anderson v. Coors

Brewing Co.,181 F.3d at 1178.  Title VII does not just protect the person filing the EEOC claim; it

extends to testifying, assisting or participating in the proceedings arising out of an EEOC claim as

well.  See 42 U.S.C. § 2000e-3(a); Kelley v. City of Albuquerque, No. CIV 03-507, at 55-61

(D.N.M. December 30, 2004).

> **B.  ADVERSE EMPLOYMENT ACTION.**

Applying a liberal definition to the phrase "adverse employment action," the Tenth Circuit

does not limit such actions to monetary loses.  Sanchez v. Denver Pub. Schs., 164 F.3d at 532 (citing

Berry v. Stevinson Chevrolet; 74 F.3d 980, 986-87 (10th Cir. 1996)).  Instead, the Tenth Circuit

"takes a case-by-case approach, examining the unique factors relevant to the situation at hand."

Sanchez v. Denver Pub. Schs., 164 F.3d at 532 (internal quotations omitted)(citing Jeffries v. Kansas,

147 F.3d 1220, 1232 (10th Cir. 1998)).  The action, however, must be more than "'a mere

inconvenience or an alteration of job responsibilities' to be an adverse employment action."  Sanchez

v. Denver Pub. Schs., 164 F.3d at 532 (quoting Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d

132, 136 (7th Cir. 1993)).  In Sanchez v. Denver Public Schools, the Tenth Circuit held that a

teacher's transfer between schools within the same vicinity did not constitute an adverse employment

action for purpose of Title VI discrimination liability.  See 64 F.3d at 532.  In so holding, the Tenth

Circuit noted that it was a purely lateral transfer in that her salary and benefits remained the same and

that she continued to teach at the same level.  See id.

To be adverse, the action must "constitute[] a significant change in employment status, such

as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (1998). To constitute an adverse employment action, the conduct must be "'materially adverse' to the employee's job status." Wells v. Colo. Dep't of Transp., 325 F.3d 1205, 1213 (2003)(quoting Sanchez v. Denver Pub. Sch., 164 F.3d at 533).

In Wells v. Colorado Dep't of Transportation, the Tenth Circuit addressed whether a supervisor's "poor treatment" of the employee was sufficient to establish an adverse employment action. 325 F.3d at 1214. In that case, the plaintiff alleged that the supervisor undermined her authority at a work site when they had a disagreement in front of other workers. See id. In denying the plaintiff's claim that supervisor's behavior "may have been inappropriate, [the Tenth Circuit has] followed other courts in holding that 'unsubstantiated oral reprimands' and 'unnecessary derogatory comments' are not in themselves 'materially adverse employment action[s].'" Id. at 1214 (quoting Sanchez v. Denver Pub. Schs., 164 F.3d at 533). The Wells v. Colorado Dep't of Transportation court also held that the decision to reassign a plaintiff to a larger, more sophisticated engineering project did not constitute an adverse employment action because "[h]er job classification and rate of pay remained the same, and her position was similar to those she had occupied in previous years." Wells v. Colo. Dep't of Transp., 325 F.3d at 1213.

In another case, Tran v. Trustees of State Colleges in Colorado, 355 F.3d 1263 (10th Cir. 2004), the Tenth Circuit held that a plaintiff's transfer to two different supervisors did not constitute an adverse employment action. See id. at 1268. Noting that the transfers did not "result in a loss of employment, compensation, or benefits," the Tenth Circuit then considered the claim that the first transfer was adverse because the plaintiff was not qualified. Id. In rejecting this argument, the Tenth

-17-

Circuit noted that the plaintiff's work evaluation during this period was "above standard" and "commendable."  Id. (holding that requiring plaintiff to learn new skills or the possibility she could have received training did not create an adverse change in her job responsibilities).

Office memoranda critiquing the employee's performance are not considered adverse material actions when the plaintiff does not "suffer any tangible consequence from th[e] memo, in the form of a loss of pay or benefits or further discipline." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1240 (11th Cir. 2001)(holding that a "counseling memorandum," as compared with the formal disciplinary procedure, that expressed concern and criticism of the employee's performance was not an adverse employment action because the employee did not suffer any tangible consequence from the memorandum.).  But see Roberts v. Roadway Express, 149 F.3d 1098, 1104 (10th Cir. 1998)(holding that written warnings that impacted the probability an employee would be terminated are adverse employment actions).  "There is little support for the argument that negative performance evaluations alone can constitute an adverse employment action. . . . [Plaintiff] has not identified, nor have we discovered, a single case where adverse performance ratings alone were found to constitute adverse action." Smart v. Ball State Univ., 89 F.3d 437, 442 (7th Cir.1996).

