# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

TRANSITO TRUJILLO,

       Plaintiff,

vs.                                 No. CIV 02-1146 JB/LFG

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,
JOSEPH VIGIL and SUSIE PECK, Albuquerque
Public Schools Superintendents individually and
in their official capacities; ANTHONY GRIEGO,
Principal, Valley High School, individually and in
his official capacity; BRUCE SMITH, Valley High
School Assistant Principal, individually and in his
official capacity; RONALD WILLIAMS, Director
of Certified Staffing, Albuquerque Public Schools,
individually and in his official capacity; and MARK
MAYERSTEIN, Valley High School employee,
individually and in his official capacity,

       Defendants.

       and

TRANSITO TRUJILLO,

       Plaintiff,

vs.                                 No. CIV 03-1185 JB/LFG

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS;
MARK MAYERSTEIN, Senior ROTC
Instructor, and ANTHONY GRIEGO,
Valley High School Principal, in their
official and Individual capacities,

       Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Plaintiff Transito Trujillo's Rule 59 Motion to Alter Or Amend the Judgment And Order, Entered on March 30, 2005, filed April 4, 2005 (Doc. 133). The primary issue is whether the Court should reconsider its decision articulated in its opinion and order in which the Court granted summary judgment in Defendant Mark Mayerstein's favor. <u>See</u> Memorandum Opinion and Order, filed March 30, 2005 (Doc. 130). The Court, exercising its inherent authority to review non-final decisions, reviewed the original briefing, the Court's opinion, and the material contained in Trujillo's motion to reconsider. Because the United States Court of Appeals for the Tenth Circuit has recently decided an opinion that suggests a lower threshold for showing adverse action in First Amendment caselaw, and because Trujillo presents facts to the Court which alter the First Amendment retaliation claim's disposition, the Court will grant Trujillo's motion in part, and the Court will withdraw its summary judgment on the First Amendment retaliation claim. The Court will affirm, however, summary judgment on the marital association claim.

<u>PROCEDURAL BACKGROUND</u>

On January 9, 2004, the Court held a hearing on: (i) Defendant Mark Mayerstein's Motion for Summary Judgment, filed October 10, 2003 (Doc. 74), and (ii) Plaintiff Transito Trujillo's Motion for Summary Judgment as to Plaintiff's § 1983 Claim Against Defendant Mayerstein, filed October 10, 2003 (Doc. 71). Thus, both parties moved for summary judgment on Trujillo's § 1983 claim against Mayerstein. Trujillo filed, briefed, and argued this motion when an attorney, Dennis W. Montoya, represented him. On January 27, 2004, however, Trujillo entered an appearance to proceed *pro se*. <u>See</u> Entry of Appearance (Doc. 109). Montoya filed an unopposed motion to withdraw on

February 3, 2004, see Doc. 110, which the Court granted,  see Order, filed February 4, 2004 (Doc. 111).

The Court issued its opinion in this matter on March 30, 2005.  See Doc. 130.  On April 4, 2005, Trujillo filed a motion to reconsider the Court's decision contained in its opinion -- one of five motions to reconsider that Trujillo has filed.  See Pro Se Plaintiff's Rule 60(b) Motion and Brief for Reconsideration, filed March 29, 2004 (Doc. 120); Pro Se Rule 59(e) Motion to Alter Or Amend the Judgment And Order, filed September 22, 2004 (Doc. 126); Plaintiff's Rule 59(e) Motion to Alter Or Amend the Judgments And Order, Entered on March 30, 2005, filed April 4, 2005 (Doc. 133); Plaintiff's Rule 59(e) Motion to Alter Or Amend the Judgments And Order, Entered on March [sic] April 8, 2005, and Previous Orders, filed April 13, 2005 (Doc. 136); Pro Se Plaintiff's Motion For Reconsideration of the Court's Final Judgments Entered on 03/30/2005 & 04/11/2005, filed May 2, 2005 (Doc. 148).  In his April 4, 2005, motion to reconsider, Trujillo urges the Court to amend its decision and hold that Mayerstein is not entitled to qualified immunity.

