## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

TRANSITO TRUJILLO,

     Plaintiff,

vs.                                                                          No. CIV 02-1146 JB/LFG

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,
JOSEPH VIGIL and SUSIE PECK, Albuquerque
Public Schools Superintendents individually and
in their official capacities; ANTHONY GRIEGO,
Principal, Valley High School, individually and in
his official capacity; BRUCE SMITH, Valley High
School Assistant Principal, individually and in his
official capacity; RONALD WILLIAMS, Director
of Certified Staffing, Albuquerque Public Schools,
individually and in his official capacity; and MARK
MAYERSTEIN, Valley High School employee,
individually and in his official capacity,
Defendants.

and

TRANSITO TRUJILLO,

     Plaintiff,

vs.                                                                          No. CIV 03-1185 JB/LFG

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS;
MARK MAYERSTEIN, Senior ROTC
Instructor, and ANTHONY GRIEGO,
Valley High School Principal, in their
official and Individual capacities,
Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the following motions:  (i) Pro Se Plaintiff's

Rule 60(b) Motion and Brief for Reconsideration, filed March 29, 2004 (Doc. 120 in 02cv1146)

("March 29, 2004 Motion"); (ii) Opposed Pro Se Plaintiff's Motion and Brief for Reconsideration of the Court's Memorandum, Opinion, and Order, Doc. No. 195, Entered September 2, 2005, filed September 20, 2005 (Doc. 210 in 02cv1146)("September 20, 2005 Motion"); (iii) Opposed Pro Se Plaintiff's Motion and Brief for Reconsideration of the Court's Memorandum Opinion and Order, Doc. No. 194, Entered September 2, 2005, filed October 4, 2005 (Doc. 222 in 02cv1146)("October 4, 2005 Motion"); (iv) Pro Se Plaintiff's Opposed Motion and Brief for Leave to File Additional Briefing as to Claims Based on Newly Discovered Evidence, filed October 21, 2005 (Doc. 224 in 02cv1146 )("October 21, 2005 Motion"); (v) Pro Se Motion for Reconsideration, filed December 11, 2006 (Doc. 92 in 03cv1185); and (vi) Pro Se Motion and Brief for Reconsideration of the Court's Previous Rulings at Doc. No. 125 and Doc. No. 134 Based on New Law and Evidence, filed February 5, 2007 (Doc. 261 in 02cv1146)("February 2, 2007 Motion").  The Court held a hearing on these motions on April 3, 2007.  The primary issues is whether the Court should exercise its discretion to reconsider its rulings granting summary judgment to Defendants Albuquerque Public Schools ("APS"), Anthony Griego in his official and individual capacities, and Susie Peck in her individual capacity on the basis of new or additional evidence and legal arguments, and if so, whether it should alter its judgments.  Because the Court concludes that the evidence presented compels reconsideration and vacation of summary judgment granted in favor of APS and Griego on the issue of retaliation in violation of Title VII and the basis on which judgment was granted in favor of Griego, individually, for violation of Plaintiff's First Amendment right to free speech, the Court will grant the March 29, 2004 motion (Doc. 120), the September 20, 2005 motion (Doc. 210), and the October 21, 2005 motion (Doc. 224); will grant in part and deny in part the October 4, 2005 and February 5, 2007 motions (Docs. 222 & 261); and will deny the December 11, 2006 motion (Doc.

92).

## FACTUAL BACKGROUND

[Plaintiff Transito] Trujillo began working as an Aerospace Instructor (ASI) in the Air Force Junior Reserve Officer Training Corps program (AFJROTC) at Valley High School in Albuquerque, New Mexico, in 1991. The Board of Education for the Albuquerque Public Schools (the APS Board) hired [Defendant Mark] Mayerstein in the spring of 2001 to replace Trujillo's supervisor in the position of Senior ASI. Trujillo's wife, Major Lourdes Trujillo, had applied for the job as well and, after APS hired Mayerstein, she filed a complaint with the Equal Employment Opportunity Commission (EEOC) claiming national origin and sex discrimination. Trujillo and Mayerstein began working together in October 2001. The relationship started well, but it began to deteriorate in December 2001. By the spring of 2002, both parties had been placed on administrative leave pending an investigation into their cross-allegations of misconduct.

Trujillo v. Bd. of Educ. Of the Albuquerque Pub. Schs., No. 05-CV-2305, 2007 WL 80698, at *1

(10th Cir. January 12, 2007).

## PROCEDURAL BACKGROUND

Trujillo, through counsel, filed suit in September 2002 against Mayerstein and the other named defendants, bringing claims under 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and other grounds [in case number 02cv1146]. The APS Board and all of the individual defendants moved for summary judgment. Trujillo filed cross-motions for summary judgment against all of the defendants. The district court held a hearing on January 9, 2004, on all pending motions. The district court stated at the hearing that it was going to grant summary judgment in favor of all of the defendants and deny summary judgment in favor of Trujillo. On March 29, Trujillo, now proceeding pro se, filed a Fed. R. Civ. P. 60(b) Motion and Brief for Reconsideration based on the district court's indication that it would be granting summary judgment in favor of all of the defendants. On September 17, the district court issued an order granting summary judgment for all of the individual defendants, except Mayerstein.

On March 30, 2005, the district court issued an order granting summary judgment in favor of Mayerstein. On April 4, Trujillo filed a Rule 59(e) Motion to Alter or Amend the Judgment, challenging the March 30, 2005 order. On April 11, the district court entered summary judgment in favor of the APS Board. On May 18, the district court denied Trujillo's Rule 60(b) motion, which the court construed as a motion for reconsideration because it was filed prior to final judgment in the case. On September 2, the district court construed Trujillo's Rule 59(e) motion as a motion for reconsideration and entered an order denying it in part and granting it in part. As

a result of reconsidering its earlier decision, the district court determined that Mayerstein was no longer entitled to summary judgment on Trujillo's First Amendment retaliation claim.  [An] interlocutory appeal followed.

\* \* \* \*

After the district court issued its opinion, the Supreme Court decided <u>Garcetti v. Ceballos</u>, 126 S.Ct. 1951, 1960 (2006), which modified prior First Amendment jurisprudence by clarifying that when speech is part of a public employee's official duties, it is not made as a citizen and is not protected. . . . . [T]he record before [the United States Court of Appeals for the Tenth Circuit did] not contain sufficient evidence on Trujillo's official duties to perform the <u>Garcetti</u> analysis.  Accordingly, [the United States Court of Appeals for the Tenth Circuit] remand[ed] this case for further fact-finding in light of the Supreme Court's decision in <u>Garcetti</u>.

<u>Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs</u>, 2007 WL 80698, at \*\*2-3 (footnote omitted).

Before and when the parties briefed the issues raised in the Defendants' motions for summary judgment in case number 02cv1146, in 2003, Dennis Montoya represented Trujillo.  Mr. Montoya did not conduct any discovery.  <u>See</u> APS Defendants' Response to Pro Se Plaintiff's Motion and Brief for Leave to File Additional Briefing as to APS Claims Based on Newly Discovered Evidence at 2, filed November 1, 2005 (Doc. 227)("Plaintiff's motion fails to advise the Court that [] neither he nor Mr. Montoya (his former attorney) conducted <u>any</u> discovery in 02cv1146.  Plaintiff propounded no interrogatories and no requests for production. Plaintiff conducted no depositions wherein he requested documents via a duces tecum subpoena.").  Mr. Montoya stated that he spent two months of the initial discovery period preparing for, and recovering from, an operation.  <u>See</u> Plaintiff's Motion to Extend Deadlines, filed September 11, 2003 (Doc. 59).  In addition, Mr. Montoya filed a notice of unavailability for six weeks, part of which was during the original discovery period, because he was conducting another trial in Santa Fe.  <u>See</u> Notice of Unavailability, filed July 31, 2003 (Doc. 34).

When Trujillo fired Mr. Montoya in January of 2004, he cited counsel's "lack of diligence"

4

and his failure to be prepared at the January 2004 hearing on the motions for summary judgment. Entry of Pro Se Appearance, filed January 27, 2004 (Doc. 109). In his March 29, 2004 Motion for Reconsideration, Trujillo contended that his counsel failed and refused to submit relevant evidence received from disclosures made pursuant to rule 26 of the Federal Rules of Civil Procedure, Trujillo's EEOC investigation file, and Trujillo's Freedom of Information Act ("FOIA") requests from the AFJROTC headquarters. See March 29, 2004 Motion at 1-2; id., Exhibit 1 ¶¶ 1-4, at 1-2 (Affidavit of Transito Trujllo, taken March 25, 2004); Plaintiff Transito Trujillo's Response to Motion for Summary Judgment Based on Qualified Immunity at 24-25, filed August 27, 2003 (Doc. 51)(attaching only two documents received from FOIA requests).

