# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

TRANSITO TRUJILLO,

     Plaintiff,

vs.                                                                            No. CIV 02-1146 JB/LFG

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,
JOSEPH VIGIL and SUSIE PECK, Albuquerque
Public Schools Superintendents individually and
in their official capacities; ANTHONY GRIEGO,
Principal, Valley High School, individually and in
his official capacity; BRUCE SMITH, Valley High
School Assistant Principal, individually and in his
official capacity; RONALD WILLIAMS, Director
of Certified Staffing, Albuquerque Public Schools,
individually and in his official capacity; and MARK
MAYERSTEIN, Valley High School employee,
individually and in his official capacity,

Defendants.

and

TRANSITO TRUJILLO,

     Plaintiff,

vs.                                                                            No. CIV 03-1185 JB/LFG

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS;
MARK MAYERSTEIN, Senior ROTC
Instructor, and ANTHONY GRIEGO,
Valley High School Principal, in their
official and Individual capacities,

Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on the following motions in case number 02cv1146: (i) Pro Se Plaintiff's Motion and Brief For Reconsideration of Mayerstein's Record of Counseling & Related Memoranda, Referenced in the Court's Memorandum Opinion And Order, Doc. 197, Entered September 5, 2005, filed September 16, 2005 (Doc. 209)("September 16, 2005 Motion for Reconsideration"); (ii) Plaintiff's Motion for Order To Allow Further Briefing, filed November 18, 2005 (Doc. 231)("Motion for Further Briefing"); and (iii) Defendant Lt. Col. Mayerstein's Motion and Supporting Memorandum of Law for Summary Judgment on Qualified Immunity and Other Grounds, filed April 27, 2007 (Doc. 303) ("Mayerstein's Motion for Summary Judgment"). The Court held a hearing on Trujillo's motions for reconsideration on April 3, 2007. The primary issues are whether the Court should exercise its discretion to reconsider its rulings affirming partial summary judgment in favor of Mark Mayerstein, acting in his individual capacity, for alleged violation of Trujillo's First Amendment rights, and whether Mayerstein is entitled to qualified immunity. Because the record shows that Trujillo's speech is not protected under the First Amendment as a matter of law, the Court will uphold its September 2, 2005 decision affirming partial summary judgment in favor of Mayerstein on this claim, and will grant summary judgment in favor of Mayerstein and the other individual APS defendants on the remaining claims for violation of Trujillo's First Amendment right to free speech.

<u>**BACKGROUND**</u>

[Plaintiff Transito] Trujillo began working as an Aerospace Instructor (ASI) in the Air Force Junior Reserve Officer Training Corps program (AFJROTC) at Valley High School in Albuquerque, New Mexico, in 1991. The Board of Education for the Albuquerque Public Schools (the APS Board) hired [Defendant Mark] Mayerstein in the spring of 2001 to replace Trujillo's supervisor in the position of Senior ASI. Trujillo's wife, Major Lourdes Trujillo, had applied for the job as well and, after APS hired Mayerstein, she filed a complaint with the Equal Employment

Opportunity Commission (EEOC) claiming national origin and sex discrimination. Trujillo and Mayerstein began working together in October 2001. The relationship started well, but it began to deteriorate in December 2001. By the spring of 2002, both parties had been placed on administrative leave pending an investigation into their cross-allegations of misconduct.

Trujillo, through counsel, filed suit in September 2002 against Mayerstein and the other named defendants, bringing claims under 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and other grounds [in case number 02cv1146]. The APS Board and all of the individual defendants moved for summary judgment. Trujillo filed cross-motions for summary judgment against all of the defendants. The district court held a hearing on January 9, 2004, on all pending motions. The district court stated at the hearing that it was going to grant summary judgment in favor of all of the defendants and deny summary judgment in favor of Trujillo. On March 29, Trujillo, now proceeding pro se, filed a Fed. R. Civ. P. 60(b) Motion and Brief for Reconsideration based on the district court's indication that it would be granting summary judgment in favor of all of the defendants. On September 17, the district court issued an order granting summary judgment for all of the individual defendants, except Mayerstein.

On March 30, 2005, the district court issued an order granting summary judgment in favor of Mayerstein. On April 4, Trujillo filed a Rule 59(e) Motion to Alter or Amend the Judgment, challenging the March 30, 2005 order. . . . On September 2, the district court construed Trujillo's Rule 59(e) motion as a motion for reconsideration and entered an order denying it in part and granting it in part. As a result of reconsidering its earlier decision, the district court determined that Mayerstein was no longer entitled to summary judgment on Trujillo's First Amendment retaliation claim. [An] interlocutory appeal followed.

