IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TRANSITO TRUJILLO,

      Plaintiff,

vs.                                                  No. CIV 02-1146 JB/ACT

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,
JOSEPH VIGIL and SUSIE PECK, Albuquerque
Public Schools Superintendents individually and
in their official capacities; ANTHONY GRIEGO,
Principal, Valley High School, individually and in
his official capacity; BRUCE SMITH, Valley High
School Assistant Principal, individually and in his
official capacity; RONALD WILLIAMS, Director
of Certified Staffing, Albuquerque Schools,
individually and in his official capacity; and MARK
MAYERSTEIN, Valley High School employee,
individually and in his official capacity,

      Defendants.

-- and –

TRANSITO TRUJILLO,

      Plaintiff,

vs.                                                  No. CIV 03-1185 JB/LFG

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS;
MARK MATERSTEIN, Senior ROTC
Instructor, and ANTHONY GRIEGO,
Valley High School Principal, in their
official and Individual capacities,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Pro Se Plaintiff's Objections to Defendant's Requested Voir Dire, filed June 19, 2007 (Doc. 368)("Objections"). The primary issue is whether the Court should sustain the objections that Plaintiff Transito Trujillo has entered to Defendant Albuquerque Public Schools' proposed voir dire questions to the jury venire. Because the Court does not believe that the questions Albuquerque Public Schools ("APS") proposes, if asked, would be unfairly prejudicial or misleading, and because all questions must be based on the probable evidence, the Court will overrule Trujillo's objections in part, but sustain some to prevent the asking of any questions that may be misleading or unfairly prejudicial.

## PROCEDURAL BACKGROUND

APS has given notice that it would like the Court to ask, or would like permission to ask, the following questions about witnesses and pre-trial publicity:

IV. **WITNESSES/PRE-TRIAL PUBLICITY:**

    A.    Testimony from or about the following witnesses may be presented during this trial. Do any of you know anything about the following people?

        a) Lourdes Trujillo – Plaintiff's wife
        b) Anthony Griego – VHS Principal
        c) Ronald Williams – Former APS HR employee
        d) John Miera – Current APS HR employee
        e) Samuel J. Barr – Air Force
        f) Richardson Crook – Plaintiff's former supervisor
        g) Michael Doyle – Air Force
        h) Max Hernandez, Jr. – community activist
            a.  Libertad
        i) Lanie Logan – Parent
        j) Barbara Lynn – Former APS EOS Director
        k) Susie Peck – APS administration
        l) Ben Santistevan – VHS assistant principal
        m) William Shields – Air Force
        n) Jo Alice Tally – Air Force

        o) William Barker – AFROTC instructor
        p) Chris L. Trujillo – Plaintiff's son
        q) Mike A. Trujillo – Plaintiff's son
        r) Michael J. Koller – Plaintiff's son
        s) Mario F. Trujillo – Plaintiff's son
        t) John Gowan – Plaintiff's friend
        u) James R. Morris – AFROTC substitute at VHS

B.    Anyone see or hear any of the media coverage about the problems with VHS's AFJROTC program in 2002?

    <u>- Anyone hear or see any coverage about when the Air Force came to Albuquerque to meet with the Plaintiff Trujillo and his supervisor about their conduct and its affect on VHS's AFJROTC program?</u>

## V. **DEFENDANT APS**

    A.    Anyone attend APS?

        1.    Anyone have family members who attended APS?
        2.    Anyone attend or have who attended Valley High School?
        3.    What about any of the elementary or middle schools in the Valley cluster (Elementary: Alameda, Alvarado, Cochiti, Duranes, Griegos, La Luz, MacArthur, Mission Avenue, Los Ranchos; Mid-School: Garfield, Taft)
        4.    For those of you who attended APS schools or have family members who did, was there anything about that experience that would tend to make you tend to believe Mr. Trujillo as opposed to APS?
        5.    Have you heard anything in the media, news or otherwise that has caused you to form strong feelings about APS, good or bad, which would prevent you from being fair to either side in this case?
        6.    Is there anyone who deliberately avoids sending their children to APS for any reason?
        7.    Does anyone have any philosophical or moral objection to the way APS conducts its business?

