**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

TRANSITO TRUJILLO,

    Plaintiff,

vs.                                                                                                  No. CIV 02-1146 JB/LFG

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,

    Defendant.

and

TRANSITO TRUJILLO,

    Plaintiff,

vs.                                                                                                  No. CIV 03-1185 JB/LFG

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on: (i) Plaintiff Transito Trujillo's Pro Se Motion and Brief For Court Order Overturing [sic] the Jury Verdict and Granting a New Trial, filed July 2, 2007 (Doc. 419)("Motion for New Trial"); (ii) Trujillo's Pro Se Motion for Withdrawl [sic] of the Court's Premature Final Judgment Orders at Doc. No. 418 in 02cv1146, filed July 2, 2007 (Doc. 420)("Motion for Withdrawal"); and Trujillo's Pro Se Motion for Recusal of Presiding Judge Based on Bias, filed August 1, 2007 (Doc. 472)("Motion for Recusal").[1] The primary issues are: (i)

---

[1] In the past, Trujillo has not wanted hearings on his motions, preferring to stand on his written submissions. K'Aun Sanchez, the Court's Courtroom Deputy Clerk, contacted Trujillo after

whether the Court should recuse itself from ruling on Trujillo's post-trial motions; (ii) whether entry of final judgment was premature; and (iii) whether the Court should grant a new trial.  Having considered the parties' arguments, the record, and the controlling law, the Court will deny the motions.

**FACTUAL BACKGROUND**

Trujillo represented himself in a four-day jury trial against Defendant Albuquerque Public Schools ("APS") on Trujillo's Title VII claims for unlawful retaliation.  Before the trial began, and again during each day of trial, the Court gave the parties a copy of its proposed jury instructions that were modified as additional evidence was presented, and that incorporated many portions of Trujillo's proposed instructions.  See Court's First Proposed Preliminary Jury Instructions, filed June 22, 2007 (Doc. 382); Court's Second Proposed Preliminary Jury Instructions, filed June 25, 2007 (Doc. 390); Court's Third Proposed Preliminary Jury Instructions, filed June 26, 2007 (Doc. 405); Final Preliminary Jury Instructions (Given), filed June 27, 2007 (Doc. 409); Court's First Proposed Set of Jury Instructions, filed June 27, 2007 (Docs. 435 & 436 ); Court's Second Proposed Set of Jury Instructions, filed June 28, 2007 (Doc. 437 ); Court's Third Proposed Set of Jury Instructions, filed June 28, 2007 (Doc. 439); Court's Fourth Proposed Set of Jury Instructions, filed June 29, 2007 (Doc. 440);  Court's Fifth Proposed Set of Jury Instructions, filed June 29, 2007 (Doc. 441); Court's Final Jury Instructions (Given), filed June 29, 2007 (Doc. 442); cf. Pro Se Plaintiff's Preliminary Instructions, filed June 18, 2007 (Doc. 358). The Court held hearings during breaks and at the end of each day, and specifically asked for each parties' objections to and comments on the

---

the trial to see if, given his experience in the courtroom during the four-day trial, he felt comfortable about the Court scheduling a hearing on his post-trial motions.  Trujillo declined a hearing, stating that he preferred to rely upon his written product.

2

jury instructions. Although he had submitted proposed preliminary instructions, see id., and made a general pre-trial objection to APS' preliminary instructions, see Pro Se Objections to Defendants Proposed Instructions, filed June 18, 2007 (Doc. 360), Trujillo did not object to or comment on the Court's proposed jury instructions or modifications before the Court read the final version to the jury, see Clerk's Minutes, filed July 10, 2007 (Doc. 431) at 2, 6, 11, 15, 18-19, 20.[2]

---

[2] The Court painstakingly reviewed the instructions with the parties each day of trial. For example, on the second day of trial, the Court fully reviewed the Court's proposed instructions with the parties and asked for objections:

> THE COURT: All right. Let's then discuss a few things on the jury instructions. Do you have a copy of the one that we just passed out?
> MR. MADRID: [Yes], Your Honor.
> THE COURT: And you have it, Mr. Trujillo?
> MR. TRUJILLO: I'm sorry Your Honor.
> THE COURT: The jury instructions that Ms. Sanchez gave you.
> MR. TRUJILLO: Yes. I'm okay with them.
> THE COURT: All right. I want go over a few things. . . . This morning I gave you a rough copy. This is a typed-up copy. There should be no changes but I haven't [proofed] it so I'll proof it tonight. . . . I'm just going to go through these at the beginning here and go on through . . . if you [don't] have an objection, but if you do have an objection or suggestion or comment, give it to me and I'll think about it overnight. . . . [The Court quickly reviews instructions 1-10]. Instruction number 11 is the guts, the elements of the complaint, and I asked this morning whether this was a mixed-motive case because I kind of got some signals in from both of you in your jury instructions that it might be. In your mind, Mr. Trujillo, do you consider this to be a mixed motive case?
> MR. TRUJILLO: Your Honor I'm not familiar with the definition of that. Could you clarify it for me?
> THE COURT: Well [] you would have to prove it's one of the motivating factors but then the defendants get to come in and prove they would have fired you anyway or taken the adverse action. So it's a lower standard for you but then they have an [affirmative] defense. . . . Even if you prove all of the elements then you don't win but it's a lower third element. You just have to prove that it's a motivating factor, not the causal connection between the adverse employment action and the harm. How about APS? Do y'all consider this a mixed [motive]?
> MR. WALKER: Based on the evidence that's been presented so far we do not.
> THE COURT: Do not and you don't anticipate to.
> MR. WALKER: We're not going to change it into that.
> THE COURT: For the present time I'm just going to leave it as a straightforward

> Title VII retaliation case and not do mixed motive.  If you want to do some research and think about that.  For the present time I think my instruction is pretty close to what everybody submitted; it's what we told them in the preliminary instruction and it's not a mixed motive. . . .  [The Court goes through the remaining instructions.]  Anything else y'all would like for me to think about on these jury instructions?  Anything that's not in here that you want me to think about?  Anything that is in here, Mr. Trujillo?
> MR. TRUJILLO:  No, Your Honor.

Transcript of Trial at 292:12-298:1 (taken June 27, 2007)("Trial Transcript")(The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.)

On the third day of trial, the Court again reviewed each of its proposed jury instructions and asked for objections as follows:

> THE COURT:  All right.  Let's take a quick look at these jury instructions.  I think I gave you a set earlier that showed the changes that I had made last night and so a lot of these are not going to be changed.  I will point out to you the ones that I think I have changed during the day.  Obviously I've been with y'all so I haven't had a chance to pro[of them], but I'm just going to go through these real quickly.  If you have an objection or suggestion or change, note them for me.  And if I don't hear one, I'll just keep moving. . . .  [The Court notes instructions with small changes].  Number 14, excuse me, instruction number 11 on page 14, this is new.  This comes out of Mr. Trujillo's instruction.  I changed a little bit of the language so it's materially adverse action, using that language.  Number 12.  That's an agent instruction.  Number 13. . . .  I think this is the one that APS gave this morning and I think it's proper.  14 - that's the limiting instruction I gave earlier, so it's just put into the final instruction.  15 was in there yesterday. . . .  Now, 18, I went back to another retaliation case.  I think I need to be real clear here on this back pay. . . [Court discusses instruction 18 at length.]  I think the rest of the instructions were basically the same as last night.  Again, let me make a little bit of a record here on [why the Court is rejecting APS'] Ellerth/Faragher defense. . . .  [The Court gives a detailed explanation why the instruction will not be included].  All right.  So I'm leaving that instruction out for the present time.  Mr. Trujillo, any objections, suggestions, comments on the instructions you want to make tonight?  Do you want me to think about overnight?
> MR. TRUJILLO:  No, Your Honor.

Trial Transcript at 307:10-312:13 (taken June 28, 2007).

On the last day of trial, after the parties had another opportunity overnight to review the final proposed jury instructions, the Court had the following conversation with the parties:

> THE COURT: Mr. Trujillo, any comments, suggestions, or objections you need to make to the jury instructions?
> MR. TRUJILLO: No, sir not at this time. To be honest with you I hardly had any time to look at it.
> THE COURT: Well if you have any as we go through, let me know.
> MR. TRUJILLO: All right sir.

Trial Transcript at 4:15-22 (taken June 29, 2007).

At the end of testimony on the fourth day of trial, the Court again gave the parties an opportunity to object to the final instructions:

> THE COURT: Yes. What is is is going to take place now, is when the jury comes back I'll ask Mr. Walker and Mr. Madrid if they have any witnesses or evidence, and they will indicate that they do not, and then so I will read the jury instructions to the jury. . . . But this will be the time for me to take any final comments or suggestions or objections to the jury instructions. Mr. Trujillo, do you have any?
> MR. TRUJILLO: I have not had a chance to look at it, Your Honor.
> THE COURT: All right. . . .
>
> * * * *
>
> THE COURT: Well, I will bring the jury back in. After I give the jury instructions, I'll bring Mr. Trujillo and the lawyers up to the bench and see if there's any other instructions or objections other than what's already been made that need to be made.
> MR. TRUJILLO: No, Your Honor.