An isolated threat or proposal of a potentially adverse action is not, in and of itself, materially adverse.  See Wells v. Colo. Dep't of Transp., 325 F.3d at 1214.  The threat of being written up for insubordination is not enough to establish an adverse employment action.  See Sanchez v. Denver Pub. Schs., 164 F.3d at 533 (holding that "unsubstantiated oral reprimands" do not constitute an adverse employment action "absent evidence that they had some impact on the employee's employment status.").  In support of this conclusion, the Tenth Circuit, in Sanchez v. Denver Public Schools, quoted the United States Court of Appeals for the Third Circuit, which stated: "[N]ot

everything that makes an employee unhappy qualifies as retaliation, for otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1301 (3d Cir. 1997). Even if disagreeable, if the supervisor's conduct does not significantly alter the plaintiff's employment status, it is not an adverse employment action for the purpose of Title VII claims. Sanchez v. Denver Pub. Schs., 164 F.3d at 533.

### C.    CAUSAL CONNECTION.

The Tenth Circuit recently articulated the plaintiff's burden in establishing the causal connection element of the prima facie case: "Plaintiff can establish the requisite causal connection by producing 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" Adams v. Wash. Univ. of Topeka, No. 02-3071, 2003 WL 21290924, *822 (10th Cir. June 5, 2003)(quoting Burrus v. United Tel. Co. of Kan., Inc., 683 F.2d 339, 343 (10th Cir. 1982)). "[U]nless the [adverse action] is very closely connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999)(emphasis in original).

### ANALYSIS

Trujillo does not offer sufficient evidence of an adverse action and of causal connection to establish a prima facie case of Title VII retaliation. Moreover, even if Trujillo established a prima facie case, APS has offered a legitimate, non-discriminatory reason for its action, and Trujillo does not offer evidence to create a genuine issue of material fact that the reason is pretext. Accordingly, the Court will grant APS' motion for summary judgment and deny Trujillo's motion for summary

judgment.

## I.    TRUJILLO DOES NOT OFFER SUFFICIENT EVIDENCE TO ESTABLISH A PRIMA FACIE CASE OF TITLE VII RETALIATION.

To establish a prima facie case of retaliation, Trujillo must demonstrate that: (i) he engaged in an activity that Title VII protects; (ii) that the employer took an adverse employment action against him subsequent to her protected activity; and (iii) there was a causal connection between his participation in the protected activity and the adverse employment action that the employer took. Gunnell v. Utah Valley State Coll., 152 F.3d  at 1262-63 (10th Cir. 1998).

There are three possible bases upon which Trujillo alleges he engaged in Title VII protected activity: (i) supporting his wife's EEOC charge; (ii) reporting Mayerstein's abuses; and (iii) filing his own EEOC charge.  Trujillo engaged in protected activity under Title VII when he filed a charge of discrimination with the EEOC in April 2002.  McGarry v. Bd. of Cty. Comm'rs, 175 F.3d at 1201. Thus, he has met the first prong of the prima facie analysis.[15]

Trujillo's allegations of adverse actions are that the Defendants placed him on administrative

_____

[15] Because Trujillo engaged in protected activity based on the filing of his own EEOC charge, the Court need not address in this Memorandum Opinion whether his support of his wife's charge and being "vocal" in opposing Mayerstein's "discriminatory behavior against students," Plaintiff's Response Defendants' Motion for Summary Judgment at 5, constituted protected activity under Title VII.  As the Court noted at the hearing, however, it has concerns that mere support -- without facts documenting actual assistance to Lourdes in bringing her EEOC charge -- is insufficient to fall within the parameters of activity which Title VII protects.  See Transcript of Hearing at 173:25 - 174:7.  At the hearing, the Court also expressed its doubt, in regard to Trujillo's opposition to Mayerstein's alleged discriminatory practices, that Trujillo included such conduct in his EEOC charge or that there was sufficient evidence in the record of this allegation. See id. at 174:8-16.  Because Trujillo engaged in protected activity by bringing his own EEOC charge, however, the Court need not address in further detail the other bases upon which Trujillo alleges he engaged in protected activity.

leave with pay and that Smith sent him a Letter of Understanding.[16]  With regard to the administrative

leave, while the Tenth Circuit has not spoken directly on point, the United States Court of Appeals

for the Fifth Circuit and  the United States Court of Appeals for the Sixth Circuit have stated that it

does not consider administrative leave with pay to be an adverse action.  See Breaux v. City of