On May 19, 2005, Miguel P. Campos and Phillip Andrew Martinez entered an appearance on behalf of Trujillo.  The Court has not yet entered a final judgment in this case (No. Civ. 02-1146), or in the case with which the Court consolidated this matter (No. Civ 03-1185).

## STANDARDS FOR DECIDING A MOTION TO RECONSIDER

The Federal Rules of Civil Procedure do not expressly recognize a motion for reconsideration. See Computerized Thermal Imaging, Inc. v. Bloomfield, L.P., 312 F.3d 1292, 1296 n.3 (10th Cir. 2002).  If the court has entered a final order or judgment, then a motion for reconsideration is considered a motion to alter or amend the judgment under rule 59(e) if it is filed within ten days after the entry of judgment.  See id. at 1296.  If the motion for reconsideration is filed more than ten days

after the entry of final judgment, it is considered a motion for relief from judgment under rule 60(b).
See id.

Rule 59(e) and 60(b), however, apply only to final judgments.  See Raytheon Constructors
Inc. v. Asarco Inc., 368 F.3d 1214, 1217 (10th Cir. 2003); Bass v. Richards, 308 F.3d 1081, 1086
(10th Cir. 2002); Anderson v. Deere & Co., 852 F.2d 1244, 1246 (10th Cir. 1988).  "Finality is
judged by the standards applicable to determining [appellate] jurisdiction under 28 U.S.C. § 1291."
Wheeler Mach. Co. v. Mountain States Mineral Enter., Inc., 696 F.2d 787, 789 (10th Cir. 1993)(per
curiam).  See 28 U.S.C. § 1291 (2004)(providing that "[t]he courts of appeals . . . shall have
jurisdiction of appeals from all final decisions of the district courts of the United States . . . except
where a direct review may be had in the Supreme Court").

The Court may alter or amend an interlocutory order at any time before the filing of the final
judgment.  See Raytheon Constructors Inc. v. Asarco Inc., 368 F.3d at 1217.  This approach is in
accord with other Judges' opinions from this District.  See Hunt v. Green, No. CIV 03-585, at 9
(D.N.M. March 30, 2005)(Browning, J.); Shannon v. United States, No. CIV 02-717, at 3-4 (D.N.M.
August 11, 2004)(Black, J.)(holding prior order was interlocutory and subject to change at any time
because all claims not yet litigated); Organ Water & Sewer Assoc. v. Moongate Water Co., No. CIV
01-883, at 2 (D.N.M. May 25, 2004)(Brack, J.)(holding that a denial of a motion for partial summary
judgment is interlocutory and subject to revision at discretion of the Court); Ambrose v. White, Civ.
No. 01-1263, at 3 (D.N.M. November 13, 2002)(Parker, J.)(stating that the Court "may use its
plenary power to review interlocutory orders if justice so requires"); Castillo v. City of Albuquerque,
CIV 01-369, at 2 (D.N.M. July 11, 2002)(Johnson, J.)(finding that Rule 59(e) and Rule 60(b) does
not apply to a denial of summary judgment, and, after considering the motion on the merits, declining

-4-

to reconsider the court's earlier ruling); Clawson v. S.W. Cardiology Assoc., P.A., No. CIV 99-379, at 3-4 (D.N.M. June 21, 2000)(Vasquez, J.)(finding that "[d]istrict courts have a general discretionary authority to reconsider a[n] interlocutory decision"); Miller v. County of Santa Fe, Civ. No. 97-309, at 2-3 (D.N.M. August 27, 1998)(Hansen, J.)(declining to exercise the court's "independent discretion to change what is in effect an interlocutory order").  But see Britton v. Long Term Disability Ins. Plan of the Lovelace Inst., No. CIV 99-768, at 4 (D.N.M. September 5, 2001)(Vasquez, J.)(construing a motion to reconsider a denial of summary judgment as a motion for relief from judgment under Rule 60(b)).