In addition, the individual Defendants requested, and were granted, a stay of discovery pending the Court's resolution of their motions for summary judgment on the issue of qualified immunity. See Order Staying Discovery, filed January 6, 2004 (Doc. 103).

As discussed in detail below, the basis of many of the Court's rulings in granting summary judgment to the Defendants and denying judgment to Trujillo was that Trujillo did not submit admissible evidence demonstrating a prima facie case of retaliation or of adverse employment action. Between the time the Defendants moved for summary judgment and the Court issued its rulings, Trujillo filed a second suit against APS for Title VII retaliation and against Mayerstein for violation of his First Amendment rights to free speech after he was terminated from his position as ASI. See Complaint for Employment Discrimination, Retaliation and Reprisal (Wrongful Termination), filed October 12, 2003 (Doc. 1 in 03cv1185)("Complaint"). Trujillo filed an amended complaint adding Griego as a defendant once he began representing himself. See First Amended Complaint for Wrongful Termination and Damages, filed January 28, 2004 (Doc. 4) ("Amended Complaint"). Although Trujillo requested early discovery, discovery did not commence until August 2005. See

5

Initial Pretrial Report, filed August 15, 2005 (Doc. 44 in 03cv1185).  APS responded to Trujillo's

first consolidated discovery requests on October 10, 2005.  See Certificate of Service, filed October

11, 2005 (Doc. 48 in 03cv1185).

After the Court issued its oral rulings granting summary judgment to the Defendants in

January 2004 and its written rulings in September 2004 and March and April 2005, which are

referenced above, Trujillo began filing a flurry of motions for reconsideration.  This flurry increased

after Trujillo received the Defendants' discovery responses in the second case.  As discussed below,

Trujillo's last motion for reconsideration was filed after defendant Mayerstein made several very

damaging admissions to Trujillo and his wife during a chance encounter in December 2006 at a

building supply store and at a meeting Trujillo arranged with him the following day.  This new

evidence, the evidence received in discovery, the evidence presented in earlier motions that the Court

has not considered to this point in ruling on motions to reconsider, and Trujillo's legal arguments

provide the basis for Trujillo's motions for reconsideration.

## APPLICABLE LEGAL STANDARDS

The United States Court of Appeals for the Tenth Circuit recently affirmed the Court's

analysis regarding whether the Court has discretion to reconsider summary judgments without

applying rule 59(e) or rule 60(b) of the Federal Rules of Civil Procedure.

> A district court has discretion to revise interlocutory orders prior to entry of final
> judgment. Price v. Philpot, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005) ("[E]very order
> short of a final decree is subject to reopening at the discretion of the district judge.");
> Anderson v. Deere & Co., 852 F.2d 1244, 1246 (10th Cir. 1988) (citing Fed.R.Civ.P.
> 54(b)).  Mayerstein asserts that, although final judgment had not yet entered in the
> case, the district court's discretion to revise its interlocutory orders was limited by the
> standards for reviewing a post-judgment motion filed pursuant to Rule 59(e) or 60(b)
> of the Federal Rules of Civil Procedure.  Mayerstein cites to several district court
> decisions to support his position, but he cites to no Tenth Circuit authority.
> Moreover, he fails to mention this court's opinion in Raytheon Constructors Inc. v.
> ASARCO, Inc., 368 F.3d 1214, 1217 (10th Cir. 2003), which was relied upon by the

district court for its decision.

> In Raytheon, like this case, the plaintiff moved for reconsideration prior to the entry of final judgment. The district court treated the motion as a Rule 60(b) motion, even though it acknowledged that the plaintiff was seeking reconsideration of an interlocutory order rather than a final judgment. Id. at 1216. We concluded that "[t]he district court was incorrect to treat Raytheon's motion for reconsideration under Rule 60(b), which only applies to final orders or judgments." Id. at 1217. Similarly, in Wagoner v. Wagoner, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991), we noted that a motion for reconsideration filed prior to final judgment "was nothing more than an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment." The district court therefore had the general discretionary authority to review its March 30, 2005 order after Trujillo filed his motion for reconsideration, and it was not bound by the stricter standards for considering a Rule 59(e) or Rule 60(b) motion.

Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs., 2007 WL 80698, at **4-5.

In reconsidering the prior judgments, the Court will apply the same legal standards for summary judgment and qualified immunity that it applied in its September 17, 2004 and April 8, 2005 Memorandum Opinions and Orders, along with additional cases that Trujillo cites.

## ANALYSIS

The Court chooses to exercise its inherent authority to review its September 17, 2004 and April 8, 2005 Memorandum Opinions and Orders. After reviewing the additional evidence and law that Trujillo brought to the Court's attention in his motions, the Court will: (i) withdraw summary judgment granted on April 8, 2005, in favor of APS and Griego, acting in his official capacity[1], on the Title VII retaliation claim in case number 02cv1146; and (ii) reconsider the basis for granting summary judgment on September 17, 2004 in favor of Griego, acting in his individual capacity, on the First-Amendment retaliation claims. The Court stands by its decision to grant summary judgment

---

[1] See Sauers v. Salt Lake County, 1 F.3d 1122, 1125 (10th Cir. 1993) ("Under Title VII , suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate.").

in favor of Peck on the First Amendment claims and to deny summary judgment in favor of Trujillo on all claims against APS and Griego. The Court will address claims against Mayerstein, as well as Trujillo's First Amendment claims against Griego and Mayerstein, in a subsequent memorandum opinion and order.

## I.    FIRST AMENDMENT CLAIMS AGAINST GRIEGO AND PECK.

In the Court's Memorandum Opinion and Order granting summary judgment to Defendants Griego and Peck in their individual capacities on the issue of First-Amendment retaliation, see Memorandum Opinion and Order, filed September 17, 2004 (Doc. 125)("September 17, 2004 Memorandum Opinion and Order") the Court made the following observations and conclusions:

> Trujillo alleges that Defendant Susie Peck, another APS Superintendent, sent him a letter indicating: (i) that APS would review the military decertification process; (ii) that Trujillo was to return to work at Valley High School; and (iii) that APS would revisit the evaluation that Defendant Anthony Griego had voided. See Complaint ¶ 55, at 21; Trujillo Depo. at 256:20 - 258:7. Trujillo asserts that APS did not revisit his evaluation. See Trujillo Depo. at 257:10-11.

> * * * *

> Trujillo alleges that Defendant Anthony Griego, Principal of Valley High School (VHS): (i) failed to take action when told of an incident where Mayerstein told a student he would get "butt fucked" if he joined a gang and went to jail; (ii) gave Trujillo a satisfactory annual evaluation and recommended that he be retained; (iii) did not respond properly to complaints from parents/students about which Griego, in his position as Principal should have known; and (iv) gave Trujillo a letter of counseling. See Trujillo Depo. at 269:6-280:7; Complaint ¶¶ 48, 56, at 17, 21.

> * * * *

> To survive the Defendants' assertion of qualified immunity, Trujillo must show that the facts as he has alleged them, if taken as true, amount to a constitutional violation. Although Trujillo asserts that the Defendants violated his constitutional rights, see Complaint ¶ 88, at 28, he has not established a genuine issue of material fact as to whether Defendants' actions constituted retaliation in contravention of the First Amendment. Because Trujillo failed to establish a genuine issue of a material fact as to the alleged constitutional violation, Trujillo failed to satisfy the first prong of the doctrine of qualified immunity analysis. The Court, therefore, will grant

Defendants' motion for summary judgment on the basis of the doctrine of qualified immunity.

* * * *

With regard to Trujillo's support of his wife's EEOC actions, Trujillo's allegation is that "APS administrators held it against Plaintiff that he was supporting his wife's EEOC complaint." Response at 16. Trujillo does not, however, clarify which administrators he alleges held his support of his wife against him or in what manner they held it against him. To establish that any of the individual Defendants retaliated against him for supporting his wife, Trujillo must first show that the individual Defendants actually knew about Trujillo's actions supporting his wife's EEOC complaint. . . . .

Although Trujillo states in his affidavit that the Defendants were aware of his support for his wife's EEOC complaint, see Trujillo Aff. ¶ 30, at 12, the only evidence Trujillo offers of the Defendants' knowledge is a Memorandum that Dr. Michael Doyle, an AFJROTC official, who visited VHS to investigate the situation between Trujillo and Mayerstein generated. See Memorandum for Director, Air Force JROTC (August 21, 2002). Doyle addressed this memorandum to the Director of the AFJROTC program and it contains references to Lourdes Trujillo's EEOC complaint. Trujillo's affidavit asserts that the "tenor and content" of Doyle's Memorandum indicate that there was a "significant exchange of information between the Air Force and Albuquerque Public Schools." Trujillo Aff. ¶ 32, at 13. Presumably, Trujillo is alleging that the content of this Memorandum originated from APS and, thus, indicates that the individual Defendants had knowledge of that content. Trujillo, however, offers no evidence, admissible or otherwise, to support that assertion.