* * * *

After the district court issued its opinion, the Supreme Court decided Garcetti v. Ceballos, 126 S.Ct. 1951, 1960 (2006), which modified prior First Amendment jurisprudence by clarifying that when speech is part of a public employee's official duties, it is not made as a citizen and is not protected. . . . . [T]he record before [the United States Court of Appeals for the Tenth Circuit did] not contain sufficient evidence on Trujillo's official duties to perform the Garcetti analysis. Accordingly, [the United States Court of Appeals for the Tenth Circuit] remand[ed] this case for further fact-finding in light of the Supreme Court's decision in Garcetti.

Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs., No. 05-2305, 2007 WL 80698, at *1-3 (10th Cir. Jan. 12, 2007)(footnote omitted).

Trujillo filed his September 16, 2005 Motion for Reconsideration ten days before Mayerstein

filed his notice of appeal from the Court's September 2, 2005 Memorandum Opinion and Order reconsidering and withdrawing its grant of summary judgment in favor of Mayerstein. Mayerstein filed a notice of non-response the same day he filed his notice of appeal, contending that the filing of the notice of appeal divested the Court of jurisdiction to decide the motion. See Defendant's Notice of Non-Response, filed September 26, 2007 (Doc. 211). Although the United States Court of Appeals for the Tenth Circuit decided Mayerstein's appeal on January 12, 2007, and the certified copy of that opinion and order was docketed in this Court on February 14, 2007, see Certified Copy of Order and Judgment, filed February 14, 2007 (Doc. 264), Mayerstein still has not responded to the motion. The Court could deem Mayerstein to have consented to the motion. See D.N.M.LR-Civ. 7.1(b) ("The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion."). Nevertheless, because the Court has a duty to comply with the United States Court of Appeals for the Tenth Circuit's instructions on remand; because Mayerstein has filed another motion for summary judgment based on Garcetti[1]; and because Garcetti mandates summary judgment in favor of the individual Defendants, the Court will proceed to the merits of the issues before it.

## APPLICABLE LEGAL STANDARDS

The United States Court of Appeals for the Tenth Circuit recently affirmed the Court's analysis regarding whether the Court has discretion to reconsider summary judgments without applying rule 59(e) or rule 60(b) of the Federal Rules of Civil Procedure.

A district court has discretion to revise interlocutory orders prior to entry of final judgment. Price v. Philpot, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005) ("[E]very order

---

[1] Trujillo complains that Mayerstein's motion for summary judgment is untimely. Because the Tenth Circuit specifically remanded the First-Amendment issue for further fact-finding, however, the Court will consider Mayerstein's arguments and undisputed evidence.

short of a final decree is subject to reopening at the discretion of the district judge."); Anderson v. Deere & Co., 852 F.2d 1244, 1246 (10th Cir. 1988) (citing Fed.R.Civ.P. 54(b)). Mayerstein asserts that, although final judgment had not yet entered in the case, the district court's discretion to revise its interlocutory orders was limited by the standards for reviewing a post-judgment motion filed pursuant to Rule 59(e) or 60(b) of the Federal Rules of Civil Procedure. Mayerstein cites to several district court decisions to support his position, but he cites to no Tenth Circuit authority. Moreover, he fails to mention this court's opinion in Raytheon Constructors Inc. v. ASARCO, Inc., 368 F.3d 1214, 1217 (10th Cir. 2003), which was relied upon by the district court for its decision.

In Raytheon, like this case, the plaintiff moved for reconsideration prior to the entry of final judgment. The district court treated the motion as a Rule 60(b) motion, even though it acknowledged that the plaintiff was seeking reconsideration of an interlocutory order rather than a final judgment. Id. at 1216. We concluded that "[t]he district court was incorrect to treat Raytheon's motion for reconsideration under Rule 60(b), which only applies to final orders or judgments." Id. at 1217. Similarly, in Wagoner v. Wagoner, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991), we noted that a motion for reconsideration filed prior to final judgment "was nothing more than an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment." The district court therefore had the general discretionary authority to review its March 30, 2005 order after Trujillo filed his motion for reconsideration, and it was not bound by the stricter standards for considering a Rule 59(e) or Rule 60(b) motion.

Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs., 2007 WL 80698, at **4-5.

When a party files an affidavit and moves for additional discovery time under rule 56(f), the party invokes the court's discretion. See Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1553-54 (10th Cir. 1993). "Unless dilatory or lacking in merit," a party's 56(f) application "should be liberally treated." Id. at 1554 (internal quotation marks and citations omitted). "The general principle of Rule 56(f) is that summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition." Price v. W. Res., Inc., 232 F.3d 779, 783 (10th Cir. 2000). Rule 56(f) does not require, however, that summary judgment not be entered until discovery is complete. See id. at 784. To invoke rule 56(f), the party filing the affidavit must state with specificity how the desired time would allow it to meet

its burden in opposing summary judgment.  See Jensen v. Redevelopment Agency of Sandy City, 998 F.2d at 1554.