  B. Do any of you currently work, or have any of you worked for APS?

  C. Anyone know Toby Herrera, who was the principal at VHS before Anthony Griego?

  D. General feelings about APS

    1. Does anyone know anything about APS' budget?

    2. Does anyone know how much APS spends in the classroom or on building factilities?
      a. Does anyone think APS spends too much money in the classroom or on facilities?

    3. Does anyone have a favorable or unfavorable impression about the way APS handles termination of its administrators and teachers?

    4. <u>Do you have any feelings about former APS employees suing APS for thousands of dollars after they have been terminated?</u>
      a. <u>Do you think APS should have to pay thousands of dollars when it terminates an employee?</u>
      b. <u>Does anyone feel that because APS has chosen to defend itself rather than settle that you should hold that against APS or that you should award more than you would otherwise?</u>
      c. Does anyone think it's wrong for APS to stand up to some of its former employees, ask a jury to consider all the evidence and listen to both sides of the story <u>rather than just paying the thousands of taxpayer dollars that are being demanded?</u>

    5. Does anyone here think that APS mismanages its schools?

      a.    Anyone think that APS' superintendents don't know what they're doing?
          1.    School board?
      b.    Understand that there's a difference between APS central office and the administration at Valley High School?
          1.    Anyone familar with APS' policy of "site based management?
      c.    Anyone familiar with the grade change controversy at Rio Grande HS?
          1.    When you heard about it, did you think it was wrong for APS central office to change what the school principal and teacher had done in terms of student grades?

          2.    <u>If you hear evidence offered in this case that recommendations by Anthony Griego, the VHS principal were overturned by APS central office, would that bother</u>

you?

6. Do any of you have any negative beliefs or impressions regarding APS?
   a. What about the fact that APS offers Air Force Junior ROTC program at Valley High School?

## VI. **LAWSUITS:**

A. Does anyone feel that there are too many lawsuits these days?
   1. Think that some people are too quick to sue?

B. Have any of you been a party to a lawsuit?

   1. If so, was there anything about that experience that would make it difficult for you to be fair in this case?

C. Have you, any of your close friends or members of your immediate family ever been a party to a lawsuit involving allegations of discrimination, harassment or retaliation?
   (1) What kind of case?
   (2) What was the result?
   (3) Do you have opinions as to what should have happened in that case?

D. Any connection at all with any case alleging discrimination, harassment or retaliation?
   (1) What kind of case?
   (2) What was the result?
   (3) Do you have opinions as to what should have happened in that case?

## VII. **EMPLOYMENT/SUPERVISION ISSUES:**

A. Has anyone here ever supervised or managed employees?

B. Think it's okay to undermine your supervisor by going behind his/her back?

C. Anyone here think it's appropriate for an educator to involve students and their parents in a dispute with a supervisor?
   1. Anyone think it's wrong for APS to direct its

<u>employees not to incite or involve students and parents in a dispute with another staff member?</u>

D. Anyone here ever been a member of any police, military or other paramilitary style organizations?
1. Any knowledge about the importance of the chain of command?
2. Any experience having to follow a chain of command?
   i. Anyone work in a situation or have experience with a detailed chain of command where adherence to the chain of command is essential to the proper functioning of the organization?
   ii. Anyone have any familiarity with military schools like NMMI?
   iii. What about JROTC programs within public schools?
      a. Know who is qualified to instruct those programs?
      b. Know what's involved in obtaining certification from military?
      c. <u>In this case, both Plaintiff and his supervisor, Lt. Col. Mark Mayerstein, were decertified by the Air Force. Does anyone have any knowledge about how the Air Force</u>

        <u>makes its certification and decertification decisions regarding AFJROTC instructors?</u>

    3. Does anyone have any thoughts on whether a person working under a military chain of command should follow the chain of command?
        i. Anyone think that chain of command can just be ignored?