Trial Transcript at 90:11-91:8 (taken June 29, 2007).

> THE COURT: . . . All right. Let me see Mr. Trujillo and counsel up here at the bench.
> (Bench conference on the record.)
> THE COURT: I notice I had one typo here . . . and I was going to change that. . . . Is that accept[able]?
> MR. TRUJILLO: Yes.
>
> * * * *
>
> THE COURT: One more I had back re. . . . Is that change acceptable?
> MR. WALKER: That's fine with us.
> THE COURT: I'll make those changes. Those will be the ones that go to the jury. Any objection to the change or any additional changes other than what we've already discussed []?

5

In fact, Trujillo specifically stated that he "was okay with" the Court's proposed instructions after the second day of trial.  See Trial Transcript at 292:20 (taken June 27, 2007).  Because Trujillo was appearing pro se, the Court, as part of its duty to instruct the jury properly, refused some of APS' proposed instructions even though Trujillo did not specifically object to them.  See Trial Transcript at 311:1-313-25 (taken June 28, 2007).  Also, because Trujillo was proceeding pro se, the Court added some instructions that Trujillo had not requested to protect his interests.  See, e.g., Court's Final Jury Instructions (Given) No. 12, filed June 29, 2007 (Doc. 442)(instructing jury on APS' liability for the actions of its supervisors).

The jury returned a verdict in favor of APS, specifically concluding that Trujillo did not prove that APS retaliated against him for engaging in activity that Title VII protects.  See Redacted Special Verdict Form, signed June 29, 2007 and entered July 11, 2007 (Doc. 445).  The Court entered a final judgment on June 30, 2007.  See Judgment, filed June 30, 2007 (Doc. 418).

## LAW GOVERNING MOTIONS FOR NEW TRIAL

Rule 59 of the Federal Rules of Civil Procedure establishes the procedures for seeking a new trial, and for the alteration or amendment of a judgment.  See Fed. R. Civ. P. 59.  Where there has been a trial by jury, a district court may grant a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  Fed. R. Civ. P. 59(a).

"Motions for a new trial are generally committed to the discretion of the district court," McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984), with the trial court having

---

      MR. TRUJILLO:  No, Your Honor.

Trial Transcript at 102:20-103:12 (taken June 29, 2007).

"the obligation or duty to ensure that justice is done, and, when justice so requires, [having] the authority to set aside the jury's verdict . . . [if the Court] believes the verdict to be against the weight of the evidence or when prejudicial error has entered the record," McHargue v. Stokes Div. of Penwalt Corp., 912 F.2d 394, 395 (10th Cir. 1990). "A motion for a new trial is not regarded with favor and should only be granted with great caution." Franklin v. Thompson, 981 F.2d 1168, 1171 (10th Cir. 1992)(internal quotations omitted).

In McDonough Power Equipment, Inc. v. Greenwood, the Supreme Court of the United States explained some of the reasons why courts are reluctant to set aside jury verdicts:

> This Court has long held that [a litigant] is entitled to a fair trial but not a perfect one, for there are no perfect trials. Trials are costly, not only for the parties, but also for the jurors performing their civic duty and for society which pays the judges and support personnel who manage the trials. It seems doubtful that our judicial system would have the resources to provide litigants with perfect trials, were they possible, and still keep abreast of its constantly increasing case load.
>
> * * * *
>
> We have also come a long way from the time when all trial error was presumed prejudicial. . . . The harmless error rules adopted by this Court and Congress embody the principle that courts should exercise judgment in preference to the automatic reversal for "error" and ignore errors that do not affect the essential fairness of the trial.

McDonough Power Equip., Inc. v. Greenwood, 464 U.S. at 553 (internal quotations and citations omitted). The Supreme Court concluded its discussion of setting aside jury verdicts in McDonough Power Equip., Inc. v. Greenwood with the fundamental proposition that rule 61 of the Federal Rules of Civil Procedure sets forth:[3] "'The court at every stage of the proceeding must disregard any error

---

[3] Rule 61 provides:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating,

or defect in the proceeding which does not affect the substantial rights of the parties.'" Id. (quoting Fed. R. Civ. P. 61)(emphasis in original).