Garland, 205 F.3d 150, 158 (5th Cir. 2000)("Although [the plaintiff] was placed on administrative

leave from late April to July 1994, [the plaintiff] was paid while on leave and returned to his pre-leave

position.  Thus, [the plaintiff] suffered no adverse action with respect to the leave."); Peltier v. United

States, 388 F.3d 984, 988 (6th Cir. 2004).  Because, as an APS employee, Trujillo did not normally

work during the summer, his placement on leave with pay from April 29, 2002 to August 5, 2002

largely occurred when he would not normally have been at work anyway.  See Transcript of Hearing

68:20-24 (discussing the amount of teaching time missed by Trujillo is based on Defendants' assertion

at the hearing, which Trujillo did not contest.).  Because he continued to receive pay and missed only

approximately one month of actual work time, the Court does not believe that this administrative

---

[16] There is evidence in the record that, after Trujillo and Lourdes reported Mayerstein's qualifications, Mayerstein moved Trujillo's office and personal belongings, changed his chain of command with the cadets, altered his work schedule, and "micromanage[d]" everything he did. Trujillo Aff., October 26, 2003, ¶ 21, at 7-8.  Neither party listed these incidents in their statements of material facts or discussed these incidents in their briefing on the motions for summary judgment on the Title VII claim against APS.  Moreover, Trujillo did not mentioned these incidents at the hearing in connection with his Title VII retaliation claim.  Accordingly, although these incidents are in the record, the Court will not consider these incidents.  See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998)("The district court has discretion to go beyond the referenced portions of these materials, but is not required to do so.  If the rule were otherwise, the workload of the district courts would be insurmountable and summary judgment would rarely be granted.")(citation omitted).  The reason that neither party discusses them is that they do not appear sufficiently adverse to constitute an adverse action for the purposes of establishing a prima facie case of Title VII retaliation.  See Sanchez v. Denver Pub. Schs., 164 F.3d 527, 532 (10th Cir. 1998)(holding that, in the context of Title VII, the alleged action must be more than "a mere inconvenience or an alteration of job responsibilities to be an adverse employment action")(quotation omitted).

leave amounts to the adverse action that the Supreme Court contemplated in Burlington Industries, Inc. v. Ellerth or the Tenth Circuit in Sanchez v. Denver Public Schools. In particular, the Court does not find that any "significant" change in status, responsibilities or benefits occurred given that Trujillo's pay remained the same and it was already close to the end of the school year. The Court finds, therefore, that the administrative leave with pay did not constitute an actionable adverse employment action. See Peltier v. United States, 388 F.3d at 988 ("[A] suspension with pay and full benefits pending a timely investigation into suspected wrongdoing is not an adverse employment action.")(quoting White v. Burlington N. & Santa Fe Ry. Co., 364 F.3d 789, 803 (6th Cir. 2004)).

Trujillo also asserts that the Letter of Understanding from Smith constituted an adverse action. First, given that Smith sent Mayerstein a Formal Letter of Reprimand, it is apparent that APS was willing to use letters of reprimand as a tool for discipline and did not do so with regard to Trujillo. Second, Trujillo's Letter did not include a threat of dismissal, although it did include a threat of further disciplinary action. The Tenth Circuit, in Roberts v. Roadway Express, Inc., recognized that, in some cases, written warnings are sufficient to constitute an adverse employment action. See 149 F.3d at 1104. In Roberts v. Roadway Express, Inc., however, the employee received twenty written warnings over a two-year period. See id. In holding that the written warnings constituted adverse employment action, the Tenth Circuit noted that "the record indicates that the more warnings an employee received, the more likely he or she was to be terminated for a further infraction." Id. In this case, however, Trujillo received only one written warning. Moreover, there is no evidence in the record to suggest that, if multiple warnings were issued, "the more likely he or she was to be terminated for a further infraction." Thus, unlike the written warnings that the employee received in Roberts v. Roadway Express, Inc., Trujillo's receiving the Letter of Understanding is not sufficient

-22-

to constitute an adverse employment action.  Finally, Trujillo's Letter, based on its content, is a precursor to any disciplinary action rather than itself constituting a disciplinary action.  The Court does not believe that this Letter of Understanding rises to the level of adverse action that the Supreme Court contemplated in <u>Burlington Indus., Inc. v. Ellerth</u>.  The Court finds that Smith's Letter of Understanding to Trujillo does not constitute an actionable adverse employment action.[17]

Because Trujillo did not offer sufficient evidence to establish a prima facie case of Title VII retaliation, APS is entitled to summary judgment.