## ANALYSIS

The Court has not entered final judgment in this case; accordingly, it is in the Court's discretion whether to reconsider its earlier decision.[1]  The Court chooses to exercise its inherent authority to review its decision contained within its opinion and order.  After reviewing the additional facts that Trujillo brought to the Court's attention in his motions, the Court will withdraw its summary judgment in favor of Mayerstein on the First Amendment retaliation claim.  The Court,

---

[1] The standards pertaining to rule 59(e) and rule 60(b) do not apply to the Court's analysis because the Court has not yet entered final judgment and, therefore, the decision is not yet appealable. Moreover, because this case is not yet final and appealable, this Court is not bound by the caselaw holding that "[c]arelessness by a litigant or his counsel does not afford a basis for relief under Rule 60(b)(1)." Pelican v. Mariano, 893 F.2d 1143, 1146 (10th Cir. 1990). See Link v. Wabash R.R., 370 U.S. 626, 633-34 (1962)(holding, in an appeal from a district court's dismissal for failure to prosecute, without merit the contention "that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative . . . , and he cannot now avoid the consequences of the acts or omissions of this freely selected agent."); Robertson v. Granite Sch. Dist., No. 90-4164, 1992 WL 2883, at **2 (10th Cir. Jan. 7, 1992)(quoting Pelican v. Mariano, 893 F.2d at 1145-46).  Unlike these decisions, final judgment has not yet been entered and the Court, in its discretion, may reconsider the decision before it.  See Raytheon Constructors Inc. v. Asarco Inc., 368 F.3d at 1217.

however, stands by its decision to grant Mayerstein summary judgment on the marital association claim.

## I.   THE COURT WILL CONSIDER THE ADDITIONAL FACTS THAT TRUJILLO PRESENTED IN HIS MOTIONS TO RECONSIDER.

In its opinion and order, the Court found that Mayerstein was entitled to qualified immunity, and the Court granted Mayerstein's motion for summary judgment and denied Trujillo's motion for summary judgment on his § 1983 claim against Mayerstein. The Court noted initially that "there are facts contained in the record which neither party discussed in their briefing on this motion or at the hearing." Memorandum Opinion and Order at 3. These facts -- which were not highlighted in the briefing or at the hearing and which the Court saw when it began to prepare its opinion and order -- troubled the Court and contributed to the delay in issuing its opinion and order. The post-hearing analysis put the Court in the uncomfortable position of doing work for the *pro se* plaintiff, rather than being a neutral arbitrator of the issues that the parties presented.

In reciting the case law from this and other circuits, this Court ultimately relied on a case from the United States Court of Appeals for the Tenth Circuit, in which the Tenth Circuit noted that, while it may, in its "discretion[,] . . . go beyond the referenced portions of these materials, [the Court] is not required to do so." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998)(citation omitted). In so holding, the Tenth Circuit cautioned that the courts "have a limited and neutral role in the adversarial process, and [they should be] wary of becoming advocates who comb through the record . . . and make a party's case for it." Id. Accordingly, the Court declined to assemble facts that the parties did not reference or discuss and instead evaluated the briefings that the parties provided.

Based on the portions of the record to which Trujillo referenced, the Court concluded that

Trujillo had not met his burden of establishing that a genuine issue of material fact existed, and, accordingly, entered summary judgment in favor of Mayerstein. "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." Id.

The Court, while preparing its opinion and order, discovered facts -- buried within Trujillo's fifty-six paragraph affidavit -- that Trujillo did not reference in his original briefing. The Court, however, heeded the Tenth Circuit precedent and was mindful to not serve as an advocate for Trujillo and build his case for him. Thus, the Court focused solely on the portions of the record to which Trujillo provided specific citations in his briefing. To construe all possible facts in the light most favorable to Trujillo, the Court also took into consideration facts which, although not referenced in the briefing, Trujillo's counsel mentioned during the oral hearing on these motions.       In his *pro se* motions to reconsider, however, Trujillo highlights several facts to the Court which his original briefing and his counsel did not reference. Several of these facts are ones which the Court decided that, in fairness to Mayerstein, it would not consider while crafting its original opinion. While the Court continues to heed the Tenth Circuit's caution about serving as a litigant's advocate, now that Trujillo has submitted to the Court a motion containing specific references to the record, the Court will consider these facts and will determine whether they affect the summary judgment motion's outcome.