* * * *

With regard to . . . his complaints of Mayerstein's lack of qualifications . . . Trujillo alleges that he made these statements directly to some of the individual Defendants. Beginning in December 2001, Trujillo alleges that he spoke directly to Griego and to Smith, the Principal and Vice-Principal respectively of VHS, to complain about Mayerstein. . . . .

* * * *

Trujillo alleges that, in retaliation for . . . protected activity, the Defendants took the adverse actions specifically described above. For the most part, Trujillo's allegations amount to complaints that the individual Defendants failed to take actions regarding his complaints about Mayerstein. . . . Trujillo's remaining allegations of adverse actions are that the Defendants placed him on administrative leave with pay and that Smith sent him a Letter of Understanding. With regard to the administrative

leave, while the Tenth Circuit has not spoken directly on point, the United States Court of Appeals for the Fifth Circuit has stated that it does not consider administrative leave with pay to be an adverse action. . . .

* * * *

The Court does not believe that this Letter of Understanding rises to the level of adverse action that the Supreme Court contemplated in Burlington Indus., Inc. v. Ellerth.  The Court finds that Smith's Letter of Understanding to Trujillo does not constitute an actionable adverse employment action.

Because Trujillo suffered no actionable adverse employment action, he has not established a genuine issue of material fact that a constitutional violation occurred, and the Court will grant summary judgment in favor of the Defendants.

Trujillo v. Bd. of Educ. of Albuquerque Pub. Schs., 377 F. Supp. 2d 977, 989-92 (D.N.M. 2004) (Browning, J.).  The Court also gave an alternative basis for granting summary judgment to Griego by assuming that Trujillo could establish adverse action regarding the Letter of Understanding and placement on administrative leave.

[T]he plaintiff must demonstrate factually that the protected speech was a motivating factor in the employer's decision.  See Mount Healthy City Sch. Dis. v. Doyle.

Even if the Court found that Trujillo's interests outweighed the Defendants, he cannot factually establish that his speech substantially motivated the Defendants' actions in giving Trujillo a Letter of Understanding and in placing him on paid administrative leave.  Trujillo has not, in his briefing nor when given an opportunity at the hearing on this motion, presented the Court or introduced in the record any factual evidence linking any or all of the individual Defendants' actions to his protected speech, that is, other than Trujillo's own conclusory affidavit.

* * * *

Principal Griego and Vice-Principal Smith sent Trujillo the Letter of Understanding. Williams sent Trujillo the letter placing Trujillo on administrative leave with pay. The Court cannot fairly attribute each of these employment decisions to each individual Defendant.

Id. at 993.

In his September 22, 2004 motion for reconsideration, Trujillo did not highlight to the Court

any additional admissible evidence pertaining to his allegations that Griego or other individual defendants besides Mayerstein knew about Trujillo's support of Lourdes' EEOC charges and "acted in retaliation against [Trujillo] because [Trujillo] and/or his wife filed [EEOC] charges." Memorandum Opinion and Order, filed September 2, 2005, at 6 (Doc. 194)("September 2, 2005 Memorandum Opinion and Order").

> The Court notes that, in his March 29, 2004, motion to reconsider, which Trujillo incorporates by reference in his September 22, 2004, motion to reconsider, Trujillo highlights to the Court that Griego and Defendant Mark Mayerstein met with Barbara Lynn, APS' equal opportunity director, and, according to Mayerstein's memorandum to which Trujillo cites, they "discussed the disposition of both Trujillo cases and agreed to help Barbara in any way we could." Mayerstein Memorandum at 1 (dated April 8, 2002). At most, this fact indicates that Griego knew of both Lourdes and Trujillo's EEOC charges. Knowledge of the protected activity, however, is present in many cases. Knowledge does not, however, alone or in the context of the other facts and circumstances of the case, show a genuine issue of material fact that Griego acted in retaliation against Trujillo because Trujillo and/or his wife filed such charges.

Id. Accordingly, the Court denied the motion. See id.

Trujillo titled his next motion for reconsideration, filed on October 4, 2005, as one for reconsideration of the September 2, 2005 order denying reconsideration, but he is, in fact, again challenging the original memorandum opinion and order granting summary judgment. His motion clarifies his claims of adverse action, highlights evidence presented in previous motions, and presents additional evidence showing that genuine issues of material fact exist regarding whether Griego retaliated against Trujillo for speaking out against what Trujillo perceived as discriminatory practices and allowing Mayerstein to teach a course for which he was not qualified. See October 4, 2005 Motion at 3-5.

## A.   JUDGMENT IN FAVOR OF PECK.

The Court previously concluded that Trujillo had presented no facts showing that Peck took adverse action against him. In his motion for reconsideration, Trujillo contends that Peck's adverse

action was the "failure to void" the military evaluation she received from Griego.  Id. at 5-7. Trujillo's complaint and evidence show, however, that Peck notified Trujillo that APS "would review the military decertification process . . . [and] revisit the [military] evaluation" the following school year.  September 17, 2004 Memorandum Opinion and Order at 5.  Peck therefore indicated that she would review the evaluation.

Trujillo has presented no evidence that Peck sent the military evaluation to the AFJROTC headquarters, and a document Trujillo submitted shows that he and his attorney "previously informed . . . Peck of the fact that the so-called military evaluation cited by Ms. Peck [] was nullified and voided by Principal Anthony Griego on April 24, 2002.  Therefore, there is no such evaluation to appeal from."  Opposed Pro Se Plaintiff's Motion and Brief for Reconsideration of the Court's Memorandum Opinion and Order, Doc. No. 194, Entered September 2, 2005, filed October 4, 2005 (Doc. 215), Exhibit 1F at 1-2 (Letter from Dennis Montoya to Vigil, the Chairman and Superintendent of APS, dated August 20, 2002).  Trujillo cannot now complain that Peck failed to take action that Trujillo had vigorously insisted she had no basis for taking.  The Court will not disturb its summary judgment ruling in favor of Peck.

###    B.    EVIDENCE OF GRIEGO'S ADVERSE ACTION.

It has never been disputed that Mayerstein gave Trujillo an unsatisfactory military evaluation on April 15, 2002, which was sent to the AFJROTC headquarters.  Trujillo attached a copy of this evaluation to his March 29, 2004 Motion.  See March 29, 2004 Motion, Exhibit 9 (AFJROTC Instructor Evaluation Report, dated April 15, 2002). The admissible evidence that the Court had previously considered indicated, however, that:

> [i]nstead of concurring in Mayerstein's unsatisfactory rating of Trujillo, however, Griego voided the comments that Mayerstein had attributed to him and did not indorse the evaluation.  See Plaintiff's Response, Exhibit 13.  On April 17, Griego

> prepared a satisfactory teacher's evaluation for Trujillo, see id., Exhibit 16; recommended his re-employment, see id.; and attached a memorandum to Mayerstein's ROTC evaluation of Trujillo stating that Trujillo and Mayerstein had a "personality conflict . . . that has led to the rating," Defendants' Response, Exhibit J.

Memorandum Opinion and Order at 6, filed November 21, 2006 (Doc. 91 in 03cv1185).

In their summary judgment motion, the individual Defendants (except for Mayerstein) contended that Griego "void[ed] the evaluation completed by Defendant Mayerstein and instead recommend[ed] the Plaintiff be rehired." Memorandum Brief in Support of Defendants Joseph Vigil, Susie Peck, Anthony Griego, Bruce Smith and Ronald Williams' Motion for Summary Judgment at 11, filed August 11, 2003 (Doc. 42)("Defendants' Summary Judgment Motion"). APS' counsel continued to make that assertion at the April 3, 2007 hearing. See April 3, 2007 Transcript at 44:15-25 (Walker).