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56©.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citing Fed. R. Civ. P. 56(e)).  An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party.  Id. at 249-50 (citations omitted).  Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment.  See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988).  The court may consider only admissible evidence when ruling on a motion for summary judgment.  See World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir. 1985)(citing Fed. R. Civ. P. 56(e)).

A defendant seeking summary judgment has an "initial burden to show that there is an absence of evidence to support the nonmoving party's case."  Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000)(internal quotation marks omitted).  Upon meeting that burden, the plaintiff must "identify specific facts that show the existence of a genuine issue of material fact."  Id. (citations and internal quotation marks omitted).  "The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor."  Id. (citations and internal quotation marks omitted).  The mere existence of a scintilla of evidence in support of the plaintiff's position is not sufficient; there must be evidence on which the fact finder

could reasonably find for the plaintiff.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  The

non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions,

answers to interrogatories, and admissions on file, designate specific facts showing that there is a

genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S. at 324 (internal quotation marks

omitted).  "In a response to a motion for summary judgment, a party cannot rest on ignorance of the

facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that

something will turn up at trial."  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  The

non-moving party "must do more than simply show that there is some metaphysical doubt as to the

material facts."  Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1266 (10th Cir.1996).

As the Court noted in both its September 17, 2004 and March 30, 2005, Memorandum

Opinions and Orders granting summary judgment in favor of the individual Defendants on the First-

Amendment retaliation claims,

> the United States Court of Appeals for the Tenth Circuit employs a multi-tier analysis,
> known as the Pickering test, to evaluate whether a public employer's actions
> impermissibly infringe on an employee's free speech rights.  See Connick v. Meyers,
> 461 U.S. 138, 146 (1983); Martin v. City of Del City, 179 F.3d 882, 886 (10th Cir.
> 1999)(citing Schalk v. Gallemore, 906 F.2d 491, 494 (10th Cir. 1990)).  First, the
> court must decide whether the speech at issue touches on a matter of public concern.
> See Connick v. Meyers, 461 U.S. 138, 146 (1983).

Memorandum Opinion and Order at 10, filed September 17, 2004 (Doc. 125)("September 17, 2004

Order").  See Memorandum Opinion and Order at 17, filed March 30, 2005 (Doc. 130)("March 30,

2005 Order").  The Court noted that:

> "An employee's motivation for speaking is important to our analysis of whether the
> speech pertained to matters of public concern." Baca v. Sklar, 398 F.3d 1210, 1219
> (10th Cir. 2005).
>
> > In analyzing whether speech constitutes a matter of public concern,
> > [the court] may focus on the motive of the speaker and whether the
> > speech is calculated to disclose misconduct or merely deals with

> personal disputes and grievances unrelated to the public's interest.
> For example, when the identified speech focuses on disclosing a
> public official's malfeasance or wrongdoing, it is most likely a matter
> of public concern.  Conversely, it 'is generally not [considered]
> protected speech if [its] aim is simply to air grievances of a purely
> personal nature.'

Lighton v. Univ. of Utah, 209 F.3d 1213, 1224-25 (10th Cir. 2000)(quoting Schalk
v. Gallemore, 906 F.2d 491, 495 (10th Cir. 1990)) (citations omitted).  Accord Hulen
v. Yates, 322 F.3d at 1237 ("[The courts] also consider the motive of the speaker-was
the speech calculated to redress personal grievances or did it have a broader public
purpose?")(quotation and alterations omitted).  It is not sufficient that the speech topic
is of general interest to the public; rather, the actual statements on that particular topic
must be of public concern.  See Wilson v. City of Littleton, 732 F.2d 765, 769 (10th
Cir.1984).  Courts have stated that, when the speech's content focuses on disclosing
public officials' malfeasance or wrongdoing, it is likely to be considered a matter of
public concern.  See Lighton v. Univ. of Utah, 209 F.3d at 1224-25; Wulf v. City of
Wichita, 883 F.2d 842, 857 (10th Cir.1989); Koch v. City of Hutchinson, 847 F.2d
at 1445 ("[M]any courts have particularly focused on the extent to which the content
of the employee speech was calculated to disclose wrongdoing or inefficiency or
other malfeasance on the part of governmental officials in the conduct of their official
duties.").

March 30, 2005 Order at 18-19.

The Supreme Court of the United States recently held that, when public employees speak

"pursuant to their official duties, the employees are not speaking as citizens for First Amendment

purposes, and the Constitution does not insulate their communications from employer discipline."