E. Has anyone here ever had an unpleasant working relationship with a co-worker?

F. Does anyone have make personnel decisions as part of their job?

G. Have any of you ever worked for a state entity?

H. Have any of you had a communication breakdown with an employer that caused you to leave your employment?

I. <u>Have any of you worked in a workplace where employees acted like children instead of professionals?</u>

J. <u>Have any of you been in a workplace where people played the "blame game"</u>

K. <u>Have any of you worked with a co-worker who didn't carry his or her won weight?</u>

L. Have any of you worked in a workplace where employees had loud disagreements or arguments?

    1. What about children? Anyone with children who've been in an argument or fight?
    2. Children ever try to avoid discipline by claiming the other one started it?
    3. Are there times when you're unable to tell who started it?

        4.      As a parent, did you discipline both children based on the inappropriate conduct, regardless of who actually started it?

M. <u>Anyone here familiar wit or know somebody who engages in reverse racism for instance, a Hispanic that treats Anglos differently than they would treat another Hispanic person?</u>
    1.    Anyone ever seen this happen?

N. Has anyone here ever believed an employer discriminated or retaliated against them?

O. Has anyone here ever had a close friend or family member who believed he or she was discriminated or retaliated against?

P. Has anyone here ever been accused of discrimination or retaliation?

Q. Has anyone here ever had a close friend or family member who was accused of discrimination or retaliation?

R. Has anyone here been fired?

## VII. **GENERAL BIAS:**

A. <u>Does anybody think that just because a Plaintiff has filed a lawsuit, that means she should recover something from her employer?</u>

B. <u>Does the fact that Mr. Trujillo has chosen to sue his former employer even make you suspect a little bit that someone must have done something wrong?</u>

C. The judge will instruct you at the end of the trial about the burden of proof. Do any of you have any difficulty with the concept that Plaintiff must prove his claim that he was retaliated against in order to recover?

D. <u>Would any of you feel that your time would be wasted if the jury does not award some money to Mr. Trujillo?</u>

E. Do any of you feel that if an employee says he has been retaliated against in his employment, he is probably right?

F. Do any of you who have heard the description of the case automatically feel sympathy for Mr. Trujillo and believe that he should succeed in his lawsuit?

G. Have there been times when you've had to make decisions that you knew would disappoint someone?
    a. How did you handle those situations?
    b. In this case, APS is going to ask you to make a decision that will disappoint Mr. Trujillo. Would you have any hesitation in returning a verdict for APS when it results in disappointing Mr. Trujillo?
    c. Could you have sympathy for Mr. Trujillo and still understand that APS didn't do anything wrong legally?

H. <u>Mr. Trujillo's wife has also filed a lawsuit against APS. Does that fact make any of you tend to side with Mr. Trujillo?</u>
    a. <u>Do any of you tend to feel that since both Mr. and Mrs. Trujillo have filed lawsuits that APS must have done something wrong?</u>

I. <u>Would you have any reservations in awarding no money damages?</u>
    a. <u>What if everyone else on the jury wanted to award something?</u>
    - <u>Would you have any difficulty sticking with your decision that no money damages should be awarded?</u>

J. Is there any other information you think would be important for the lawyers and the Court to know?

Defendant's Requested Voir Dire at 2-7, filed June 15, 2007 (Doc. 350).

The underlined material is that to which Trujillo objects as prejudicial, misleading, and not based on evidence. <u>See</u> Objections at 2, 3-8. APS has not responded to Trujillo's objections.

## **RULE 47**

Rule 47(a) of the Federal Rules of Civil Procedure provides:

The court may permit the parties or their attorneys to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event, the court

> shall permit the parties or their attorneys to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions of the parties or their attorneys as it deems proper.

Fed. R. Civ. P. 47(a). With regard to examining prospective jurors, in United States v. Shelton, 736 F.2d 1397 (10th Cir. 1984), the United States Court of Appeals for the Tenth Circuit stated:

> The function of voir dire is to lay the predicate for both the judge's and counsel's judgment about the qualifications and impartiality of potential jurors. Without an adequate foundation, counsel cannot exercise sensitive and intelligent peremptory challenges, that suitable and necessary means of ensuring that juries be in fact and in the opinion of the parties fair and impartial. When the trial court undertakes the examination of potential jurors, it has a duty to consider the perspective of informed counsel, as well as its own, in determining what questions will tend to reveal possible juror prejudice.