Because Trujillo's motion for a new trial is primarily based on alleged error in giving jury instructions, the Court must also consider rule 51 of the Federal Rules of Civil Procedure, which provides that, "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Fed. R. Civ. P. 51. "[A] general objection that does not inform the court of the party's grounds for disagreement will not suffice, nor may a party satisfy the requirements for Rule 51 by merely submitting to the court a proposed instruction that differs from the instruction ultimately given to the jury." Giron v. Corr. Corp. of Am., 191 F.3d 1281, 1289 (10th Cir. 1999)(internal quotations omitted). "Rule 51 requires a party to distinctly state the matter to which [he] objects and the grounds for [his] objection before the jury retires." Id. at 1288-89; Abuan v. Level 3 Commc'ns, Inc., 353 F.3d 1158, 1172 (10th Cir. 2003)(accord).

## **LAW REGARDING RECUSAL**

"Normally, a party alleging judicial bias should move for recusal, and must do so in a timely fashion." United States v. Nickl, 427 F.3d 1286, 1297 (10th Cir. 2005). Under 28 U.S.C. § 455,

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:

---

modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Fed. R. Civ. P. 61.

> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. . . .

Determining whether a judge's "impartiality might reasonably be questioned" under § 455(a) is an objective test, based on the judge's "outward manifestations and reasonable inferences drawn therefrom," rather than on the judge's actual state of mind. Nichols v. Alley, 71 F.3d 347, 351 (10th Cir. 1995). The test is "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." Id. (internal quotations omitted). A "nonexhaustive list of various matters not ordinarily sufficient to require § 455(a) recusal" includes:

> (1) Rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters; (2) the mere fact that a judge has previously expressed an opinion on a point of law or has expressed a dedication to upholding the law or a determination to impose severe punishment within the limits of the law upon those found guilty of a particular offense; (3) prior rulings in the proceeding, or another proceeding, solely because they were adverse; (4) mere familiarity with the defendant(s), or the type of charge, or kind of defense presented; (5) baseless personal attacks on or suits against the judge by a party; (6) reporters' personal opinions or characterizations appearing in the media, media notoriety, and reports in the media purporting to be factual, such as quotes attributed to the judge or others, but which are in fact false or materially inaccurate or misleading; and (7) threats or other attempts to intimidate the judge.

Id. (internal quotations omitted). Judges are not required to recuse when they have merely a casual relationship with a victim, attorney, witness, or litigant appearing before the court; occupying the bench does not require withdrawal from society. See, e.g., Sexson v. Servaas, 830 F. Supp. 475, 482 (S. D. Ind. 1993)("Merely knowing other persons, including the politically powerful, and being associated with them can take place in many ways, and that alone creates neither an impropriety nor an appearance of partiality. Indeed, aside from relegating judges to an existence akin to that of a monk, they are unavoidable."); United States v. Kehlbeck, 766 F. Supp. 707, 711 (S. D. Ind. 1990) (citing cases for the proposition that, "[r]arely does a judge's mere acquaintance with a party or

witness justify recusal). A judge may therefore sit on a case despite a casual friendship with one of the parties. See Sewer Alert Comm. v. Pierce Cty., 791 F.2d 796, 798 (9th Cir. 1986). Recusal is required, of course, where that level of personal relationship is of an extent that a reasonable person would question the judge's impartiality. See § 455(a). If the issue whether § 455(a) requires recusal is a close one, the judge must recuse. See Nichols v. Alley, 71 F.3d at 352.

The United States Court of Appeals for the Tenth Circuit has also emphasized, however, that a judge has "as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." Id. at 351. Thus, the recusal "statute must not be so broadly construed that it becomes . . . presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." Id. (internal quotations omitted). The recusal statute "is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice." United States v. Cooley, 1 F.3d 985, 993 (10th Cir. 1993). The Supreme Court has thus held that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555 (1994). A prior ruling will suffice to show bias only where it derived from an extrajudicial source, or where the judge's remarks reveal "such a high degree of favoritism or antagonism as to make fair judgment impossible." Id. Accordingly, "merely adverse rulings . . . do not in themselves support a bias charge. They are grounds for appeal, not recusal." United States v. Nickl, 427 F.3d at 1298. (citation omitted)(citing Liteky v. United States, 510 U.S. at 555).