## II.   EVEN ASSUMING TRUJILLO ESTABLISHED A PRIMA FACIE CASE FOR TITLE VII DISCRIMINATION, APS HAS OFFERED A LEGITIMATE, NON-DISCRIMINATORY REASON FOR ITS ACTIONS.

Even if the Court assumes that Trujillo met his burden of establishing a prima facie case of retaliation, APS has offered a legitimate, non-discriminatory reason for its actions.  According to APS, it placed Trujillo and Mayerstein on administrative leave so that it could conduct an investigation into allegations that their actions created a hostile work environment.  APS has offered evidence to support its belief that Trujillo contributed to APS' hostile work environment.  <u>See</u>, <u>e.g.</u>, Memorandum to Griego from Trujillo at 1 (dated April 4, 2002).  In their evaluations, Griego noted the personality conflict between Mayerstein and Trujillo.  In addition, VHS had received phone calls from parents about the conflict between Mayerstein and Trujillo.  One parent complained that Trujillo

---

[17] Even if the Court assumes that Trujillo's support of his wife's complaint is protected activity, and that being placed on administrative leave or receiving a Letter of Understanding constitutes an adverse employment action, Trujillo has not offered evidence creating a genuine issue of material fact of a causal connection between the protected activity and any adverse employment action.  Lourdes filed her EEOC charge in June 2001, and the first adverse employment action for Title VII purposes occurred in April 2002.  Trujillo has not offered evidence connecting his alleged support of his wife's complaint, and receiving the Letter of Understanding and being placed on administrative leave.

was involving the students in Trujillo's conflict with Mayerstein; another parent described Mayerstein and Trujillo as being involved in a "pissing contest."   Accordingly, APS placed both Mayerstein and Trujillo on paid administrative leave such that APS could investigate the situation.

## III.   HAVING OFFERED A LEGITIMATE, NON-DISCRIMINATORY REASON, TRUJILLO MUST OFFER EVIDENCE THAT SUCH REASON IS PRETEXT.

Trujillo does not offer evidence to create a genuine issue of material fact that APS' preferred legitimate, non-discriminatory reason is pretext.   "Pretext can be shown by 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" Morgan v. Hilti, Inc., 108 F.3d at 1323.

Trujillo maintains that the proffered reason for issuing the Letter of Understanding is pretext because the issue about being away from campus was an issue only when APS hired Mayerstein and when Lourdes' filed an EEOC complaint.   While the Letter of Understanding may have been the first written warning on Trujillo's habit of leaving campus, Smith, in the Letter, states: "This policy was explained to all employees at a general staff meeting and has been reinforced numerous times."   Letter of Understanding at 1.   Trujillo offers no evidence that APS affirmatively supported or encouraged his ventures off campus; instead, he relies upon the lack of earlier reprimands for such conduct.   In addition, the Letter addresses three concerns, of which Trujillo's absence from campus is only one. The other two issues deal with -- not Trujillo's work performance -- but the manner in which he was working with APS to investigate the issue of he and Mayerstein's relationship.   See id. (addressing Trujillo's leaving a meeting prematurely and discussing the investigation with other staff members

contrary to APS' instructions).  APS' reason for issuing the Letter of Understanding and placing him

on administrative leave, however, was to investigate whether Trujillo was contributing to a hostile

work environment, as opposed to Trujillo's frequent absence from campus.  Because Trujillo's being

away from campus was not part of the reason proffered by APS, this assertion does not establish

pretext.

　　　Moreover, Trujillo contends that, other than Mayerstein's memoranda, there is no evidence

that Trujillo was a "sub-standard" employee.  The Letter of Understanding, however, does not

mention Trujillo's work performance, such as his teaching or organizational skills, other than his

absence from campus.  Furthermore, APS' legitimate, non-discriminatory reason for placing Trujillo

on administrative leave did not directly involve Trujillo's teaching performance; it was to investigate

"allegations that [Trujillo] ha[d] created a hostile work environment at Valley High School."  Letter

from Williams to Trujillo at 1.  Thus, highlighting that there is no evidence of Trujillo being a "sub-

standard" employee in the years before Mayerstein's hire does not establish that APS' reason is

pretext.