## II.    BECAUSE THE FACTS HIGHLIGHTED BY TRUJILLO ARE SUFFICIENT TO ESTABLISH A GENUINE ISSUE OF MATERIAL FACT THAT MAYERSTEIN RETALIATED AGAINST HIM IN CONTRAVENTION OF HIS FIRST AMENDMENT RIGHTS, MAYERSTEIN IS NOT ENTITLED TO SUMMARY JUDGMENT ON THIS CLAIM.

In its opinion and order, the Court, based on the facts that the parties submitted, categorized

the possible speech on which Mayerstein unlawfully retaliated against Trujillo: (i) Lourdes' EEOC charge; (ii) Lourdes' letter on Mayerstein's qualifications; and (iii) Trujillo reporting Mayerstein's student abuses.  See Memorandum Opinion and Order at 27.  In reconsidering its decision based on the facts highlighted by Trujillo in his motions to reconsider, the Court will withdraw its summary judgment in favor of Mayerstein on the First Amendment retaliation claim on the basis of Trujillo's speech regarding the FAA certification issue and the student abuse issue.  The Court will, however, affirm its decision to grant summary judgment in Mayerstein's favor on the marital association claim.

The main thing that Trujillo's motions to reconsider did was add his own speech to both the FAA and student abuse issue.  The Court still needs to determine whether there is causation; Trujillo did not offer new facts to support causation, so the Court must analyze causation based on the original record.  There is, however, sufficient evidence to establish a genuine issue of material fact that Trujillo's speech motivated Mayerstein's actions.

### A.    LOURDES' EEOC CHARGE.

On Lourdes' EEOC charge, the Court held there was no genuine issue of material fact that there was First Amendment retaliation based on this speech because: (i) it was not Trujillo's speech; (ii)  the speech involved a personal grievance and dispute and, thus, did not constitute a matter of public concern; (iii) there was insufficient evidence to create a genuine issue of material fact that Mayerstein retaliated against Trujillo on the basis of either the June 2001 filing or Trujillo's continued support for his wife; and (iv) even if Trujillo established a constitutional violation, Mayerstein was nevertheless entitled to qualified immunity on this basis because the law is not clearly established whether the underlying EEOC charge must be based on a matter of public concern.  See id. at 28-31.  Nothing in Trujillo's motions to reconsider provides the Court a basis on which it concludes that this

analysis, or the underlying facts, are incomplete or incorrect.  Accordingly, Trujillo's request to alter or to amend the Court's decision on this basis is denied.

### B.    MAYERSTEIN'S FAA CERTIFICATION AND LOURDES' LETTER.

The Court's opinion also addressed Lourdes' letter pertaining to Mayerstein's qualifications. Because the letter was not Trujillo's speech, the Court held that Trujillo lacks standing to allege a First Amendment abridgment on this basis.  Accordingly, the Court concluded that Mayerstein was entitled to qualified immunity on this ground and that it need not decide whether the letter constituted a matter of public concern or whether there was an adverse action motivated by this speech.  See id. at 31-32.  In his original briefing, however, Trujillo did not allege that he spoke with Mayerstein directly about the FAA certification issue.  Trujillo also did not contend in his original briefing that he spoke with Griego about Mayerstein's qualifications.  Trujillo did not discuss or reference these facts, although they were contained in Trujillo's affidavit attached to his Response.  Thus, the Court did not analyze the issue of Mayerstein's qualifications based on Trujillo's own speech.