In response to the Court's conclusion that Griego "gave Trujillo a satisfactory annual evaluation and recommended that he be retained," Trujillo asserts that Griego in fact committed adverse action against him by "submitt[ing to the AFROTC headquarters] an unsatisfactory military evaluation that Mayerstein prepared and signed." October 4, 2005 Motion at 2-3 (emphasis added). In support, Trujillo notes that he had earlier sworn in an affidavit that Jo Alice Talley, the AFJROTC's employee in charge of instructor certification, told him in June 2002 that, when she called Griego to ascertain whether he approved Trujillo's unsatisfactory performance evaluation that Mayerstein submitted to Talley in April, 2002 -- just days after Trujillo had filed his EEOC complaint against Griego and Mayerstein – Griego told her he "stood by [the] unsatisfactory evaluation," and Talley told Trujillo that, because of this evaluation, he should not report to his instructor recertification training classes. See October 4, 2005 Motion at 2-3; Transito Trujillo's Supplemental Declaration, signed July 20, 2005 (attached to Pro Se Plaintiff's Brief filed to Show Necessity for

13

Further Briefing on Pending Motions, Exhibit 1A, filed July 20, 2005 (Doc. 178)("Brief to Show Necessity").

APS has argued that the Court should not consider Trujillo's affidavit because his statements about what Talley said are inadmissible hearsay.[2]  See APS' Response to Pro Se Plaintiff's Motion for Summary Judgment ¶ 11, at 4, filed November 1, 2005 (Doc. 57 in 03cv1185).  Accordingly, Trujillo attached to his reply brief a certified written transcript of what he swears is the recorded June 2002 conversation with Talley, transcribed from the tapes.  In the transcript, Talley states: "You got an unsatisfactory rating as being evaluated. . . . Until it's resolved [by the APS Superintendent], I am going to waive your need for recertification. . . .  I don't want you to waste the time and effort and money to come down here if . . . the outcome . . . is you are not continued in the program."  Pro Se Plaintiffs' Reply to Defendants Doc. No. 265, filed March 5, 2007 (Doc. 273), Exhibit 2 at 1 (Transcript of Conversation between Trujillo and Jo Alice Talley).  When Trujillo pointed out to Talley that Griego (i) had given Trujillo a successful teacher evaluation  recommending Trujillo's re-employment, (ii) had marked through the comments that Mayerstein attributed to him on the

---

[2]  In the Court's November 21, 2006 Order denying summary judgment to APS and to Trujillo on the issue of Title VII retaliation resulting in Trujillo's termination, the Court did not consider inadmissible hearsay but noted the following:

> According to AFJROTC regulations, school principals are considered the program directors of the ROTC programs at the school level, and his/her "evaluation or indorsement can initiate action which could result in AFJROTC instructor decertification action."  Id., Exhibit 13, ¶ 3.2.  Bases for decertification include: being overfat; engaging in an incident of willful misconduct; fraudulently certifying information in an instructor application; engaging in conduct "that does not meet the standards expected of an Air Force officer;" engaging in "conduct causing discredit or embarrassment to the Air Force or the AFJROTC program;" or receiving an unappealed-from overall evaluation of "unsatisfactory" indorsed by the principal. Id. ¶¶ 2.2.6-2.2.6.4.

Memorandum Opinion and Order at 6, filed November 21, 2006 (Doc. 91 in 03cv1185).

military evaluation, and (iii) had checked a "do not concur" box in the same block, Talley stated that, when Griego marked through the entire block, it voided the whole block, including the checkmark indicating "do not concur."  <u>Id.</u> at 4.  Talley explained that, if the principal does not endorse an unsatisfactory military evaluation, "the forms are supposed to be initialed and changed if the endorser does not agree with the form itself."  <u>Id.</u> at 16.  To clear up the confusion caused by marking an X through the block, Talley called Griego, who, according to Talley, said, "I am not changing the unsatisfactory rating" on the military evaluation.  <u>Id.</u>   Accordingly, Talley forwarded the unsatisfactory military evaluation to Susie Peck for resolution by the APS Superintendent on June 21, 2002.  <u>See id.</u> at 5-6.  The Defendants have not requested an opportunity to respond to this evidence and have submitted nothing to dispute it or to challenge its admissibility.

Trujillo further supported his claim that Griego ultimately endorsed the unsatisfactory military evaluation by submitting a letter from Susie Peck that refers to her anticipation of Trujillo's "appeal regarding your military evaluation."  September 20, 2005 Motion for Reconsideration, Exhibit 15 (August 2, 2002 Letter from Peck to Trujillo).  Griego has not submitted a counter-affidavit denying that he endorsed Mayerstein's negative military evaluation.  In APS' responses to Trujillo's second EEOC charge, filed in July 2002 and amended to include his termination in November 2002, APS stated only, "Ms. Talley, Chief of Instructor Management Officer [sic] is not employed by APS.  Therefore, APS is unable to address any statements made by Ms. Talley.  APS is not aware of anyone at APS advising Ms. Talley of the statements made by Charging Party."  Brief to Show Necessity, Exhibit 1U at 2 (APS' December 13, 2002 Position Statement to Transito Trujillo's second EEOC Charge).

The Court finds that Trujillo has established a genuine issue of material fact whether Griego endorsed and sent the negative military evaluation to the AFROTC headquarters, and concludes that,

if he did so, such conduct could constitute an adverse employment action under controlling Tenth Circuit law.   Trujillo correctly argues that negative employment evaluations that may have a significant impact on future job opportunities may constitute adverse employment action under Title VII.   See Hillig v. Rumsfeld, 381 F.3d 1028, 1033 (10th Cir. 2004)(holding, in Title VII context, that, "an act by an employer that does more than de minimis harm to a plaintiff's future employment prospects can, when fully considering the unique factors relevant to the situation at hand, be regarded as an adverse employment action . . . .")(internal quotation marks, brackets, and citations omitted). While the Defendants contend that Hillig v. Rumsfeld does not apply because Trujillo has not shown that he has applied for other jobs and the Air Force was a co-employer, as discussed below, the AFJROTC regulations provide that Trujillo's year-to-year employment with APS or any other school district as an ROTC instructor depended upon the AFJROTC headquarters not receiving a Griego-endorsed unsatisfactory military evaluation.   Unsatisfactory military evaluations that a principal endorses, therefore, would be materially adverse to any future employment, including continuing employment at the same school, and Hillig v. Rumsfeld is controlling precedent.

### C.   EVIDENCE OF CAUSAL CONNECTION.

As an alternative holding, the Court noted that, even if it were to assume that there was an actionable adverse action against Trujillo, he had not established a genuine issue of material fact that it occurred as a result of his speech.   See September 17, 2004 Memorandum Opinion and Order at 20.   At the hearing on the matter, the Defendants continued to assert that Trujillo has presented no evidence of causation, contending that all Trujillo has presented is a "vague assertion of temporal proximity" between the filing of his EEOC complaint or complaining about Mayerstein's lack of qualifications, and any alleged adverse action.   April 3, 2007 Transcript at 36:9 (Walker).   The Defendants, however, do not adequately deal with Trujillo's allegation that Griego took adverse

16

action against him by submitting and endorsing the negative military evaluation, and contend only that Trujillo still has not shown that his protected speech substantially motivated Griego's actions in recommending Trujillo be placed on administrative leave and approving the letter of understanding. See Defendants' Response to Pro Se Opposed Motion for Reconsideration of the Court's Previous Rulings at Doc. No. 125 and Doc. No. 134 Based on New Law and Evidence [Doc. 261 in 02cv1146] at 7, filed February 22, 2007 (Doc. 265)("Defendants' Response"). The Defendants still maintain that Griego has established with "uncontroverted evidence" that he based his decisions on "the combined activities of and cross-accusations between [Trujillo] and Mayerstein." Id. at 7-9.

Trujillo produced a Mayerstein-authored memoranda, however, stating that he and Griego discussed whether to give Trujillo a satisfactory or unsatisfactory military evaluation on April 8, 2002 just days after Trujillo filed his EEOC complaint asserting that Griego was retaliating against him for speaking out against Griego allowing Mayerstein to teach a class he was unqualified to teach and discriminating against his wife, and that Griego "said he wanted to talk to Jo Alice Talley before we made the decision." Pro Se Plaintiff's Reply to Response to Pro Se Plaintiff's Motion for Reconsideration, Doc. No. 223, filed 18/10/2005 [sic] and Notice of Motion Briefing Completion, filed October 31, 2005 (Doc. 226)("Plaintiff's Reply"), Exhibit 4 (Mayerstein's Memorandum for Record dated April 8, 2002). This evidence supports Trujillo's contention that Griego did not make a decision to endorse Trujillo's negative military evaluation solely because of the combined activities and cross-accusations between the two ROTC instructors.