Garcetti v. Ceballos, 126 S. Ct. at 1960.  Accordingly, the Tenth Circuit has held that the Supreme

Court "modified prior First Amendment jurisprudence by clarifying that when speech is part of a

public employee's official duties, it is not made as a citizen and is not protected."  Trujillo v. Bd.

of Educ. of the Albuquerque Pub. Schs., No. 05-2305, 2007 WL 80698, *3 (10th Cir. Jan. 12, 2007).

See Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1328 (10th Cir. 2007)("The question

for us on Pickering's first prong is thus significantly modified, and we are obliged to ask whether

[the public school employee] met her burden by providing evidence that her expressions were made

in her capacity as a citizen and not pursuant to her 'official duties.'")(footnote omitted).  In <u>Casey v. West Las Vegas Independent School District</u>, applying <u>Garcetti v. Ceballos</u>, the Tenth Circuit held that a public school employee's complaints  to her  supervisors and the school board about their alleged mishandling of employee reviews, alleged mishandling of teacher and principal misconduct, and allegedly illegal conduct in administering federally-funded programs, were not protected speech under the First Amendment.  <u>See</u> 473 F.3d at 1330-31.

## ANALYSIS

After reviewing the record, the parties' briefs, the additional evidence Mayerstein submitted in his motion for summary judgment, and the controlling law, the Court will grant summary judgment in favor of Mayerstein and the remaining individual defendants, acting in their individual capacities, on the First-Amendment claims for retaliation.

Trujillo originally attempted to assert four areas of allegedly protected speech: "(i) his right to intimate association with his wife, Lourdes Trujillo; (ii) Trujillo's active support of his wife's protected activity in pursuing her EEOC complaint; (iii) Trujillo's speech in raising the question of Mayerstein's qualifications to teach the ground school course in the AFJROTC program; and (iv) Trujillo's speech in raising and complaining of Mayerstein's mistreatment of students at VHS." September 17, 2004 Order at 15-16.  As to the first area of allegedly protected speech, the Court has concluded that, "[b]ecause Trujillo does not allege or offer evidence that Mayerstein acted with the specific intent to interfere with Trujillo's marital relations with his wife, Mayerstein is entitled to qualified immunity on this claim."  March 30, 2005 Order at 38.  Trujillo has not challenged that legal conclusion in any of his many motions for reconsideration.  <u>See</u>, <u>e.g.</u>, Plaintiff's Pro Se Rule 59(e) Motion to Alter or Amend the Judgment and Order, filed September 22, 2004 (Doc. 126(arguing only that the Court "erred by not considering the fact that Defendants Griego, Vigil,

Williams, Peck, and Smith failed to investigate Mayerstein's false and damaging publication of my alleged sexual intercourse with a student's mother and that these Defendants effectively condoned and ratified Mayerstein's violation of my right to intimate association with my wife"). Trujillo also does not challenge the Court's March 30, 2005 ruling on the issue of Mayerstein's intent in his motions to reconsider heard on April 3, 2007, and the Court will not disturb its rulings on this issue.

In regard to the second area of allegedly protected speech, the Court held that "at the time the alleged protected speech [regarding support of Trujillo's wife's EEOC complaint] occurred -- in 2001 -- the law was not clearly established whether the underlying EEOC charge must be based on a matter of public concern." March 30, 2005, Memorandum Opinion and Order at 31. Accordingly, all individual defendants, including Griego, Peck, and Mayerstein, would be entitled to qualified immunity for this claim on this basis. See id. Trujillo argues that "[m]aking 'statements in opposition to alleged discriminatory employment practices' has been protected speech since 1993," citing Langley v. Adams Cooly, 987 F.2d 1473, 1479 (10th Cir. 1993). Plaintiff's Motion for Further Briefing at 3 (Doc. 231). While that general statement may be true, cf. Casey v. W. Las Vegas Indep. Sch. Dist. 473 F.3d at 1333-34 (noting that, "[i]t has long been established law in this circuit that when a public employee speaks as a citizen on matters of public concern to outside entities despite the absence of any job-related reason to do so, the employer may not take retaliatory action"), Trujillo complained that Griego and Mayerstein retaliated against him "based on my support of my wife's . . . EEOC complaint against APS. These individuals knew of my involvement in my wife's EEOC complaint and because of my support, they are retaliating against me . . ." Plaintiff Transito Trujillo's Motion for Summary Judgment Against APS Defendants, filed October 19, 2005 (Doc. 53 in 03cv1185), Exhibit 7 (Trujillo's April 3, 2002 EEOC Complaint). Trujillo's allegations show that he complained to his supervisors, not to "outside entities" before the alleged retaliatory treatment

commenced, and therefore his speech is not protected.  See Garcetti v. Ceballos, 126 S. Ct. at 1959-60 (holding that district attorney who communicated his concerns to his supervisors was not protected by the First Amendment); Casey v. W. Las Vegas Indep. Sch. Dist. 473 F.3d at 1334 (making a distinction between a situation in which a retaliatory action commenced after public school employee complained to supervisors and those in which plaintiff complained to outside entities before retaliatory action commenced).