Id. at 1408. "The scope and extent of voir dire is left to the sound discretion of the district court." Smith v. Vicorp, Inc., 107 F.3d 816, 817 (10th Cir. 1997).

## **ANALYSIS**

Trujillo contends that the Court should not allow APS to ask the questions he has underlined, because they are prejudicial, misleading, and/or not based on evidence. See Objections at 2. The Court has carefully reviewed APS' proposed voir dire. For all of APS' proposed questions, the Court will require APS to have a good-faith factual basis for each question. If APS is to ask certain of its proposed questions, the Court will require APS to show a good-faith factual basis for doing so. The Court finds, however, that most of APS' proposed questions are neither unfairly prejudicial or misleading. Moreover, because the parties indicated at the pre-trial conference how much time they anticipated needing for voir dire, and because the Court intends to limit voir dire to those time frames, the Court will expect APS to choose its areas of questioning carefully so that it does not waste the jurors' or its time.

## I.     TRUJILLO'S OBJECTIONS RE: IV.  WITNESSES/PRE-TRIAL PUBLICITY.

Trujillo objects that APS' naming of Air Force witnesses, who cannot testify unless they are subpoenaed and the Air Force General Counsel grants them permission to do so, is a ploy to influence the jury negatively.  See Objections at 3.  APS' question is, however, worded more carefully than Trujillo's objection takes into account.  APS' question indicates that there may be testimony "from or about" these individuals.  Trujillo does not dispute that there may be testimony about these individuals.  Accordingly, the Court will overrule Trujillo's objection in part.

The Court will, however, also sustain the objection in part.  First, the Court cautions APS that it should not refer to Air Force personnel as witnesses in this trial, unless they have a good-faith belief that they will appear and that the Air Force will allow them to testify.  Moreover, to prevent any confusion, APS should restate its introduction sentence to read: "Testimony from or about the following witnesses or people may be presented during this trial."  Finally, the Court cautions that APS must have a good-faith basis for believing that a person will be mentioned in the trial or will be a witness at the trial before listing them in this question.

The Court will address similarly Trujillo's objection to APS' naming of Trujillo's sons.  Trujillo contends that his sons have not been subpoenaed and that APS is listing them in an effort to cast him in a negative light.  See id.  The Court's above changes and instructions address most of Trujillo's concerns about his sons.  Unlike, however, the Air Force personnel, many with whom the Court is familiar from prior briefing, the Court is not aware of the involvement of Trujillo's sons.  Before APS asks any questions about Trujillo's sons, it should approach the bench and explain the good-faith basis it has for asking the questions about the sons that it proposes.

Finally, Trujillo objects to the portion of Part B that asks if anyone heard or saw any coverage when the Air Force came to Albuquerque to meet with Trujillo and his supervisors about

their conduct, and its affect on Valley High School's Air Force Junior Reserve Officer Training Corps program. Trujillo contends that this question is misleading and prejudicial, because it implies facts that are not in evidence and that are not true. See id. If the coverage to which APS' proposed questioning relates was not about the visit, the Court agrees. Unless APS can show that the coverage was about the Air Force visit, it should not ask the question as presently worded. APS may certainly ask about pre-trial publicity, but if it is referring to coverage, it should accurately describe the relevant coverage.

## II.     **TRUJILLO'S OBJECTIONS TO PART V.  DEFENDANT APS.**

Trujillo contends that certain portions of this material is misleading, prejudicial, and suggests evidence not proven. See id. First, Trujillo objects to the four questions about suits by former employees: (i) "Do you have any feelings about former APS employees suing APS for thousands of dollars after they have been terminated?" (ii) "Do you think APS should have to pay thousands of dollars when it terminates an employee?" (iii) "Does anyone feel that because APS has chosen to defend itself rather than settle that you should hold that against APS or that you should award more than you would otherwise?" and (iv) "Does anyone think it is wrong for APS to stand up to some of its former employees rather than just paying the thousands of taxpayer dollars that are being demanded?" Id. at 4. APS does not have to prove that APS employees have sued it for thousands of dollars in these proceedings, but if they have had current or former employees sue them for thousands of dollars, and if it has taken any of the cases involving such employees to a jury trial -- both of which are likely -- then APS has a good-faith basis to ask these questions. APS must have a good-faith basis for each question, but assuming that it does, the Court does not believe that there is anything misleading about the questions. No question is going to contain all the facts, but these questions seek to root out important biases that may exist. Moreover, these questions are not

unfairly prejudicial. While many questions at this stage of proceedings will be normative and will be prejudicial, at trial, that is the nature of the process. The Court's task is to prevent unfair prejudice, and because these questions go to legitimate concerns and are not unfair, the Court will overrule the objection to them, provided APS has a good-faith factual basis for them, as the Court assumes it does.