## ANALYSIS

The Court will first address Trujillo's motion for recusal because he contends that the Court should not rule on his post-trial motions. Because the only basis for Trujillo's recusal request in his motion is alleged error and inconsistency in the Court's evidentiary rulings before and during trial,

see Plaintiff's Motion to Recuse, the Court will not recuse. Trujillo also has waived any objections to jury instructions and has failed to establish a valid basis for granting a new trial, so the Court will deny his motion to set aside the jury verdict and grant a new trial. Finally, because the Court has considered and ruled on the motion associated with Trujillo's supplemental briefing, which he now characterizes as a motion, the Court will deny his motion to withdraw the judgment as premature.

## I.     TRUJILLO HAS NOT ALLEGED FACTS THAT IMPLICATE BIAS.

Trujillo asserts in his motion to recuse that the Court must recuse "in the interests of justice," because it issued evidentiary rulings at trial that he perceives to be inconsistent with rulings issued in orders associated with pre-trial motions, where the Defendants did not object to consideration of Trujillo's proffered evidence. See Motion for Recusal at 1-2, 5. The Court has already explained to Trujillo why some of the evidence he tried to admit at trial was not admissible even though the Court had previously considered the evidence in ruling on motions for summary judgment and need not do so again. See Memorandum Opinion and Order, filed June 28, 2007 (Doc. 412); Memorandum Opinion and Order, filed June 27, 2007 (Doc. 411). Many of the evidentiary rulings about which Trujillo complains relate to the different posture of the case at trial without Mayerstein as a party and the position of the case before the Tenth Circuit opinion and dismissal of the First Amendment claims against Mayerstein and others. In any case, the law is clear that adverse rulings do not provide a basis for recusal. See Liteky v. United States, 510 U.S. at 555; United States v. Nickl, 427 F.3d at 1298.

In his reply brief, however, Trujillo raised several additional allegations of bias related to the way the trial was conducted and to the fact that the Court met a former APS school board

11

president at a party while Trujillo's case was pending.[4]  The Court should not consider these new issues because they were not raised in Trujillo's initial motion.  See Fed. R. Civ. P. 7(b) (requiring motions to "state with particularity the grounds" that the movant is relying on for relief); Doebele v. Sprint/United Management Co., 342 F.3d 1117, 1139 n.13 (10th Cir. 2003)(stating that a trial court abuses its discretion if it considers new legal arguments or new evidence raised for the first time in a reply brief); Doctor John's, Inc. v. City of Roy, No. 03cv00081, 2007 WL 1302757, *4 (D. Utah 2007)(stating, "it would be unfair to the opposing party for the court to consider new issues or evidence submitted with a reply.  It deprives the court of the benefit of full briefing and deprives the opposing party of a chance to respond.").  The Court notes, however, that all of these arguments except for the last one are also related solely to legal or administrative rulings, and do not provide a basis for recusal.  Moreover, the Court has reviewed Trujillo's additional grounds and does not believe any of them are errors or an abuse of discretion, much less that they display any bias against him.

As to Trujillo's claim that the Court should recuse because of an unplanned, casual conversation with the then-APS school board president, Mr. Leonard DeLayo, at a high school friend's Chinese New Year party while Trujillo's case was pending, the Court notes that it informed

---

[4] Trujillo contends that the Court demonstrated bias by: (i) accepting APS' statement that a witness Trujillo had subpoenaed was not yet available and requiring Trujillo to call another witness that he was not yet ready to call or to testify himself; (ii) excluding individuals from the courtroom that Trujillo identified as potential witnesses in response to APS' invoking of the rule despite Trujillo's desire to have the individuals assist him at trial; (iii) failing to file a pretrial order; (iv) failing to allow Trujillo to use Mayerstein's deposition testimony in the manner Trujillo desired; (v) not giving Trujillo what he considered to be sufficient time to do legal research on the cases the Court cited in its proposed jury instructions; (vi) giving the "impression" that the Court wanted to rush to finish the trial in four days, which was the amount of time the parties requested, see Clerk's Minutes, filed June 5, 2007 at 1 (Doc. 335), instead of wanting to "do justice"; and (vii) meeting a former APS school board president at a social function during the time Trujillo's case was pending.

Trujillo of that event almost a year before Trujillo's trial began and that the Court also reported that no cases were discussed with Mr. DeLayo in any way. See Clerk's Minutes in case number 06-cv-646, filed July 21, 2006 at 2 (Doc. 17). The Court has no ongoing social relationship with Mr. DeLayo, and has not seen or spoken to him since that meeting. Mr. DeLayo was not a witness in this case, and at the time of trial was no longer on the APS Board. Trujillo did not request recusal based on that incident at that time, and doing so now is untimely. See United States v. Nickl, 427 F.3d at 1297. Further, Trujillo alleges no facts indicating that the brief and isolated social encounter could provide an objective basis for alleging bias. The Court will, therefore, comply with its "strong [] duty to sit when there is no legitimate reason to recuse." Nichols v. Alley, 71 F.3d at 351.