　　　Trujillo also maintains that APS has not offered evidence demonstrating how Trujillo

contributed to the creation of the hostile work environment.  APS, however, offered two memoranda

from Trujillo to Griego about Mayerstein.  Trujillo challenges APS' classification of these memoranda

as contributing to the hostile work environment, and defends the memoranda by asserting it was

written only after Mayerstein attacked Trujillo's credibility and interfered with his work.  Even

construing all of facts in favor of Trujillo, however, the Court acknowledges the strong language used

in the memoranda, reinforcing APS' explanation that there was a personality conflict between the two

men that was possibly creating a hostile work environment at the school.  See, e.g., Memorandum

to Griego from Trujillo at 1 (dated April 4, 2002)(""Mayerstein is a vindictive, immature nature, is withholding information that [Trujillo] needs to do [his] job.").  Contrary to Trujillo's assertion that "APS makes absolutely no showing of how Plaintiff was implicated in the creation of a 'hostile work environment,'" these memoranda -- in addition to the two parents' complaints to the school -- provide sufficient evidence to trigger APS' investigating into whether Trujillo contributed to the hostile work environment at VHS.

Whether Trujillo was not the main or predominate contributor to such an environment is not crucial to this Court's inquiry.  The Court must determine whether APS' legitimate, non-discriminatory reason --  that they issued Letters of Understanding/Reprimand and placed both Mayerstein and Trujillo on administrative leave to investigate who was creating the hostile work environment -- is pretext for retaliation.  APS has offered evidence that Trujillo may have contributed to such an environment, and Trujillo has not offered any evidence to refute this proferred reason.

In sum, Trujillo's assertions are insufficient to established a genuine issue of material fact whether APS' proferred reason is pretext.  To the contrary, that Trujillo received a Letter of Understanding, whereas Mayerstein received a Formal Letter of Reprimand, indicates that APS was investigating the conduct both of Trujillo and of Mayerstein, and that APS treated Mayerstein in a more severe manner.  Moreover, that APS placed both Mayerstein and Trujillo on administrative leave supports APS' position that the purpose of the paid leave was to conduct an investigation into both Trujillo and Mayerstein's behavior.  Thus, Trujillo has not presented the Court with evidence to support his allegation that APS' legitimate, non-discriminatory reason is unworthy of belief.

Trujillo therefore did not offer evidence -- circumstantial or otherwise -- from which the Court can infer that APS' explanation is pretext.  Thus, APS is entitled to summary judgment on their

motion for summary judgment, and Trujillo's motion for summary judgment on the Title VII claim
is denied.

**IT IS ORDERED** that the Defendants APS, Joseph Vigil, Susie Peck, Anthony Griego,
Bruce Smith, and Ronald Williams' Motion for Summary Judgment is granted and Plaintiff Transito
Trujillo's Motion for Partial Summary Judgment of Title VII Retaliation Claim Against Defendant
Albuquerque Public Schools (Count II) is denied.   The claim against APS is dismissed with
prejudice.[18]

_____
UNITED STATES DISTRICT JUDGE

---

[18] The Court dismissed by stipulation Counts I, III, V, VI, and VII.  See Stipulated Order
Dismissing with Prejudice Counts III, VI, VII, filed April 24, 2003 (Doc. 31); Stipulation of
Dismissal, filed October 10, 2003 (Doc. 73)(dismissing with prejudice Counts I and V).  The Court
granted Defendants Joseph Vigil, Susie Peck, Anthony Griego, Bruce Smith, and Ronald Williams'
Motion for Summary Judgment.  See Memorandum Opinion and Order, filed September 17, 2004
(Doc. 125).  The Court also granted Defendant Mark Mayerstein's Motion for Summary Judgment.
See Memorandum Opinion and Order, filed March 30, 2005 (Doc. 130).  Having now granting
summary judgment in favor of the Defendants on Count II, this Memorandum Opinion and Order
disposes of all claims against all Defendants.

Transito Trujillo
Albuquerque, New Mexico

    *Pro se Plaintiff*

Max J. Madrid
Alex C. Walker
Modrall, Sperling, Roehl, Harris & Sisk
Albuquerque, New Mexico

    *Attorneys for Defendants Board of Education,*
    *Albuquerque Public Schools; Joseph Vigil;*
    *Susie Peck; Anthony Griego; Bruce Smith;*
    *and Ronald Williams*

Richard L. Alvidrez
Sean Olivas
Keleher & McLeod
Albuquerque, New Mexico

    *Attorneys for Defendant Mark Mayerstein*