In his April 4, 2005, motion to reconsider, however, Trujillo contends that he informed Griego that Mayerstein was not FAA certified.  See Affidavit of Transito Trujillo at ¶ 5, at 2 (executed March 25, 2004)(hereinafter "Trujillo March 25, 2004, Aff.").  Trujillo also asserts that he told his wife about Mayerstein's lack of certification and, based on that information, Lourdes composed the letter about Mayerstein's qualifications.  See id.  Trujillo also avers: "Mayerstein learned of [Lourdes'] . . . letter[] and approached me to tell me that he resented her letter[].  He threatened to have me fired."  Id. ¶ 6, at 2.

In his motions to reconsider, Trujillo does not reference a portion of the record that shows

he spoke with Mayerstein directly about his certification.[2]   The Court notes, however, that in his affidavit attached to his Response, Trujillo stated: "When [Trujillo] asked Mayerstein if he had FAA certification to teach the honors course, he said he did not."   Affidavit of Transito Trujillo ¶ 14, at 5 (executed October 26, 2003)(hereinafter "Trujillo October, 26, 2003, Aff.").   Construing all facts in favor of the nonmoving party, the Court concludes that Trujillo spoke directly with Mayerstein about his qualifications and, upon learning he was not certified, he spoke with Griego and Lourdes.

Based on that information, which Trujillo provided, Lourdes wrote a letter to the school board.   After hearing about the letter, Mayerstein approach Trujillo, expressed his resentment over the letter, and threatened to have him fired.   Because Trujillo alleges that his own speech is at issue -- that is, speaking with Mayerstein, Griego, and Lourdes -- Trujillo has standing to allege a First Amendment retaliation claim on his speech.   Thus, the Court must analyze, under Pickering v. Board of Education, 391 U.S. 563 (1968), whether Mayerstein impermissibly infringed on Trujillo's right to free speech and, if so, whether or not the law is clearly established.

The first step in the Pickering analysis is to determine whether the speech is a matter of public concern.   See Hulen v. Yates, 322 F.3d 1229, 1237 (10th Cir. 2003).   The Court concludes that, because the speech relates to teachers' qualifications and certifications and implicates the safety and interests of school children, speech investigating and reporting Mayerstein's qualifications is a matter of public concern.

The next step in the Pickering analysis is whether Trujillo's interest in speaking about

---

[2] In the March 25, 2004, affidavit, Trujillo states that he "provided [Lourdes] with information that Mayerstein was not FAA certified to teach the zero-hour course."   Trujillo March 25, 2004, Aff. ¶ 5, at 2.   Trujillo does not state, however, that, in speaking directly with Mayerstein, Trujillo learned that Mayerstein lacked FAA certification.

Mayerstein's FAA certification outweighs Mayerstein's interest in regulating his speech.  See Pickering v. Bd. of Educ., 391 U.S. at 568.  The Court concludes that the balance favors Trujillo and his interest in speaking about the certification issue.

Next, the Court must consider whether Mayerstein subjected Trujillo to an adverse employment action and, if so, if Trujillo's speech was a motivating factor in those adverse employment actions.  See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).  Under Baca v. Sklar, 398 F.3d 1210 (10th Cir. 2005), moving offices, changing his chain of command, altering his working hours, and giving Trujillo a Record of Counseling constitute adverse employment actions attributable to Mayerstein.  See id. at 1220; Trujillo March 25, 2004, Aff. ¶ 32, at 10.  Thus, under the Tenth Circuit's First Amendment analysis, Trujillo suffered adverse employment actions when Mayerstein subjected him to such treatment.[3]

The question, however, is whether there is sufficient evidence to create a genuine issue of material fact that Trujillo's speech about Mayerstein's FAA certification motivated Mayerstein to subject Trujillo to the adverse employment actions.  It is not clear from the record whether Trujillo alleges that Mayerstein subjected him to adverse actions based on his own speech or solely based on Lourdes's letter.  Trujillo does not offer any evidence indicating that Mayerstein knew Trujillo spoke with Griego.  And, although Trujillo offers evidence that Mayerstein reacted to Lourdes' letter, it is not clear from the record whether Mayerstein knew Trujillo informed Lourdes about Mayerstein not being FAA certified.  Construing all evidence in the light most favorable to Trujillo, however, the

---

[3] Trujillo discusses Mayerstein's memoranda in his motions to reconsider but, as the Court noted in its original opinion, Trujillo does not offer evidence that these memoranda were distributed and, if so, to whom.  As the Court concluded in its original opinion, Mayerstein's memoranda kept in his personal files do not constitute an adverse employment action.