In addition, in his most recent motion for reconsideration of the Court's Order granting summary judgment to Griego, Trujillo submitted another affidavit swearing that Mayerstein approached him on December 30, 2006, at a local building-supply store, desiring to try to make things right between them. See October 2, 2007 Motion, Exhibit 1 ¶ 1, at 1 (Transito Trujillo

Affidavit dated  January 8, 2007).  Mayerstein purportedly told Trujillo that "Griego was behind it all;" id. ¶ 2, at 1; that Colonel Crook (Mayerstein's predecessor) and Griego "conspired to get rid of [Trujillo] because of how [Mayerstein] was hired and the potential problems I (Transito Trujillo) could be to their ploy to deny Lourdes the SASI position," id. ¶ 5, at 2.  "Mayerstein said that Griego ordered him to write me up, counsel me, and forward negative evaluations to the Air Force to get me fired."  Id. ¶ 6, at 2.  "Mayerstein also stated that 'Griego was my new boss and I did what the boss told me to do.'  He said he was used and was fired for carrying out Griego's orders."  Id. ¶ 7, at 2.  This testimony, if true, casts doubt upon the Defendants' contention that Trujillo's complaints about Mayerstein's lack of qualifications played no part in his decision to endorse a negative evaluation that would affect Trujillo's future employment with APS.

At the April 3, 2007, hearing, the Court gave Trujillo an opportunity to examine Mayerstein under oath, but he declined and objected to Mayerstein testifying at all.  See April 3, 2007 Transcript at 7:8-24; id. at 8:1-7.  Mayerstein's attorney called Mayerstein to the stand, and Mayerstein swore that he believed the statements he made about Trujillo in his memoranda of understanding and evaluations were true at the time he recorded them.  See id. At 16:14-15 (Mayerstein).  He also admitted, however, to having approached Trujillo at the building supply store and having initiated the conversation about the lawsuit.  See id. at 9:22-25; id. at 13:19.  Mayerstein stated that he apologized to Trujillo for not having asked him about the allegations that Trujillo had been improperly involved with an ROTC cadet's mother before Mayerstein accused Trujillo of infidelity.  See id. at 11:1-8.  Mayerstein testified that "there were a couple of things in [Trujillo's affidavit] which I didn't agree with exactly the way they were stated as memory serves."  Id. at 14:21-23.  Mayerstein's counsel and APS' counsel both declined the opportunity to ask Mayerstein under oath whether he said each statement that Trujillo swore Mayerstein made.

18

The Defendants asserted at the hearing and in their briefs that Trujillo's account of Mayerstein's alleged "statements are inadmissible and do not provide this Court with sufficient reason to overturn its previous rulings," because Trujillo still cannot establish a constitutional violation that "rebuts the presumption of qualified immunity," and because the Court gave alternative rulings that the new evidence does not affect.  Defendants' Response at 3-4.   At the hearing, Mayerstein's counsel also asserted that the Court should not consider any statements Mayerstein allegedly made as a "fruit-of-the-poisonous-tree" sanction.[3]  April 3, 2007 Transcript at 5:15 (Olivas). He also contends that the same professional rules of conduct that regulate attorneys bind Trujillo, and that Trujillo, therefore, should not have talked with Mayerstein at the building supply store.  He states that the Court should not consider any of Mayerstein's out-of-court statements as a sanction under NMRA 16-402.[4]   See GUIDE FOR PRO SE LITIGANTS at 1, available at http://www.nmcourt.fed.us/web/DCDOCS/dcindex.html ("Generally, pro se litigants are held to the

---

[3] Counsel provides no legal authority indicating that a court has ever applied the fruit-of-the-poisonous tree doctrine, which is derived from criminal cases in which government agents have violated a criminal defendant's constitutional rights to obtain evidence, to a civil case such as this one. See United States v. Pettigrew, 468 F.3d 626, 634 (10th Cir. 2006)("The 'fruit of the poisonous tree' doctrine is most often associated with violations of the Fourth Amendment's prohibition of unreasonable searches and seizures.  See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407 . . . (1963).  It prohibits at trial the use of evidence obtained directly or indirectly through an unlawful search or seizure.  Id. at 484, 83 S.Ct. 407.").

[4] NMRA 16-402 provides:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.  Except for persons having a managerial responsibility on behalf of the organization, an attorney is not prohibited from communicating directly with employees of a corporation, partnership or other entity about the subject matter of the representation even though the corporation, partnership or entity itself is represented by counsel.

same standards of professional responsibility as trained attorneys.").

Contrary to Mayerstein's counsel's assertion, Trujillo, who is not a lawyer, is not bound by attorney rules of professional conduct.  See In the Matter of Michele Estrada, 143 P.3d 731, 744 (N.M. 2006)(stating, "when lawyers are licensed to practice here or providing legal services in this jurisdiction, they are subject to our rules [of professional conduct] and will be held responsible for actions they take in violation of those rules")(italics added); Eldaghar v. City of New York Dep't of Citywide Admin. Servs., 2004 WL 421789, at *1 (S.D.N.Y., March 5, 2004)("Although professional ethical restrictions that may prevent an attorney from contacting a current or former employee of a represented, adverse party, the pro se plaintiff here is not an attorney and is not, therefore, subject to these professional ethical restrictions.").  Further, to meet the duty to follow standards of professional responsibility, the Pro Se Guide requires a pro se litigant only to "become familiar with and to comply with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of New Mexico." GUIDE FOR PRO SE LITIGANTS at 1.  Because Trujillo is not an attorney, he is not clearly prohibited by the plain language of any provision from communicating with counseled, opposing parties.  See In re Howes, 123 N.M. 311, 315-16, 940 P.2d 159, 163-64 (1997)("While one purpose of Rule 16-402 is to prevent attorneys from utilizing their legal skills to gain an advantage over an unsophisticated lay person, an equally important purpose is to protect a person represented by counsel not only from the approaches of his adversary's lawyer, but from the folly of his own well-meaning initiatives and the generally unfortunate consequences of his ignorance.")(internal quotation marks omitted).  Moreover, the rules of professional conduct do not prevent parties from discussing a case directly and without counsel even when they are both represented by counsel.  There is thus no sound policy reason to preclude Trujillo and Mayerstein from discussing the case in this situation.  The Court need not decide in this case whether, as a

20

general rule, pro se litigants should adhere to the rule prohibiting attorneys from directly contacting counseled parties.  Mayerstein admitted to having initiated the contact and freely discussing the underlying facts in the case as he saw them with Trujillo even after Trujillo told him they should not be talking. The Defendants have not shown how the information Mayerstein gave Trujillo would have differed from information Trujillo could obtain in a deposition, how Mayerstein may have waived a viable defense, or how Mayerstein may have divulged privileged information as a result of his contact with Trujillo.  Accordingly, the Court will not refuse to consider Trujillo's affidavit.  See id. at 317, 940 P.2d at 165 ("The law and Rule 16-402 also recognize that once an attorney has been retained or appointed to represent a litigant, that attorney's responsibility is to act on behalf of the client and to protect the client from compromising his or her case by inadvertently waiving a viable defense or from disclosing privileged information.  The attorney cannot fulfill this responsibility when opposing counsel freely comes into contact with the client without the attorney's knowledge.").  Trujillo did not, as a pro se plaintiff, have the unfair advantage of professional skills and knowledge against which the rules against unrepresented contact were designed to protect represented clients.

Further, the Court notes that, even in criminal cases, information that a counseled party reveals when voluntarily contacting the opposing party's counsel without his attorney's knowledge is not suppressed; rather,  the opposing counsel may be sanctioned for not terminating the contact before information is revealed.  See id. at 315, 940 P.2d at 163 ("The public defender subsequently sought to have defendant's statements to [opposing counsel] and the detective suppressed and/or the indictment dismissed on the basis of prosecutorial misconduct.  The motion was denied by written order dated July 10, 1989, but the judge referred the matter of [opposing counsel's] possible violation of DR 7-104 of the Code of Professional Responsibility to the District of Columbia Board of Professional Responsibility").

Mayerstein is a party-opponent, and Trujillo has alleged that Mayerstein and Griego acted in concert to retaliate against him for speaking out about Mayerstein's lack of qualifications to be the SASI at VHS.  The admission-by-a-party-opponent exclusion to the hearsay rule is defined as follows: "The statement is offered against a party and is [] the party's own statement."  Fed. R. Evid. 801(d)(2)(A).

> Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule.  No guarantee of trustworthiness is required in the case of an admission.  The freedom which admissions have enjoyed from technical demands of searching for an assurance of trustworthiness in some against-interest circumstance, and from restrictive influences of the opinion rule and the rule requiring first-hand knowledge, when taken with the apparently prevalent satisfaction with the results, calls for a generous treatment of this avenue of admissibility.