Further, Trujillo's central claim on this particular area of speech has always been tied to his support of his wife's filing of her EEOC charges and not to opposition to discriminatory practices in general.  When attempting to bring claims under both Title VII and § 1983 for violation of First-Amendment rights under the same set of facts, "a plaintiff must have an independent basis for claims outside of Title VII, lest Congress' prescribed remedies under Title VII be undermined." Drake v. City of Fort Collins, 927 F.2d 1156, 1162 (10th Cir. 1991). Cf. Starret v. Wadley, 876 F.2d 808, 813-14 (10th Cir. 1989)(noting that "a right created solely under Title VII cannot serve as the basis for an independent remedy under Section 1983," but holding that the plaintiff's § 1983 "claim was not predicated upon a violation of Title VII, but rather upon a violation of the First and Fourteenth Amendments").  For example,

> a § 1983 claim of racial discrimination is independent of a statutory [Title VII] disparate treatment claim arising out of the same set of facts because the § 1983 claim is substantively grounded in the Equal Protection Clause of the Fourteenth Amendment, whereas the disparate treatment claim flows from Title VII.  Because the substantive legal standards that govern these claims emanate from different sources, as long as the substantive legal bases for the claims are distinct, our "independence" requirement is satisfied and Title VII does not foreclose an employment discrimination plaintiff's § 1983 claim.

Notari v. Denver Water Dep't, 971 F.2d 585, 587 (10th Cir. 1992).  Trujillo alleged no independent basis for his First Amendment retaliation claim related to general discriminatory practices or

discrimination against himself in his EEOC complaint or in his federal complaint.  He contends only

that he was supporting and assisting his wife in pursuing and proving her EEOC complaint.  His

claim for retaliation in regard to that activity, therefore, must be limited to his cause of action against

APS and Griego and Mayerstein acting in their official capacities under Title VII.  See Drake v. City

of Fort Collins, 927 F.2d at 1162.  In Whittington v. Board of Educ. of Somerset County, No.

Civ.A.WMN-94-398, 1995 WL 17002152 (D. Md. June 2, 1995), the United States District Court

for the District of Maryland addressed a related matter.  The Whittington court held:

> Plaintiff bases his § 1983 action, in part, on the First Amendment, arguing that
> Defendants retaliated against him for speaking publicly about Defendants' alleged
> discriminatory practices and for filing administrative charges.  However, it is clear
> that the essence of Plaintiff's retaliation claim in violation of the First Amendment
> focuses on the filing of discrimination charges, not on Plaintiff's public allegations
> of discrimination. . . .  Plaintiff fails to establish that the rights guaranteed by the First
> Amendment provide him with additional substantive rights, independent of those
> available under Title VII. Therefore, the Court need only give specific consideration
> to Plaintiff's Title VII claims.

Id. at *11 (footnote omitted).  Similarly, in Arvinger v. Mayor & City Council of Baltimore, 811 F.

Supp. 1121 (D. Md. 1993), another District of Maryland court stated in a Title VII case:

> [Because] neither the filing of the [civil rights lawsuit for discrimination] nor the
> testimony [the plaintiff] gave therein constitutes speech about a matter of public
> concern, and hence, neither is protected by the First Amendment. [The plaintiff] filed
> suit and testified on his own behalf for personal reasons, in order to be reinstated to
> his position as a school policeman, rather than in an effort to further public debate
> about issues of broad public concern. . . . [The plaintiff] sought damages for himself,
> rather than broad injunctive relief, and made no claim about systematic injustice.  The
> claims . . . are best characterized as individualized grievances, in contrast to
> public-spirited speech.  Thus, [the plaintiff] has no independent First Amendment
> claim upon which his § 1983 action can be based.

Id. at 1125.

In the September 2, 2005 Order reconsidering summary judgment granted to Mayerstein on

the First-Amendment retaliation claims, the Court reinstated only the claim related to Mayerstein's

lack of qualifications to teach the ground school course in the VHS AFJROTC program, and the claim associated with Trujillo complaining of Mayerstein's alleged mistreatment of students at VHS. After remand on these two claims, the Court must now determine whether Trujillo's speech on the remaining claims was made as part of his official duties as an APS AFJROTC employee.  See Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs., 2007 WL 80698, at *3 (remanding for further fact finding and legal analysis using the standard set forth in Garcetti v. Ceballos).