Trujillo also objects to APS asking the prospective jurors whether, if they hear evidence offered in this case that the APS central office overturned Anthony Griego's recommendations, that would bother them. See id. at 3-4. The Court does not know the evidence well enough to know whether there is competent, admissible evidence that supports APS' assertion, but assuming that APS has a good-faith, factual basis for the question, APS may ask the question. APS must word the question to conform precisely to the anticipated evidence so that it is not misleading. Moreover, given the recent grade change controversy at APS, the question is not unfairly prejudicial; it seeks to root out the prospective jurors' views about APS' central office -- a legitimate concern.

Trujillo contends that the rest of APS' questions are unnecessarily lengthy, and will bore and distract the jury. See id. at 3. The Court tends to agree that, if all the questions are asked, such voir dire will be too much. APS indicated at the pretrial conference that it expected its portion of voir dire to last approximately fifteen minutes. See Clerk's Minutes at 2, filed June 5, 2007 (Doc. 335). The Court does not intend to ask most of the questions that APS has listed in its voir dire, so APS will need to select its questions with the time limitation in mind. It is very likely that the time limitation, which the Court will require both parties to observe, will take care of the length of questioning. Rather than the Court choosing which questions most need to be asked, the Court will leave that to the professional judgment of APS' attorneys, and their shared desire not to distract or bore the jurors.

**III.   TRUJILLO'S OBJECTIONS TO PART VI.  LAWSUITS.**

Trujillo has underlined one question that he believes is prejudicial because it implies that his suit is frivolous: "Does anyone feel that there are too many lawsuits these days?" Id. at 5. Trujillo is correct that the question implies that his suit is frivolous and that the question is therefore prejudicial, but the Court does not believe that this question is unfairly prejudicial. At this stage, many questions will be prejudicial, and APS does not think that Trujillo's case has a sound basis, but APS is entitled to ask about jurors' views concerning litigation. The question legitimately seeks information that goes to bias and prejudice. Indeed, plaintiffs often ask this question to root out jurors who think all litigation is frivolous. The Court will overrule the objection.

**IV.   TRUJILLO'S OBJECTIONS TO PART VII: EMPLOYMENT/SUPERVISION ISSUES.**

Trujillo objects to two questions that suggest he involved students in his dispute with APS: (i) "Anyone here think it's appropriate for an educator to involve students and their parents in a dispute with a supervisor?" and (ii) "Anyone think it's wrong for APS to direct its employees not to incite or involve students and parents in a dispute with another staff member?" Id. at 6. Trujillo contends that these two questions are misleading, present information as truth, and imply that he used students in a dispute with supervisors or that he incited parents to complain. See id. at 5. If APS has a good-faith factual basis for suggesting that the scenarios occurred in this case, the questions are not misleading. At this stage, APS does not have to prove that the implied allegations are true, but only that it has a good-faith belief that they are true and some admissible evidence to support the belief. Provided that APS has a good-faith factual basis for believing that the implied assertions occurred in this case, the Court will overrule the objection to these two questions.

Trujillo also objects to APS' statement and question that, in this case, the Air Force

decertified both he and Mayerstein, and whether anyone has any knowledge about how the Air Force makes its certification and decertification decisions regarding AFJROTC instructors? See id. at 6. Other questions to which he objects are more general: (i) "Have any of you worked in a workplace where employees acted like children instead of professionals?" (ii) "Have any of you been in a workplace where people played the 'blame game'"? and (iii) "Have any of you worked with a co-worker who didn't carry his or her own weight?" Id. Trujillo asserts that questions about how the Air Force decertified him is a central issue and that these questions imply that he did something wrong. Trujillo argues that APS and its agents provided negative false information to the Air Force, which caused him to be decertified. See id. at 5. Trujillo contends that most of the damaging negative and false referrals that APS and Griego sent were done so without his knowledge, and in violation of his due rights. See id.