## II.     TRUJILLO HAS NOT ESTABLISHED A BASIS FOR A NEW TRIAL.

Although Trujillo alleges that the Court made various errors, his main complaints are that: (i) the Court did not instruct the jury on "governing Title VII retaliation law;" (ii) the Court did not give Trujillo's proposed instructions; and (iii) the Court's instructions were confusing and ineffective. See Plaintiff's Motion for New Trial at 1-2, 15-16. Trujillo contends that despite his "compelling evidence, . . . the jury found against him because the jury was miss-instructed on the governing law, and lacked guidance on the application of the trial evidence to Title VII retaliation law." Id. at 22.

The Court believes that its instructions were proper statements of the law; that they encompassed the evidentiary posture of the case; and that they gave effective guidance to the jury. Contrary to his assertions, Trujillo did not object to specific instructions that APS submitted; he made only a general pre-trial contention that his proposed instructions were better than those APS submitted. See Plaintiff's Objections to Defendant's Proposed Instructions. Trujillo also did not object to any of the specific instructions the Court proposed giving, despite having been given

numerous opportunities to do so.  In fact, he stated that he "was okay with" the instructions from the second day of trial.  He therefore forfeited his right to complain about the instructions after the trial, see Giron v. Corr. Corp. of Am., 191 F.3d at 1289, and his tardy complaints do not provide a basis for granting a new trial.

The Court also rejects Trujillo's contentions that allowing APS to talk about the instructions during closing argument unfairly biased the jury or that the Court's rulings excluding hearsay testimony resulted in an unfair trial.  The Court discussed with the parties at the pre-trial conference whether the Court would instruct the jury before or after closing arguments, and the parties requested that the Court instruct before closings.  Trujillo did not object to such a procedure. and he was free to use the instructions in his closing.  Moreover, he did not object to APS' use of instructions in its closing argument.  In short, Trujillo has not established that justice requires granting a new trial because he has not shown prejudicial error.

### III.    **THE FINAL JUDGMENT WAS NOT PREMATURE.**

Trujillo contends that entry of final judgment was premature, because the Court allegedly did not rule on what he characterizes as "pending motion at Doc. No. 343." Motion for Withdrawal at 1. Document 343 is "additional briefing" Trujillo filed in support of a Motion for Order To Allow Further Briefing filed on November 18, 2005 (Doc. 231).  It is not an independent motion.  The Court granted Trujillo's Motion at Doc. 231 on June 6, 2007 and considered the additional arguments Trujillo made in Doc. 231's three-page brief in concluding that Trujillo's Motion for Reconsideration of Defendant Mayerstein's Record of Counseling and Related Memoranda, filed September 16, 2005 (Doc. 209) should be denied.  See Memorandum Opinion and Order, filed June 5, 2007 (Doc. 336).  By granting the motion in Doc. 231, the Court agreed to consider the additional briefing and arguments contained in Doc. 231; the Court did not grant leave to file another brief

related to Trujillo's September 16, 2005 Motion for Reconsideration after the Court had denied the Motion for Reconsideration. Further, Doc. 343 raised no new arguments or evidence that could affect the Court's ruling that Trujillo's speech was not protected under the First Amendment. All of Trujillo's pending motions had been ruled on when the Court filed its Final Judgment, and it was not premature.

**IT IS ORDERED** that Trujillo's Motion and Brief For Court Order Overturing [sic] the Jury Verdict and Granting a New Trial, Motion for Withdrawl [sic] of the Court's Premature Final Judgment Orders at Doc. No. 418 in 02cv1146, and Motion for Recusal of Presiding Judge Based on Bias are denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel and Parties*:

Transito Trujillo
Albuquerque, New Mexico

    *Pro Se Plaintiff*

Max J. Madrid
Alex C. Walker
Modrall, Sperling, Roehl, Harris & Sisk
Albuquerque, New Mexico

    *Attorneys for Defendant Board of Education,*
    *Albuquerque Public Schools*

Sean Olivas
Keleher & McLeod
Albuquerque, New Mexico

    *Attorney for Defendant Mark Mayerstein*