Court finds that there is sufficient evidence that, because Trujillo discussed the issue of Mayerstein's FAA certification directly with him, Mayerstein was responding to Trujillo's speech when Mayerstein spoke with Trujillo about Lourdes' letter and the FAA certification issue. Trujillo, however, does not indicate when he spoke to Mayerstein about the FAA certification issue, although deductively it was before December 10, 2001, the date Lourdes' sent her letter to the school board. Moreover, Trujillo does not indicate when Mayerstein moved his office, changed his chain of command, and altered his working hours, other than that it occurred after Lourdes sent her letter and after Trujillo spoke with Griego. Under <u>Baca v. Sklar</u>, however, there is sufficient evidence to create a genuine issue of material fact that Mayerstein retaliated against Trujillo for speaking out about Mayerstein's certifications.

Having established that his speech was a substantial motivating factor in Mayerstein's treatment of Trujillo, the burden shifts to Mayerstein to establish he would have made the same decision in the absence of Trujillo's speech. Mayerstein has offered evidence that he issued the Record of Counseling based on Trujillo's work performance, as opposed to his speech pertaining to Mayerstein's FAA certification. But Mayerstein does not offer evidence justifying moving Trujillo's office, changing his chain of command with the cadets, or altering his work hours. Thus, Mayerstein has not met his burden. Trujillo has, therefore, met the first prong of the qualified immunity analysis by showing a constitutional violation occurred by establishing that Mayerstein unlawfully retaliated against Trujillo in contravention of his First Amendment rights. The law is clearly established that it is unlawful to retaliate against someone for exercising his First Amendment rights and, thus, Mayerstein is not entitled to qualified immunity. <u>See</u> <u>Patrick v. Miller</u>, 953 F.2d 1240, 1246 (10th

-12-

Cir. 1992).  Accordingly, insofar as the Court's opinion and order held otherwise, the Court holds

that Mayerstein is not entitled to summary judgment on this basis.

      C.      **STUDENT ABUSES.**

      In the opinion and order, the Court also held that Mayerstein was entitled to summary

judgment on the First Amendment retaliation claim as it pertained to speech regarding the student

abuses.  In so holding, the Court explained: (i) that the reporting of student abuses constituted a

matter of public concern; (ii)  that the balance of interests lay in favor of Trujillo; (iii) that the moving

of offices, changing the chain of command, and altering the work schedule constituted adverse

actions;[4] but (iv) that there was no evidence in the record to create a genuine issue of material fact

that Mayerstein knew Trujillo reported student abuses at the time when Mayerstein subjected Trujillo

to those adverse actions.  Thus, because there was no evidence Mayerstein knew of Trujillo's

complaints about the student abuses, the Court held that there was no genuine issue of material fact

that Mayerstein retaliated against him on that basis.

      In his April 4, 2005, motion to reconsider, Trujillo highlights the fact that he reported to

Griego and Smith "several complaints that I personally had discussed with Mayerstein."  Trujillo

March 25, 2004, Aff. ¶ 7, at 3.  Thus, because Trujillo spoke with Mayerstein directly about the

student abuses, the issue of notice regarding Trujillo reporting the abuses to Griego and Smith is not

central to the Court's disposition.[5]  The Court must still determine, however, that Trujillo's speech

---

      [4] In addition, the Court held that Mayerstein's personal memoranda did not constitute an
adverse action.  The Court also concluded that, although the Letter of Understanding and being
placed on administrative leave constituted adverse actions, such were actions not attributable to
Mayerstein.

      [5] Trujillo also highlights the fact that Mayerstein accused Trujillo of orchestrating protests
with parents, a fact which Trujillo alleges supports his contention that Mayerstein was aware of

motivated Mayerstein's adverse actions against Trujillo.