Grace United Methodist Church v. City Of Cheyenne, 451 F.3d 643, 667 (10th Cir. 2006)(internal quotation marks and brackets omitted).  Admissions by a party opponent are, therefore, not hearsay. Mayerstein's remarks placing himself in a conspiracy with Griego and Crook to get Trujillo fired are self-inculpatory admissions by a party-opponent.  Thus, at a trial on the matter, Trujillo could testify about what Mayerstein allegedly told him regarding his motive for giving Trujillo negative evaluations without drawing a successful hearsay objection.  Because Mayerstein's admissions are not hearsay, they are admissible.  Trujillo may, therefore, use this alleged admission as evidence that a genuine issue of material fact exists on the issue of Griego's motivation in endorsing, and submitting to the AFJROTC headquarters, Mayerstein's negative military evaluation of Trujillo.

The Defendants' arguments that rule 804(b)(3) and Williamson v. United States, 512 U.S. 594, 599 (1994),[5] compel rejection of Mayerstein's alleged admissions are unavailing.  Both the rule

---

[5]  Rule 804(b)(3) defines what hearsay is "not excluded by the hearsay rule if the declarant is unavailable as a witness."  In Williamson v. United States, the issue was whether a court should

and the case involve whether <u>hearsay</u> should be admitted under an <u>exception</u> when a declarant is unavailable to testify at trial.  As noted above, admissions by a party-opponent are not included within the definition of hearsay.

As mentioned in the Court's previous memorandum opinion and order granting summary judgment, "[b]oth in the briefing and at the hearing on this motion, the Defendants focused on the second prong of qualified immunity analysis, arguing that, even if Trujillo's allegations amount to a constitutional violation, he cannot establish that the law was clearly established."  September 17, 2004 Memorandum Opinion and Order at 14.  Specifically, as to the constitutional-violation prong, the Defendants argued only that Trujillo's complaint showed an absence of "causal connection between the alleged exercise of constitutional rights and the claimed adverse employment actions" of being placed on administrative leave and being terminated.  Defendants' Summary Judgment Motion at 6-7.  The Court first considered the constitutional-violation prong of the qualified-immunity analysis and granted summary judgment because Trujillo had "failed to establish a genuine issue of a material fact as to the alleged constitutional violation."  September 17, 2004 Memorandum Opinion and Order at 14.

The only issues the Defendants raised in their motion for summary judgment were: (i) the absence of evidence of an adverse employment action; (ii) the absence of evidence of the requisite causal connection; and (iii) a conclusory statement that Trujillo had pointed to no Tenth Circuit or Supreme Court of the United States decisions to support the position that "voiding the evaluation completed by Defendant Mayerstein and instead recommending the Plaintiff be rehired violated Plaintiff's clearly established Constitutional rights."  Defendants' Summary Judgment Motion at 11.

admit a non-party's out-of-court, non-self-inculpatory statements to a police officer that incriminated another person at the criminal trial of that person.

To survive summary judgment in the previous motion,[6] therefore, Trujillo only had to present evidence and argument to overcome the Defendants' contentions.  See O'Toole v. Northrop Grumman Corp., 305 F.3d 1222, 1227 (10th Cir. 2002)(noting that "Rule 56 provides for summary judgment motions on particular issues or claims, and it is unquestionable that a non-moving party is not required to establish the existence of genuine issues of material fact for trial on matters not addressed by the summary judgment motion.  See Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1165 (10th Cir.1998)(noting that '[t]he substantive law at issue determines which facts are material [on summary judgment] in a given case')").

As outlined above, viewing the evidence in the light most favorable to Trujillo, Trujillo has shown that: (i) Griego knew that Trujillo complained about Mayerstein's lack of qualifications; (ii) Griego knew Trujillo filed EEOC charges complaining that Griego and Mayerstein were retaliating against him for speaking out about the issue and alleging that Mayerstein's lack of qualifications proved that Griego had discriminated against his wife; (iii) Griego told Mayerstein to write Trujillo up, counsel him, and forward negative evaluations to the Air Force to get him fired; (iv) Mayerstein did what Griego told him to do; and (v) Griego endorsed Mayerstein's negative military evaluation and sent it to the AFJROTC headquarters, knowing that it would affect Trujillo's future job opportunities as an ASI.  The Court concludes that Trujillo has tendered sufficient evidence to raise genuine issues of material fact regarding adverse action and causation.

The Court will vacate the summary judgment granted in favor of Griego. But because Mayerstein has sworn under oath that the negative evaluations and comments he made about

---

[6] The Court will address Mayerstein's arguments that Trujillo's First Amendment claims are not viable against any individual defendant because Trujillo cannot meet the requirements set forth in Garcetti v. Ceballos, 126 S.Ct. 1951, 1960 (2006), in another opinion.

Trujillo's poor work performance and behavior were true to the best of his knowledge at the time he made them, there is a genuine issue of material fact regarding the motivation behind creating and sending the negative evaluations to the AFJROTC headquarters.  Trujillo is therefore not entitled to summary judgment at this juncture.

## II.   TITLE VII RETALIATION CLAIMS AGAINST APS.

In the April 8, 2005 Memorandum Opinion and Order granting summary judgment to APS on the issue of Title VII retaliation, see Memorandum Opinion and Order, filed April 8, 2005 (Doc. 134), the Court determined that Trujillo met the first requirement establishing a prima facie case of retaliation in violation of Title VII by showing that he filed an EEOC charge in April 2002.  See Trujillo v. Bd. of Educ. of Albuquerque Pub. Schs., 377 F. Supp. 2d 1020, 1034 (D.N.M. 2005)(Browning, J.).  The Court stated, however, that the only allegations of adverse action were that the Defendants placed Trujillo on administrative leave and sent him a Letter of Understanding, and concluded that neither of these actions were adverse under the meaning of Title VII.  See id. at 1035-36.  The Court concluded that "Trujillo did not offer sufficient evidence to establish a prima facie case of Title VII retaliation.  APS is entitled to summary judgment."  Id. at 1036.  In the alternative, the Court concluded;

> Even if the Court assumes that Trujillo met his burden of establishing a prima facie case of retaliation, APS has offered a legitimate, non-discriminatory reason for its actions. . . .  [I]t placed Trujillo . . . on administrative leave so that it could conduct an investigation into allegations that their actions created a hostile work environment.
>
> * * * *
>
> Trujillo does not offer evidence to create a genuine issue of material fact that APS' proferred legitimate, non-discriminatory reason is pretext. . . . .
>
> * * * *

25

The Court must determine whether APS' legitimate, non-discriminatory reason -- that they issued Letters of Understanding/Reprimand and placed both Mayerstein and Trujillo on administrative leave to investigate who was creating the hostile work environment -- is pretext for retaliation.  APS has offered evidence that Trujillo may have contributed to such an environment, and Trujillo has not offered any evidence to refute this proffered reason.

In sum, Trujillo's assertions are insufficient to establish a genuine issue of material fact whether APS' proffered reason is pretext. . . .

Trujillo therefore did not offer evidence--circumstantial or otherwise--from which the Court can infer that APS' explanation is pretext.  Thus, APS is entitled to summary judgment on their motion for summary judgment, and Trujillo's motion for summary judgment on the Title VII claim is denied.

Trujillo v. Bd. of Educ. of Albuquerque Pub. Schs., 377 F. Supp. 2d at 1036-38.

As mentioned above, on January 9, 2004, the Court stated from the bench that it would be granting all of the Defendants' motions for summary judgment and denying Trujillo's motions for summary judgment.  Trujillo filed a motion for reconsideration of the Court's oral rulings on March 29, 2004, submitting an additional affidavit and documentary evidence.  See March 29, 2004 Motion.  Defendants did not respond to the merits of Trujillo's motion or to any of the documentary evidence, but argued instead that the motion was premature and that Trujillo could not meet the high standards for setting aside a judgment under Rule 60(b).  See Defendants' Response to Pro Se Plaintiff's Rule 60(b) Motion and Brief for Reconsideration, filed April 12, 2004 (Doc. 123).

On May 18, 2005, the Court entered an order declining to consider the motion as premature, but stated that it would "consider the relevant arguments presented by Trujillo . . . when it addresses Trujillo's subsequent motions to reconsider."  Memorandum Opinion and Order at 7, filed May 18, 2005 (Doc. 160).  In his September 20, 2005 Motion for Reconsideration, Trujillo contends that the Court failed to fully consider his assertions made in earlier motions to reconsider that he incorporated by reference, including the March 29, 2004 motion.  The Court has reviewed its

26

Memorandum Opinions and Orders denying Trujillo's subsequent motions to reconsider and concludes that, other than briefly mentioning one document that Trujillo had brought to the Court's attention in one order denying reconsideration, <u>see</u> September 2, 2005 Memorandum Opinion and Order at 6, the Court has not fully considered the arguments, affidavit, or other documentary evidence submitted in the March 29, 2004 Motion for Reconsideration. The Court will, therefore, consider the merits of the arguments and the attached evidence while addressing Trujillo's other motions that are before the Court at this time.