At the April 3, 2007 hearing, counsel for APS generally contended that, although he was unaware of such an official duty in Trujillo's job descriptions, Trujillo still may have had an official duty to report student abuses.  See April 3, 2007 Hearing Transcript at 24:16-25 (Walker) ("April 3, 2007 Transcript");[2] id. at 25:1-5.  Counsel stated that he did not think Trujillo had any duty "to get involved in whether or not Mayerstein was qualified."  Id. at 25:23-24 (Walker).  As discussed below, however, Mayerstein has now submitted the statutes and regulations addressing an educator's duties to report student abuse and lack of qualifications to teach a course.

At the April 3, 2007 hearing Mayerstein's counsel contended that he specifically asked Trujillo whether he was duty-bound to report what he perceived as student abuse; that Trujillo stated that he was; and that New Mexico statutes require teachers to report any type of abuse they see.  See id. at 26:5-14 (Olivas).  Mayerstein attached to his motion for summary judgment an excerpt from Trujillo's July 3, 2003 deposition in which Trujillo stated:  "I know that there's the APS rule that requires any abuse of kids [to be reported.] I believe that there's a state and a federal law that requires that if you see an abuse of a child, you're supposed to report it."  Mayerstein's Motion for Summary Judgment, Exhibit B.

---

[2] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

In response to the Court's repeated invitations for Trujillo to bring forth all evidence related to the First Amendment issues before the Court at the April 3, 2007 hearing, Trujillo stated that his position on all issues raised at the hearing was as he had previously stated in the record. See April 3, 2007 Transcript at 7:8-13 (Trujillo); id. at 14:9-12 (Trujillo); id. at 17:5-11 (Trujillo); id. at 18:23-25 & 19:1 (Trujillo);  id. at 27:12-14, 25 (Court); id. at 28:2-7 (Court, Trujillo); id. at 48:21-23 (Court, Trujillo).  The issue of official duty is determinative at this juncture of the proceedings, because of the Court's responsibility to resolve issues regarding the qualified immunity defense before moving to the remaining merits of Trujillo's claims.

As part of his response to Mayerstein's motion for summary judgment, Trujillo filed a rule 56(f) affidavit and several exhibits, and also made a number of legal arguments in opposition to Mayerstein's motion.  Trujillo contends that he needs to depose Mayerstein -- before the Court rules on Mayerstein's motion for summary judgment -- to question Mayerstein  about Trujillo's "actual job duties" at VHS.  Pro Se Plaintiff's Brief in Support of Rule 56(f) Motion, filed May 1, 2007 (Doc. 305), Exhibit 1, ¶ 2 (Trujillo's rule 56(f) Affidavit).  He asserts other reasons for needing to depose Mayerstein, but none of them relate to Trujillo's motivation for speaking out against Mayerstein's alleged student abuses and lack of certification.  Further, none of the exhibits Trujillo attach to his brief relate to why he spoke out, and none dispute Mayerstein's contentions contained in his summary-judgment motion.  Mayerstein maintains that his deposition was scheduled for May 16, 2007, which makes Trujillo's Rule 56(f) request moot.  See Response of Defendant Lt. Col. Mayerstein to Plaintiff's Request for Relief Pursuant to Rule 56(f) at 1, filed May 16, 2007 (Doc. 310).  The Court will deny Trujillo's request for an extension of time in which to depose Mayerstein before the Court rules on Mayerstein's motion for summary judgment. See Jensen v. Redevelopment Agency of Sandy City, 998 F.2d at 1554.

In addition to reviewing the materials submitted in the summary judgment record related to Mayerstein's second motion for summary judgment, the Court has carefully reviewed the record to see whether Trujillo may have already explained whether he spoke out on the two remaining issues as part of his official duties or as a concerned citizen or whether there is a genuine issue of material fact on the issue.  The Court concludes that no genuine issue of material fact exists regarding why Trujillo spoke out.