      Trujillo is correct that questions about how the Air Force came to decertify him may be an important issue in this trial and that these questions imply that he did something wrong. Because it is APS' theory that Trujillo did wrong things, however, the implication is not improper. It may be that Trujillo will be able to prove, at trial, that APS and its agents provided negative false information to the Air Force, which caused his decertification, but APS will most likely be trying to establish that it was Trujillo's conduct that brought about the decertification. The jury will need to resolve this dispute. At this stage, it is not improper for APS, as it asks legitimate questions, to imply their case, as long as they are primarily seeking the views of the prospective jurors.

      Finally, Trujillo objects to the proposed question asking whether potential jurors are familiar with or knows somebody who engages in reverse racism; for instance, a Hispanic that treats Anglos differently than they would treat another Hispanic person. See id. at 6. Trujillo contends that these questions improperly imply that he engaged in reverse discrimination. See id. at 5. Again, if APS

has a good-faith factual basis for this theory, and admissible evidence to prove such an allegation, it may ask this question. Because Mayerstein is Anglo and Trujillo is Hispanic, the Court cannot say that APS' theory is irrelevant or implausible. Accordingly, the Court will overrule this objection.

## V.     **TRUJILLO'S OBJECTIONS TO PART VII.  GENERAL BIAS**.

Trujillo objects to several questions that suggest he may be in this case for the money: (i) "Does anybody think that just because a Plaintiff has filed a lawsuit, that means she should recover something from her former employer?" (ii) "Does the fact that Mr. Trujillo has chosen to sue his former employer even make you suspect a little bit that someone must have done something wrong?" (iii) "Would any of you feel that your time would be wasted if the jury does not award some money to Mr. Trujillo?" (iv) "Mr. Trujillo's wife has also filed a lawsuit against APS; does that fact make any of you tend to side with Mr. Trujillo?" (v) "Do any of you tend to feel that since both Mr. and Mrs. Trujillo have filed lawsuits that APS must have done something wrong?" (vi) "Would you have any reservations in awarding no money damages?" (vii) "What if everyone else on the jury wanted to award something?" and (viii) "Would you have any difficulty sticking with your decision that no money damages should be awarded?" Id. at 7-8. Trujillo argues that these questions are prejudicial. See id. at 7. He contends that they improperly imply that he and his wife are money hungry and that their suits are frivolous. See id.

These questions are proper. While they are prejudicial to Trujillo, they are not unfairly so. APS gets the opportunity to explore whether the jurors are likely to award damages so that it can make an informed decision about how to exercise its for-cause and peremptory challenges.

Trujillo contends that the rest of the questions are improper, because the Defendants are attempting to play the role of the Court, who will give preliminary instructions to the jury. See id.

-17-

at 7. APS has the right, however, to explore whether the prospective jurors will follow the Court's instructions. Also, the Court does not see anything in the questions that unreasonably misstates the law. Finally, the Court will, at the end of the case, and elsewhere if appropriate, remind the jurors that it is the Court's instructions, not the lawyers' arguments about the law, that they must apply. Accordingly, the Court will overrule Trujillo's objections.

**IT IS ORDERED** that the Pro Se Plaintiff's Objections to Defendant's Requested Voir Dire is sustained in part and overruled in part as outlined in this opinion and order.

_____
UNITED STATES DISTRICT JUDGE

*Parties and Counsel*:

Transito Trujillo
Albuquerque, New Mexico

    *Pro Se Plaintiff*

Max J. Madrid
Alex C. Walker
Modrall, Sperling, Roehl, Harris & Sisk
Albuquerque, New Mexico

    *Attorneys for Defendants Board of Education,*
    *Albuquerque Public Schools; Joseph Vigil;*
    *Susie Peck; Anthony Griego; Bruce Smith;*
    *and Ronald Williams*

Sean Olivas
Kelleher & McLeod PA
Albuquerque, New Mexico

    *Attorneys for Defendant Mark Mayerstein*