Like the conversation with Mayerstein about the FAA certification, Trujillo does not indicate when he spoke with Mayerstein about his treatment of students. Trujillo brought this issue to the attention of Griego and Smith in December 2001, and, thus, Trujillo presumably discussed this with Mayerstein before that date. Trujillo also does not state when Mayerstein moved his desk, changed his chain of command, or altered his work hours, but based on the record, it appears to have occurred after December 2001, but before the Record of Counseling in March 2002. In determining whether there is sufficient evidence of improper motivation, the Court notes that Mayerstein's personal memoranda, albeit not sufficient to constitute adverse actions, are relevant to the issue of causation. As the Court noted in its original opinion, the memoranda date back as early as November 6, 2001. The record establishes that, in December 2001, Lourdes wrote the letter about the FAA certification issue and Trujillo spoke with Griego and Smith about the student abuse. Some time before that date, Trujillo conversed with Mayerstein about his FAA certification and his treatment of students. It is not clear, however, whether Trujillo's conversations occurred with Mayerstein before or after Mayerstein began recording the memoranda. Nevertheless, the events are sufficiently close in time to be relevant, at the summary judgment stage, to the issue whether Mayerstein engaged in "a pattern of retaliation" against Trujillo based on his speech pertaining to the FAA certification issue and the student abuse issue. Baca v. Sklar, 398 F.3d at 1221 (noting that the defendant "began a pattern of retaliation" within one week of the plaintiff's protected activity). Although, in a trial on the merits, the time line in which the events occurred may not be concrete enough to establish that Mayerstein

---

Trujillo's opposition to Mayerstein's treatment of the students. See Trujillo March 25, 2004, Aff. ¶ 43, at 12. Because Trujillo offered evidence that he spoke with Mayerstein directly about the student abuse issue, that fact supports Trujillo's contention.

retaliated against Trujillo based on his speech, there is sufficient evidence, at the summary judgment stage of proceedings, under <u>Baca v. Sklar</u>, to create a genuine issue of material fact that Mayerstein retaliated against Trujillo for his conversation with Mayerstein about his treatment of students.

In his motions to reconsider, Trujillo presented sufficient facts to create a genuine issue of material fact that Mayerstein contravened Trujillo's First Amendment rights by retaliating against him based on his speech regarding the student abuses.  Accordingly, the Court will set aside its earlier decision and hold that Mayerstein is not entitled to summary judgment on the First Amendment retaliation claim.

## III.   THE COURT WILL NOT DISTURB ITS DECISION TO GRANT SUMMARY JUDGMENT ON THE MARITAL ASSOCIATION CLAIM.

The Court has also reviewed its ruling granting summary judgment in Mayerstein's favor on the marital association claim.  The Court concludes that nothing in Trujillo's motions to reconsider disturbs this decision.  Accordingly, Trujillo's motion, in so far as it requests the Court to amend its decision on the familial association claim, is denied.

**IT IS ORDERED** that Plaintiff Transito Trujillo's Rule 59 Motion to Alter Or Amend the Judgment And Order is granted in part and is denied in part.  The Court will grant Trujillo's request to reconsider its decision. The Court withdraws its decision on the First Amendment retaliation claim and holds that Mayerstein is not entitled to summary judgment on that claim.  The Court, however, stands by its decision to grant Mayerstein summary judgment on the marital association claim.

_____

UNITED STATES DISTRICT JUDGE

-15-

Transito Trujillo
Albuquerque, New Mexico

    *Pro Se Plaintiff*

Max J. Madrid
Alex C. Walker
Modrall, Sperling, Roehl, Harris & Sisk
Albuquerque, New Mexico

    *Attorneys for Defendants Board of Education,*
    *Albuquerque Public Schools; Joseph Vigil;*
    *Susie Peck; Anthony Griego; Bruce Smith;*
    *and Ronald Williams*

Sean Olivas
Richard L. Alvidrez
Keleher & McLeod
Albuquerque, New Mexico

    *Attorneys for Defendant Mark Mayerstein*