Mayerstein issued a Record of Counseling to Trujillo on March 20, 2002, accusing him of poor work performance and poor attendance. <u>See</u> Memorandum Opinion and Order at 11, filed March 30, 2005 at 11 (Doc. 130). The Court has determined that issuing a Record of Counseling is adverse action for purposes of First-Amendment retaliation analysis. <u>See id</u>. Trujillo contends that the allegations in the Record of Counseling are false and that the Record of Counseling is also adverse action under Title VII. Trujillo also presented evidence, which was incorporated by reference to a previous motion, that Mayerstein had distributed memoranda regarding Trujillo's alleged performance deficiencies, dating from December 1, 2001 through March 21, 2002, to the AFJROTC headquarters on March 19, 2002. <u>See</u> Pro Se Plaintiff's Brief filed to Show Necessity for Further Briefing on Pending Motions, filed July 20, 2005 (Doc. 178)("Brief to Show Necessity"), Exhibit 1C (Memorandum from Mark Mayerstein to Captain Harris, dated March 19, 2002).

Trujillo also attached evidence that Jo Alice Talley, the person in charge of AFJROTC instructor recertification, received and "reviewed the counselings" on March 28, 2002. Plaintiff's March 29, 2004 Motion, Exhibit 13 (E-mail from Jo Alice Talley to Mark Mayerstein dated March 28, 2004). Talley's email stated: "When an instructor receives an overall evaluation of 'unsatisfactory' and does not appeal or the appeal is overturned by the school superintendent, the

instructor is removed from his position and automatically decertified for AFJROTC instructor duty."
March 29, 2004 Motion, Exhibit 13 (E-mail from Jo Alice Talley to Mark Mayerstein dated March
28, 2004).

Trujillo presented documentary evidence that Mayerstein told him on April 3, 2002 that
Mayerstein's "overall rating for [Trujillo] was Satisfactory" on the military evaluation,
notwithstanding the March 20 counseling.  Brief to Show Necessity, Exhibit 1D (memorandum
entitled "Rules of Engagement" from Mayerstein to Trujillo dated April 3, 2002).  After receiving
a second Record of Counseling on April 3, 2002, Trujillo filed his EEOC complaint the same day.
See March 29, 2004 Motion, Exhibit 8 (Letter of Understanding from APS employee Ronald
Williams to Transito Trujillo, dated April 11, 2002); Defendants' Motion for Summary Judgment,
Exhibit D (Trujillo's EEOC Complaint filed April 3, 2002).  Trujillo wrote a rebuttal to
Mayerstein's allegations on April 7, 2002, and sent it to Griego.  In the rebuttal, Trujillo contended
that the Records of Counseling were a response to Trujillo's reporting of student abuses and
supporting Lourdes' EEOC complaint by finding out and then informing her that Mayerstein was
teaching a class that he "is not qualified or certified to teach," and that the date Mayerstein started
tracking his "comings and goings closely coincide[s] with the date [Mayerstein] received notice of
the letter my wife sent to the APS board, notifying them that he is teaching an Federal Aviation
Administration course for which he is not certified."  February 5, 2007 Motion, Exhibit M at 1, 4.
He asserts that, after Griego and Mayerstein met with Barbara Lynn from APS' Office of Equal
Opportunity Services, on April 8, 2002, to discuss Trujillo's and his wife's EEOC claims,
Mayerstein changed his mind about giving him an overall satisfactory military evaluation and "they
gave me an unsatisfactory military evaluation that was unjustified."  October 20, 2005 Motion at 1-
2.  He contends that this shows pretext because the military evaluation had previously been marked

28

as satisfactory on April 5, 2002, and "APS produced no evidence to justify the abrupt negative change." Id. at 2.  In support, besides the "Rules of Engagement" letter Mayerstein had written on April 3, 2002 to Trujillo, discussed above, Trujillo submitted an April 5, 2002 memorandum written about Trujillo by Mayerstein to the AFJROTC headquarters that states: "Much has happened since last we spoke. . . . After the most recent occurrences, I have decided to change the overall rating of Satisfactory to Unsatisfactory.  As soon as that Form 98 is signed by the Principal, I will send you a courtesy copy."  March 29, 2004 Motion, Exhibit 5 (Mayerstein's April 5, 2002 Memorandum to Captain Todd Pennington.).  Trujillo also referred to the April 8 memorandum, referenced earlier in this opinion, in which Mayerstein stated that he and Griego discussed whether to give Trujillo a satisfactory or unsatisfactory military evaluation on April 8, 2002, and that Griego "said he wanted to talk to Jo Alice Talley before we made the decision." Id. Exhibit 6 (Mayerstein's Memorandum for Record dated April 8, 2002).   As mentioned above in the section of this opinion discussing evidence of Griego's adverse action, Trujillo more recently has presented additional admissible documentary evidence that Griego endorsed the unsatisfactory evaluation that Mayerstein gave him and sent it to the AFJROTC headquarters.

Trujillo further established that Barbara Lynn issued a "confidential" report adopting many of Mayerstein's contentions about Trujillo's performance and recommending that both Trujillo and Mayerstein be fired, and that Ron Williams, another APS employee gave this report to Doyle, the AFJROTC Deputy Director and investigator.  See October 21, 2005 Motion at 1-3.  Trujillo also presented evidence, which was incorporated by reference to a previous motion, that Mayerstein had distributed memoranda regarding Trujillo's alleged performance deficiencies dating from December 1, 2002 through March 21, 2002 to the AFJROTC office on March 19, 2002.  See Brief to Show Necessity, Exhibit 1C (Memorandum from Mark Mayerstein to Captain Harris, dated March 19,

2002).  As mentioned earlier, Mayerstein stated that Griego told him to write-up Trujillo.  Trujillo asserts that this evidence makes a prima facie showing that Griego, acting in his official supervisory capacity, retaliated against him for his Title VII activities and for supporting Lourdes' EEOC claim by giving him negative military evaluations and distributing negative employment memoranda to AFJROTC officials that were likely to affect his future employment prospects.  He contends that this is adverse action under <u>Hillig v. Rumsfeld</u>, 381 F.3d 1028, and the Court agrees.

Without discussing Trujillo's new claims of adverse action and supporting evidence, the Defendants conclude that the previously cited actions "are still not materially adverse."  Defendants' Response to Pro Se Opposed Motion for Reconsideration of the Court's Previous Rulings at Doc. No. 125 and Doc. No. 134 Based on New Law and Evidence [Doc. 261 in 02cv1146] at 8, filed February 22, 2007 (Doc. 265)("APS Defendants' February 22, 2007 Response").  Instead, they argue only that neither Mayerstein's counselings, nor the letter of understanding, nor being placed on administrative leave are adverse actions.  <u>See id.</u> at 9-10; APS Defendants' Response to Pro Se Plaintiff's Motion for Reconsideration [Doc. 210] at 3-4, filed October 13, 2005 (Doc. 214)("October 13, 2005 Response to Motion for Reconsideration").   As mentioned above, the Defendants contend that <u>Hillig v. Rumsfeld</u> applies only to employment "referrals" for subsequent employment with a different employer.  As stated earlier, however, Trujillo's year-to-year employment with APS or any other school district as an ROTC instructor depended upon the AFJROTC headquarters not receiving a Griego-endorsed unsatisfactory military evaluation.  Unsatisfactory military evaluations  a principal endorses, therefore, would be materially adverse to any future employment, including continuing employment at the same school, and <u>Hillig v. Rumsfeld</u> is controlling precedent.