In his previous briefing, Trujillo contended that he "had a duty to report student abuses by Mayerstein to Defendant[] Griego . . . .  I had a duty to report to these Defendants Mayerstein's lack of qualifications and teaching a course that required FAA certification."  Plaintiff's Pro Se Reply to Defendants Response to Rule 59(a) Motion to Alter or Amend the Judgment and Order at 9, filed October 13, 2004 (Doc. 128).  In his deposition, Trujillo stated that he reported what he perceived as student abuse "as I was required by law" to the assistant principal at VHS.  Memorandum Brief in Support of Defendants Joseph Vigil, Susie Peck, Anthony Griego, Bruce Smith, and Ronald Williams' Motion for Summary Judgment, filed August 11, 2003 (Doc. 42), Exhibit B at 258-59 (Trujillo Deposition taken June 30, 2003).  Trujillo also stated in a letter written to APS and copied to the EEOC that, "[a]side from reporting Mr. Mayerstein's abuses, as I am required by APS, State and Federal law, I am not involved with the parent's complaints or any of their actions against Mr. Mayerstein or APS."  Mayerstein's Motion for Summary Judgment,  filed October 10, 2003 (Doc. 74), Exhibit N at 429 (Trujillo's Deposition taken July 7, 2003).  Thus, Trujillo has specifically denied speaking out as a private citizen.

In regard to the reason why he reported Mayerstein's lack of FAA certification, Trujillo has sworn,

> I reported Mayerstein to Griego because it was my duty as an Instructor in a public

school since Mayerstein did not comply with Air Force mandated requirements to teach the honors course and students could not receive credit for the course.  Some parents complained about this to me.  The significance of Mayerstein's not having the certification is that A.F.J.R.O.T.C. regulations require the instructor of the ground school course to be certified.  Without the instructor being certified, the students would not be eligible to receive credit for the honors course, so in essence they would be defrauded of their time and efforts, and some students might fail to graduate as a result of credit deficiency.  Moreover, because an uncertified teacher violates regulations, having such an  instructor could jeopardize the whole A.F.J.R.O.T.C. program at Valley High School.

Plaintiff's Response to Defendant Mayerstein's Motion for Summary Judgment on the Basis of Qualified Immunity, filed October 26, 2003 (Doc. 80), Exhibit 1, ¶ 15 at 6 (Trujillo's Affidavit dated October 26, 2003).  The Court will accept Trujillo's testimony regarding his motivations.  Trujillo certainly at one time thought his speech about Mayerstein's job duties and mistreatment of students were at least "part of a public employee's official duties. . . ."  Trujillo v. Bd. of Educ. Of the Albuquerque Pub. Schs., 2007 WL 80698, at *3.  Based upon Trujillo's sworn testimony, the Court concludes that the reason Trujillo spoke out against perceived student abuses and Mayerstein's lack of FAA certification to his supervisors was because he believed he had an official duty to do so as an APS AFJROTC instructor and that he was not engaging in speech as a concerned citizen.

New Mexico statutes and APS regulations confirm what Trujillo said in his earlier briefing and affidavit.  In his motion for summary judgment, Mayerstein attached copies of statutes in effect at the time APS employed Trujillo, which required all instructors to hold a valid teaching license or certificate.  See NMSA 1978, § 22-10-3 (2001 Repl. Pamp.).  The statutes, which are part of the School Personnel Act ("the Act"), see § 22-10-2, also required "certified school instructors" to "enforce all laws and regulations applicable to his public school."  NMSA § 22-10-5 (2001 Repl. Pamp.).  The purpose of the Act is "to protect the public against incompetent teachers and to ensure proper educational qualifications, 'personal fitness,' and a high standard of teaching performance."

N.M. State Bd. of Educ. v. Stoudt, 91 N.M. 183, 186, 571 P.2d 1186, 1189 (1977)(internal quotation marks and citations omitted)(discussing the prior codification of the Act).

Mayerstein also attached to his motion the New Mexico Code of Ethical Responsibility of the Education Profession, which the New Mexico Public Education Department promulgated.  The regulations require New Mexico educators to "deal justly and consistently with each student," forbid engaging in "abusive" conduct, require educators to "evaluate through professional procedures conditions existing in a district[,] . . . make known serious deficiencies, and take action deemed necessary and appropriate;" and require educators not to "permit or assist unqualified or unauthorized persons to engage in teaching or other employment within a school."   NMAC §§ 6.60.9.8(A)(1), 6.60.9.8(B)(4), 6.60.9.9(C)(2), 6.60.9.9(C)(5).  Failure to comply with these standards may result in revocation or suspension of an educator's license or certification to teach in the public schools.  See NMAC § 6.60.9.10.  These statutes and regulations confirm that merely certain instructors were qualified and that ensuring students were not mistreated was at least "part of a public employee's official duties. . . ."  Trujillo v. Bd. of Educ. Of the Albuquerque Pub. Schs., 2007 WL 80698, at *3.