The Defendants also argue that "there is no evidence in the record that the Air Force's decision to decertify Trujillo was based on Mayerstein's records of counseling as opposed to the

personal observations of the Air Force Representative who met with Trujillo and Mayerstein," in August 2002.  Response for Motion for Reconsideration at 5.  At the April 3, 2007, hearing, APS' counsel conceded that, "if there were some evidence in the record that APS . . . had made some sort of subpar assertion as to Trujillo's ability as an employee, then perhaps [Trujillo] could meet [the] prong of a materially adverse action."  April 3, 2007 Transcript at 34:17-21 (Walker).  While conceding that Williams' giving of Lynn's confidential memorandum recommending Trujillo's termination "could possibly be determined to be materially adverse," he argued that it was undisputed that "APS had an obligation to evaluate the performance of the Air Force instructors and share whatever information it had with the Air Force."  Id. at 45:15-17.  APS has not presented any evidence, however, regarding Williams' duty or actual motive in sharing a non-military confidential report with Doyle.  The Court denied summary judgment to Trujillo on the issue of Williams' alleged discriminatory motive in case number 03cv1185 in part because Trujillo had placed an AFJROTC regulation into the record indicating that APS had a duty to evaluate ROTC instructors and share the reports with the AFJROTC headquarters, which brought into question Trujillo's bald assertion that Williams' intent in sharing APS' internal investigation report was discriminatory as a matter of law. See Memorandum Opinion and Order filed November 21, 2006, at 26-27 (Doc. 91 in 03cv1185). Ultimately, the Court denied summary judgment in favor of Trujillo upon concluding that "Trujillo has not presented any evidence that Trujillo's filing of his EEOC complaints or any other protected activity triggered or motivated Lynn's conclusions and opinions or Williams' act of turning over the investigative report."  Id. at 28.  That conclusion merely means, however, that the issue of Williams' intent and actual reason for turning over the report is still an issue for trial.  Perhaps Williams turned over the report at Griego's urging, just as he followed Griego's recommendation to place Trujillo on administrative leave.  See Plaintiff's Reply filed October 31, 2005, Exhibit 3 (Lynn Memorandum

31

to Williams, dated April 22, 2002)(stating that Griego recommended placing Trujillo and Mayerstein on leave with pay).  A jury may determine Williams' motive after a trial on the matter.  See Love v. RE/MAX of Am., Inc., 738 F.2d 383, 386 (10th Cir. 1984)("The ultimate question to be decided by the fact finder in a Title VII case is which party's explanation of the employer's motivation it believes.")(internal quotation marks omitted).

At the hearing, APS' counsel continued to contend that, even if Williams distributed the confidential Lynn memorandum recommending Trujillo's termination to Doyle, which he conceded would be an adverse action by APS, there is nothing but "rank speculation" that it caused Trujillo's decertification and resultant termination.  April 3, 2007 Transcript at 47:11 (Walker).  Hillig v. Rumsfeld holds, however, that the employee who can show his employer distributed negative employment evaluations in retaliation for protected activity does not also have to also "show the act precluded a particular employment prospect." 381 F.3d at 1033.  Further, Trujillo presented  a memorandum stating that the AFJROTC Deputy Director Doyle told Mayerstein that "Headquarters was squarely in [Mayerstein's] corner," and that "[Doyle] felt it was time for CMSgt Trujillo to go" on April 8, 2002, after receiving the counseling memoranda from Mayerstein and before Doyle conducted his own investigation in August, 2002.  March 29, 2004 Motion, Exhibit 6 (Mayerstein's April 8, 2002 Memorandum for Record).  Trujillo also presented a letter stating that Trujillo was decertified after "the APS Office of Equal Opportunity Services and AFJROTC conducted an investigation.  The investigation found Chief Trujillo disregarded school system policies and AFJROTC rules and regulations.  As a result of these findings, AFJROTC decertified Chief Trujillo . . . " Id., Exhibit 23 (February 4, 2003 letter from Ralph Dobbs, the United States Air Force Deputy Chief of the Congressional Inquiry Division, to Congresswoman Heather Wilson).

Insofar as the Defendants argue that summary judgment against APS and its agents should

be upheld because of the Court's alternative holding in its April 8, 2005 Memorandum Opinion and Order, the Court notes that the alternative holding addressed only the two adverse actions that had been alleged at that point in the proceedings:  issuing letters of understanding and placing Trujillo on administrative leave.  See Trujillo v. Bd. of Educ. of Albuquerque Pub. Schs., 377 F. Supp. 2d at 1036-38.  Although the Defendants contend that Trujillo did not present evidence of pretext to overcome APS' "legitimate non-discriminatory reasons for its actions," Response to Motion for Reconsideration at 6, APS has offered no evidence regarding why Griego apparently verbally endorsed a negative military evaluation that would indisputedly negatively affect Trujillo's future employment, while attaching to the same military evaluation his written teacher evaluation recommending Trujillo's re-employment. There is sufficient evidence of retaliation to compel reconsideration of the Court's grant of summary judgment to APS.

As outlined above, viewing the evidence in the light most favorable to Trujillo, Trujillo has shown that:  (i) Trujillo reported Mayerstein's lack of qualifications to his wife and to Griego in November, 2001, in support of Lourdes' EEOC claim; (ii) Mayerstein started keeping  negative employment memoranda for the record around the same time; (iii) because Griego was concerned that Trujillo might cause problems regarding Lourdes' EEOC complaint, Griego told Mayerstein to write up, counsel, and report Trujillo to the AFJROTC headquarters so that Trujillo would be fired; (iv) Mayerstein did what Griego told him to do; (v) Mayerstein counseled Trujillo in March and April 2002 and sent the negative counseling to the AFJROTC headquarters; (vi) Mayerstein told Trujillo his military evaluation would be satisfactory before Trujillo filed his EEOC complaint; (vii) soon after Trujillo filed his EEOC complaint accusing Griego and Mayerstein of retaliating against him for supporting his wife's EEOC complaint, Mayerstein changed the military evaluation to unsatisfactory and APS sent it to the AFJROTC; (viii) Griego indicated to Trujillo that he was not

endorsing Mayerstein's unsatisfactory rating and attached a teacher evaluation to the military evaluation that recommended his re-employment in April 2002, (ix) based in part on Mayerstein's negative reports, and after meeting with Griego, Lynn recommended in June 2002 that Trujillo's military evaluation that would be sent to the AFJROTC include a recommendation that Trujillo not be rehired; (x) Griego told Talley that he was not going to change the unsatisfactory military rating in June 2002; (xi) APS employee Williams gave Doyle Lynn's confidential report recommending Trujillo's termination in August 2002; and (xii) unsatisfactory military evaluations are presumptive grounds for decertification and termination.  Trujillo has presented evidence demonstrating a close nexus between his protected EEOC activity and adverse action, and there are genuine issues of material fact regarding APS employees' motivations and why the AFJROTC decertified him.  There is sufficient evidence on adverse action and causation to go to trial on the issue of Title-VII retaliation.

Because Mayerstein has sworn under oath that the negative evaluations and comments he made about Trujillo's poor work performance and behavior were true to the best of his knowledge at the time he made them, but Trujillo contends they were false, there is a genuine issue of material fact regarding the motivation behind Mayerstein's creation and dispersal of the negative evaluations to the AFJROTC headquarters and Griego's endorsement of the same, and Trujillo still is not entitled to summary judgment at this juncture.  The matter must go to trial.

**IT IS ORDERED** that: (i) Pro Se Plaintiff's Rule 60(b) Motion and Brief for Reconsideration, filed March 29, 2004 (Doc. 120 in 02cv1146), is granted; (ii) Opposed Pro Se Plaintiff's Motion and Brief for Reconsideration of the Court's Memorandum, Opinion, and Order, Doc. No. 195, Entered September 2, 2005, filed September 20, 2005, (Doc. 210 in 02cv1146) is granted; (iii) Opposed Pro Se Plaintiff's Motion and Brief for Reconsideration of the Court's

Memorandum Opinion and Order, Doc. No. 194, Entered September 2, 2005,  filed October 4, 2005, (Doc. 222 in 02cv1146), is granted in part and denied in part; (iv) Pro Se Plaintiff's Opposed Motion and Brief for Leave to File Additional Briefing as to Claims Based on Newly Discovered Evidence, filed October 21, 2005 (Doc. 224 in 02cv1146), is granted; (v) Pro Se Motion for Reconsideration of the Court's Denial of Summary Judgment, filed December 11, 2006 (Doc. 92 in 03cv1185), is denied; and (vi) Pro Se Opposed Motion and Brief for Reconsideration of the Court's Previous Rulings at Doc. No. 125 and Doc. No. 134 Based on New Law and Evidence, filed February 5, 2007, (Doc. 261 in 02cv1146) is granted in part.

**IT IS FURTHER ORDERED** that (i) summary judgment granted in favor of APS and Griego on the issue of Title VII retaliation (Doc. 134 in 02cv1146) is vacated; and (ii) the summary judgment granted in favor of and dismissing Griego, acting in his individual capacity, on the First Amendment retaliation claim is vacated (Doc. 125 in 02cv1146).

UNITED STATES DISTRICT JUDGE

*Counsel and Parties*:

Transito Trujillo
Albuquerque, New Mexico

     *Pro Se Plaintiff*

Max J. Madrid
Alex C. Walker
Modrall, Sperling, Roehl, Harris & Sisk
Albuquerque, New Mexico

     *Attorneys for Defendants Board of Education,*
     *Albuquerque Public Schools; Joseph Vigil;*

*Susie Peck; Anthony Griego; Bruce Smith;*
*and Ronald Williams*

Sean Olivas
Keleher & McLeod
Albuquerque, New Mexico

*Attorney for Defendant Mark Mayerstein*