In his response filed May 30, 2007, Trujillo argues that, although the APS Board of Education was his employer and he was subject to all its "personnel, rules, policies, and regulations," he actually had no duty to speak out about Mayerstein not being qualified to teach, because Trujillo was not a "licensed" teacher, and, therefore, he had no official duty to "enforce state laws against" the Defendants.[3]  Pro Se Plaintiff's Response to Defendant Mayerstein's Motion and Supporting

_____

[3] Trujillo's response otherwise focuses on his assertion that he had no official duty to speak out about Mayerstein's allegedly discriminatory treatment of Hispanic students, and he states that Mayerstein retaliated against him because Trujillo objected to Mayerstein's "racial treatment of Hispanic students."  Response at 4, 9-15.  Such a claim, however, is not part of Trujillo's original complaint or sworn testimony, and has not previously been raised before the Court except in Trujillo's motion to amend that was filed May 8, 2007.  Trujillo may not make it an issue at this

Memorandum of Law for Summary Judgment on Qualified Immunity and Other Grounds, Doc No. 303, at 4-5,19, filed May 30, 2007 (Doc. 330)("Plaintiff's Response"). The regulations provide, however, that these "standards of professional conduct establish minimal standards of acceptable professional conduct with which all educators and administrators are required to comply," including "any other person providing instructional services to a school who does not hold a standard license but whose presence is authorized by the [New Mexico Public Education Department]."  NMAC § 6.60.9.10.  The Court concludes that the regulations applied to Trujillo and that Trujillo had a duty to report Mayerstein when he believed Mayerstein was abusing students and when he discovered that Mayerstein was not qualified to teach the zero-hour course.  Under Garcetti v. Ceballos, therefore, the First Amendment does not protect Trujillo's speech on either issue.  See 124 S. Ct. at 160; Casey v. W. Las Vegas Indep. Sch. Dist. 473 F.3d at 1328 (holding that court must "ask whether [the public school employee] met h[is] burden by providing evidence that h[is] expressions were made in h[is] capacity as a citizen and not pursuant to h[is] 'official duties'")  Accordingly, Mayerstein and the other individual APS Defendants, including Griego,[4] are entitled to summary judgment on the issue of First-Amendment retaliation and the Court will not alter its previous ruling affirming summary

---

juncture.

[4]  The Court recently reinstated Trujillo's First-Amendment claim against Griego after concluding that it had erred in granting summary judgment in favor of Griego in 2004 on a different legal basis.  See Memorandum Opinion and Order at 24 & n.6, filed May 31, 2007.  At the pretrial conference held on May 31, 2007, counsel for Griego noted that, at the time Griego filed his summary-judgment motion in 2002, Garcetti v. Ceballos had not been issued, thus he did not rely on Garcetti v. Ceballos in his earlier motion.  Griego's counsel requested an opportunity to ensure that any ruling holding that Trujillo's speech was not protected would be likewise applicable to him, and the Court informed counsel that Griego could join in Mayerstein's motion, because the legal analysis is identical as to both Defendants.  See Memorandum Opinion and Order at 24 n.6 (acknowledging that an opinion addressing Mayerstein's legal arguments regarding Trujillo's First Amendment claim would apply to any defendant).

judgment in Mayerstein's favor on the issue of First-Amendment retaliation.

**IT IS ORDERED** that: (i) Plaintiff Transito Trujillo's Motion for Reconsideration of Defendant Mayerstein's Record of Counseling and Related Memoranda, filed September 16, 2005 (Doc. 209) is denied; (ii) Plaintiff's Motion for Order To Allow Further Briefing, filed November 18, 2005 (Doc. 231) is granted; (iii) Trujillo's request for an extension of time in which to depose Mayerstein before the Court rules on Mayerstein's motion for summary judgment is denied (Doc. 305), and (iv) Defendant Lt. Col. Mayerstein's Motion and Supporting Memorandum of Law for Summary Judgment on Qualified Immunity and Other Grounds, filed April 27, 2007 (Doc. 303) is granted.

**IT IS FURTHER ORDERED** that the September 2, 2005 Memorandum Opinion and Order withdrawing in part the March 30, 2005 summary judgment decision in favor of Mayerstein, acting in his individual capacity, on the First-Amendment retaliation claim (Doc. 197) is withdrawn; and the individual APS Defendants acting in their individual capacities are dismissed as defendants.

_____
UNITED STATES DISTRICT JUDGE

*Counsel and Parties*:

Transito Trujillo
Albuquerque, New Mexico

     *Pro Se Plaintiff*

Max J. Madrid
Alex C. Walker
Modrall, Sperling, Roehl, Harris & Sisk
Albuquerque, New Mexico

     *Attorneys for Defendants Board of Education,*
     *Albuquerque Public Schools; Joseph Vigil;*

*Susie Peck; Anthony Griego; Bruce Smith;*
*and Ronald Williams*

Sean Olivas
Keleher & McLeod
Albuquerque, New Mexico

*Attorney for Defendant Mark Mayerstein*